David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (917) 657-6857
Facsimile:   (877) 501-3346

*Attorneys for Plaintiff Lynn Slovin, on her own behalf, and behalf of all others similarly situated*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LYNN SLOVIN, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNRUN, INC., a California corporation, CLEAN ENERGY EXPERTS, LLC, a California limited liability company doing business as SOLAR AMERICA, and DOES 1-5, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**<br><br>**JURY DEMAND** |

**CLASS ACTION COMPLAINT**

Plaintiff LYNN SLOVIN ("Lynn Slovin" or "Plaintiff"), makes this complaint against Defendants SUNRUN, INC., a California corporation, and its subsidiary, CLEAN ENERGY EXPERTS LLC, a California limited liability company doing business as SOLAR AMERICA, and Does 1 to 5 (collectively, "Defendants"). Plaintiff's allegations as to her own actions are based on personal knowledge. The other allegations are based on her counsel's investigation, and information and belief.

Class Action Complaint          1

**Introduction**

1. Defendants operate within the burgeoning solar energy industry. A critical part of Defendant's solar energy business is generating qualified leads through telemarketing campaigns to sell solar energy products and services. Defendants deliver these leads in real time (from 30 to 60 seconds) to solar providers, including Sunrun, which then converts these leads into sales.

2. Defendants use a predictive dialer to make telephone calls to cellular telephone numbers, often without the prior express consent of the persons using those cellular telephone numbers. This practice violates the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA"). Plaintiff asserts a class claim under the TCPA.

3. Plaintiff seeks statutory damages and injunctive relief on her own behalf and on behalf of a class under 47 U.S.C. § 227(b)(3).

**Parties**

4. Plaintiff Lynn Slovin is a natural person and a resident of Baltimore, Maryland. At all relevant times Plaintiff was the sole user, subscriber, owner, and possessor of the cellular telephone at issue.

5. Defendant Sunrun Inc. ("Sunrun") is a Delaware corporation with its principal place of business located at 595 Market Street, 29th Floor, San Francisco, California 94105. Sunrun represents that it is the largest dedicated residential solar company in the United States. It develops, owns, manages, and sells residential solar energy systems in Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Maryland, Massachusetts, Nevada, New Hampshire, New Jersey, New York, Oregon, Pennsylvania and South Carolina.

6. Defendant Clean Energy Experts, LLC ("Clean Energy") is a California limited liability corporation with its principal place of business located at 595 Market Street, 29th Floor, San Francisco, California. It operates the solaramerica.com and solaramerica.org websites. Solar America is a fictitious business name registered to Clean Energy Experts. Clean Energy operates as a subsidiary of Sunrun and provides lead generation services for the solar industry, including Sunrun.

7. According to Sunrun's Form 10-Q SEC filing dated September 15, 2015, Clean

Energy's operations have been fully integrated into Sunrun's operations following the acquisition of Clean Energy by Sunrun in April 2015:

> For the three and six months ended June 30, 2015, the contribution of the acquired business to the Company's total revenues was $4.1 million as measured from the date of the acquisition. The portion of total expenses and net income associated with the acquired business was not separately identifiable due to the integration with the Company's operations.

(*available at* https://www.sec.gov/Archives/edgar/data/1469367/000156459015007967/run-10q_20150630.htm (last visited Nov. 20, 2015)).

8.  Sunrun exercises direct management and control over telemarketing employees that qualify solar customer leads by phone under the Clean Energy and Solar America brands, including directly overseeing and managing call center operations and staff. Sunrun also monitors performance metrics, and provides processes and scripts for telemarketers.

9.  Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 5, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

10. Plaintiff is informed and believes and based thereon alleges that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

11. All Defendants, including Does 1 through 5, are collectively referred to as

"Defendants."

12. Whenever this complaint refers to any act of Defendants, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

**Jurisdiction and Venue**

13. For the reasons stated in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012), the Court has federal subject matter jurisdiction under 47 U.S.C. § 227.

14. This Court has personal jurisdiction over the Defendants under California Code of Civil Procedure section 410.10 because many of the acts alleged herein were committed in San Francisco County.

15. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

16. All allegations in this complaint are based on information and belief and/or the documents and information currently available, and are such that additional evidentiary support and detail will be forthcoming after a reasonable opportunity for further investigation or discovery.

**Intradistrict Assignment**

17. A substantial part of the events which give rise to the claim occurred in San Francisco County. Under Local Rule 3-2(c), (d), this civil action should be assigned to the San Francisco division of the Northern District of California.

**The Telephone Consumer Protection Act**

18. Congress enacted the Telephone Consumer Protection Act in 1991. The TCPA prohibits certain uses of telecommunication equipment that would interfere with telephone service subscribers' privacy and/or property rights with respect to their telephone. In particular, the TCPA provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a . . .

Class Action Complaint                                  4

> cellular telephone service . . .

47 U.S.C. § 27(b)(1)(A).

19. The TCPA provides telephone service subscribers a private right of action for injunctive relief and statutory damages for violations:

> A person or entity may . . . bring . . . an action based on a violation of [47 U.S.C. § 227(b)] to enjoin such a violation, an action to recovery for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or both . . . If the court finds that the defendant willfully or knowingly violated [47 U.S.C. § 227(b),] the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the [statutory damages available above].

47 U.S.C. § 227(b)(3).

## Common Factual Allegations

20. Sunrun represents that it is the largest dedicated residential solar company in the United States. It develops, owns, manages, leases and sells residential solar energy systems in fifteen (15) states. Sunrun promotes and provides solar energy to homeowners using cost savings as a selling point.

21. Telemarketing is a critical part of the solar industry business. Solar companies utilize telemarketing within their marketing and sales process in order to effectively promote their products and services to potential customers (solar energy leads) and close deals. Converting a lead into a buying solar customer typically requires multiple calls from a sales person to the lead.

22. In April 2015, Sunrun acquired Clean Energy, the largest solar lead generation company, for $25.0 million in cash and 1.9 million shares of common stock. Clean Energy generated more than one million leads since 2013. In addition, Clean Energy may receive an additional $9.1 million in cash and 600,000 shares of common stock in April 2017 as long as Clean Energy meets certain sales targets as well as continued employment of certain key employees acquired in the transaction. *See* Sunrun Form 424B4 filed with the SEC on August 5, 2015 (*available at* https://www.sec.gov/Archives/edgar/data/1469367/000119312515278786/d880891d424b4.htm

(last visited Nov. 20, 2015).

23. This acquisition has enabled Sunrun to generate leads in-house, to exercise direct control over its solar telemarketing campaigns, and to monetize the solar energy leads by either converting them into purchasing solar energy customers or selling the leads to its partners or other providers in the solar industry. *See* Sunrun Form 424B4 filed with the SEC on August 5, 2015 (*available at* https://www.sec.gov/Archives/edgar/data/1469367/000119312515278786/d880891d424b4.htm (last visited Nov. 20, 2015).

24. Defendants systemically employ an invasive method of telemarketing solicitation known as "robocalling" to generate and deliver leads **in real time**. Defendants use an auto-dialer to place uninvited telemarketing calls to prospective clients in a given geographic area. When the prospective client (such as a homeowner) answers the phone, Defendants promote the cost savings of converting to solar energy and offer to provide the homeowner with quotes from local installers, dealers or contractors. Defendants essentially "prime[] the sales process for a [solar] company to convert these leads into closed sales deals." *See* https://www.cleanenergyexperts.com/solar-energy-and-home-improvements-leads/qualified-sales-prospects-residential-and-commercial (last visited Nov. 18, 2015).

25. Defendants then deliver these leads to solar companies within 30 to 60 seconds:

> **Real-time Delivery**. Lead quality degrades over time. We utilize our technology platform to deliver leads to you in real-time with no delay. What does this mean? Once a lead is qualified by our proprietary process it is delivered to you within 30 seconds to 1 minute by email and/or sent directly into your CRM (Customer Relationship Management) system. We can easily integrate with any CRM system such as SalesForce, NetSuite, Microsoft Dynamics or your own custom CRM. We believe time is of the essence to have your sales teams act on the leads and achieve superior success rates!

*See* https://www.cleanenergyexperts.com/solar-energy-and-home-improvements-leads/live-real-time-delivery (last visited Nov. 18, 2015) (emphasis in original).

26. Solar companies, including Sunrun, then convert the lead into sales by immediately contacting the prospective client.

27. Defendants make the above described lead generation calls, including the calls

Class Action Complaint                                        6

made to Plaintiff and Class Members, en masse using a "predictive" dialer, which automatically places calls without human intervention until the called party answers the call, at which time the automatic dialer attempts to connect the called party with a human representative or an automated prompt.

28. Defendants did not obtain prior express consent from Plaintiffs' and Class members.

### Plaintiff's Individual Allegations

29. Beginning in or about September and through November 2015, Plaintiff received multiple telephone calls to her cell phone from Defendants.

30. On the occasions when Plaintiff answered her cell phone, she heard several digital "clicks," a pause, and then either a live person or an artificial voice. On some occasions, the calls were disconnected after the pause. On other occasions, the caller identified herself as calling on behalf of Solar America and proceeded to promote solar energy products and services as a way to save money. The caller attempted to make an appointment for a solar company to provide Plaintiff with a quote.

31. During these phone calls, Plaintiff instructed Defendants to stop calling, asked to be placed on an internal "Do Not Call List" and further advised Defendants that her cellular telephone number was on the "National Do Not Call Registry."

32. During or before 2010, Plaintiff placed her number on the "National Do Not Call Registry."

33. Despite Plaintiff's efforts to cease Defendants' calls, Plaintiff continued to receive unsolicited phone calls from Defendants.

34. Prior to the calls, Plaintiff had no contact with Defendants and did not consent to receive these telephone calls.

35. Defendants made, and continue to make, these telemarketing calls to consumers nationwide without their prior written express consent to do so.

36. During all of these calls, there was a significant pause before Defendants' representative started speaking, which is a telltale sign that Defendants used a predictive dialer to

make the call:

> Predictive dialers initiate phone calls while telemarketers are talking to other consumers . . . In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*").

37. Defendants placed each and every call alleged in this complaint with one or more predictive dialers. Predictive dialers constitute an automatic telephone dialing system; they are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. Further, no human manually entered Plaintiff and Class members' cellular telephone number when Defendants made the calls alleged below. Rather, the predictive dialer(s) electronically dialed Plaintiff and Class members' cellular telephones in an automated fashion. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

38. None of the telephone calls alleged in this complaint constituted calls for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

**Class Certification Allegations**

39. **Class Definition:** Plaintiff seeks to certify a class and brings this Complaint against the Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following Class:

> All persons in the United States who received any unsolicited telephone calls from Defendants or their agents on their cellular phone service through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3) or artificial or prerecorded voice, which telephone calls by Defendants or their agents were not made for emergency purposes or with the recipients' prior express consent,

within four years prior to the filing of this Complaint.

40. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the class are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise the definition of the Class based on facts learned during discovery. Plaintiff is a member of the Class.

41. **Class Numerosity:** The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but such information is readily ascertainable by Defendants and their agents. The Class is so numerous that joinder of all members is impractical. Plaintiff alleges that there are more than 40 members of the Class.

42. **Class Commonality:** Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members of the Class. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the Class member. The predominant common questions include:

    a. Whether Defendants' telephone system constitutes an "automatic telephone dialing system" or "artificial or prerecorded voice" under the meaning of 47 U.S.C. § 227(a)(1);

    b. Whether Defendants had written prior express consent to call Class members;

    c. Whether Plaintiff and Class Members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiff and Class Members are entitled to treble damages; and

    d. Whether Plaintiff and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

43. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff is not different in any relevant way from any other member of the Class, and the relief she seeks is common to the Class.

44. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class: her interests do not conflict with their interests. Plaintiff has retained counsel competent and experienced in complex class actions,

including class actions arising under the Telephone Consumer Protection Act, and they intend to prosecute this action vigorously.

45. **Predominance and Superiority:** The Class alleged in this Complaint is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

46. **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The policies of the Defendants challenged herein apply and affect members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

47. **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

**FIRST CAUSE OF ACTION:**
**Violation of the TCPA Against All Defendants**
**by Plaintiff Individually and on Behalf of the Class**

48.  Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of herself and the Class Members.

49.  Defendants make outgoing calls to consumers and others in the regular course of their business. Defendants called Plaintiff and Class members' cellular telephone numbers.

50.  Defendants placed calls to Plaintiff and Class members using predictive dialers. The predictive dialers are an automatic telephone dialing system; no human manually entered the cellular telephone numbers which Defendants called at the time the call was made. Rather, the predictive dialers electronically dialed the Class members' cellular telephones in an automated fashion. The predictive dialers are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

51.  Defendants do not and did not obtain legally effective prior express consent to call the Class members' cellular telephone numbers.

52.  Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by placing telephone calls to Plaintiff and the other members of the Class that were automatically dialed by Defendants' telephone system; made to a cellular telephone number; and not as the result of the Class member's transaction with Defendants or its agents.

53.  Defendants' violations are willful because Defendants knew that Plaintiff and members of the Class had not given prior express consent to receive autodialed and/or prerecorded calls to their cellular phones (and that Plaintiff and other class members were on the National Do Not Call Registry), and that Defendants used an automatic telephone dialing system to call the cell phones of Plaintiff and Class members.

54.  Plaintiff, on her own behalf, and behalf of the other Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well

as injunctive and equitable relief under 47 U.S.C. § 227(b)(3), against Defendants. Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff is therefore entitled to an award of attorneys' fees under California Code of Civil Procedure section 1021.5 for bringing this action.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in her favor and against Sunrun, Clean Energy, and Does 1 to 5 as follows:

a. An order certifying the Class, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the Class;

b. Judgment against Defendants, and in favor of Plaintiff and the other Class members in the amount of $1,500 per violation of the TCPA as proven at trial;

c. Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA;

d. An order granting costs and attorneys' fees; and

e. Such other and further relief as this Court may deem appropriate.

Dated: November 20, 2015

By: /s/David C. Parisi
David C. Parisi
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

*Attorneys for Plaintiff Lynn Slovin, on her own behalf, and behalf of all others similarly situated*

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: November 20, 2015

By:   /s/David C. Parisi
David C. Parisi
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
Santa Monica, CA   90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (917) 657-6857
Facsimile:   (877) 501-3346

*Attorneys for Plaintiff Lynn Slovin, on her own behalf, and behalf of all others similarly situated*

Jury Demand