David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (917) 657-6857
Facsimile:   (877) 501-3346

*Attorneys for Plaintiff Lynn Slovin, on her own
behalf, and behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN SLOVIN, an individual, on her own behalf and on behalf of all others similarly situated, | Case No. 3:15-cv-05340-JSC |
| | **FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT** |
| Plaintiff, | |
| v. | **JURY DEMAND** |
| SUNRUN, INC., a California corporation, CLEAN ENERGY EXPERTS, LLC, a California limited liability company doing business as SOLAR AMERICA, and DOES 1-5, inclusive, | |
| Defendants. | |

### CLASS ACTION COMPLAINT

Plaintiff LYNN SLOVIN ("Lynn Slovin" or "Plaintiff"), makes this complaint against

Defendants SUNRUN, INC., a California corporation, and its subsidiary, CLEAN ENERGY

EXPERTS LLC, a California limited liability company doing business as SOLAR AMERICA,

and Does 1 to 5 (collectively, "Defendants"). Plaintiff's allegations as to her own actions are

based on personal knowledge. The other allegations are based on her counsel's investigation, and

information and belief.

**Introduction**

1.      Defendants operate within the burgeoning solar energy industry. A critical part of Defendant's solar energy business is generating qualified leads through telemarketing campaigns promoting solar energy products and services.  Defendants deliver these leads in real time (within 30 to 60 seconds) to solar providers, including Sunrun, who then convert these leads into sales.

2.      Defendants accomplish their telemarketing campaigns by making unsolicited robocalls (*i.e.*, using a predictive dialer and/or pre-recorded or artificial voice calls) to cellular telephone numbers, often without the prior express consent of the persons using those cellular telephone numbers. In addition, Defendants make calls to telephone numbers listed on the national Do-Not-Call registry.

3.      These practices violate the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA"). The TCPA was enacted to protect consumers from intrusive automated telemarketing practices like the robocalls made to Plaintiff and members of the Classes. By making these robocalls and ignoring the national Do-Not-Call registry, Defendants caused Plaintiff and members of the Classes actual harm, including the aggravation, nuisance, and invasion of privacy that results from the receipt of unsolicited and harassing telephone calls.

4.      In response to Defendants' unsolicited telemarketing calls, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

**Parties**

5.      Plaintiff Lynn Slovin is a natural person and a resident of Baltimore, Maryland. At all relevant times Plaintiff was the sole user, subscriber, owner, and possessor of the cellular telephone at issue.

6.      Defendant Sunrun Inc. ("Sunrun") is a Delaware corporation with its principal place of business located at 595 Market Street, 29th Floor, San Francisco, California 94105. Sunrun represents that it is the largest dedicated residential solar company in the United States.

1  It develops, owns, manages, and sells residential solar energy systems in Arizona, California,

2  Colorado, Connecticut, Delaware, Hawaii, Maryland, Massachusetts, Nevada, New Hampshire,

3  New Jersey, New York, Oregon, Pennsylvania and South Carolina.

4        7.      Defendant Clean Energy Experts, LLC ("Clean Energy") is a California limited

5  liability corporation with its principal place of business located at 595 Market Street, 29th Floor,

6  San Francisco, California.  It operates the solaramerica.com and solaramerica.org websites,

7  among other websites.  Solar America is a fictitious business name registered to Clean Energy

8  Experts.  Clean Energy operates as a subsidiary of Sunrun and provides lead generation services

9  for the solar industry, including Sunrun.

10        8.      According to Sunrun's Form 10-Q SEC filing dated September 15, 2015, Clean

11  Energy's operations have been fully integrated into Sunrun's operations following the

12  acquisition of Clean Energy by Sunrun in April 2015:

> For the three and six months ended June 30, 2015, the contribution of the acquired business to the Company's total revenues was $4.1 million as measured from the date of the acquisition. The portion of total expenses and net income associated with the acquired business was not separately identifiable due to the integration with the Company's operations.

(*available at*
https://www.sec.gov/Archives/edgar/data/1469367/000156459015007967/run-
10q_20150630.htm (last visited Nov. 20, 2015)).

18        9.      Sunrun exercises direct management and control over telemarketing employees

19  that qualify solar customer leads by phone under the Clean Energy and Solar America brands,

20  including directly overseeing and managing call center operations and staff.  Sunrun also

21  monitors performance metrics, and provides processes and scripts for telemarketers.

22        10.     Plaintiff is currently ignorant of the true names and capacities, whether individual,

23  corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does

24  1 through 5, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff

25  will seek leave to amend this complaint to allege the true names and capacities of said fictitiously

26  named Defendants when their true names and capacities have been ascertained. Plaintiff is

27  informed and believes and based thereon alleges that each of the fictitiously named Doe

28  Defendants is legally responsible in some manner for the events and occurrences alleged herein,

1   and for the damages suffered by Plaintiff.

2      11.   Plaintiff is informed and believes and based thereon alleges that all defendants,

3   including the fictitious Doe Defendants, were at all relevant times acting as actual agents,

4   conspirators, ostensible agents, partners and/or joint venturers and employees of all other

5   defendants, and that all acts alleged herein occurred within the course and scope of said agency,

6   employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or

7   implied permission, knowledge, consent, authorization and ratification of their co-Defendants;

8   however, each of these allegations are deemed "alternative" theories whenever not doing so

9   would result in a contraction with the other allegations.

10      12.   All Defendants, including Does 1 through 5, are collectively referred to as

11   "Defendants."

12      13.   Whenever this complaint refers to any act of Defendants, the allegations shall be

13   deemed to mean the act of those defendants named in the particular cause of action, and each of

14   them, acting individually, jointly and severally, unless otherwise alleged.

15                              **Jurisdiction and Venue**

16      14.   For the reasons stated in in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct.

17   740 (2012), the Court has federal subject matter jurisdiction under 47 U.S.C. § 227.

18      15.   The Court has personal jurisdiction over Defendants' because Defendants'

19   principal place of business is within this District and Defendants conduct significant business

20   transactions within this District.

21      16.   Venue is also proper before this Court under 28 U.S.C. § 1391(b)(1) and (b)(2)

22   because Defendants reside in this District and a substantial part of the events or omissions giving

23   rise to the claim occurred in this District.

24      17.   All allegations in this complaint are based on information and belief and/or the

25   documents and information currently available, and are such that additional evidentiary support

26   and detail will be forthcoming after a reasonable opportunity for further investigation or

27   discovery.

28

**Intradistrict Assignment**

18.     A substantial part of the events which give rise to the claim occurred in San Francisco County. Under Local Rule 3-2(c), (d), this civil action should be assigned to the San Francisco division of the Northern District of California.

**Common Factual Allegations**

19.     Sunrun represents that it is the largest dedicated residential solar company in the United States. It develops, owns, manages, leases and sells residential solar energy systems in fifteen (15) states. *See* http://www.sunrun.com/how-it-works/faq#item-2406 (last visited Nov. 29, 2015).

20.     Sunrun promotes solar energy products and service to homeowners using savings on utility bills and the federal Solar Tax Credit (which is set to expire on December 31, 2016) as selling points.  *See* http://www.sunrun.com/solar-savings (last visited Nov. 29, 2015); http://www.sunrun.com/solar-lease/cost-of-solar/federal-solar-incentives (last visited Nov. 29, 2015).

21.     Solar companies, including Sunrun, utilize telemarketing within their marketing and sales process in order to effectively promote their products and services to potential customers (solar energy leads) and close deals.  In fact, telemarketing and lead generation is a critical part of the solar energy industry: converting a lead into a buying solar customer typically requires multiple calls from a sales person to the lead.  *See* https://www.cleanenergyexperts.com/2013/11/06/solar-telemarketing-and-the-telephone-consumer-protection-act-of-1991/ (last visited Nov. 29, 2015).

22.     In April 2015, Sunrun acquired Clean Energy, the largest solar lead generation company, for $25.0 million in cash and 1.9 million shares of common stock. Clean Energy generated more than one million leads since 2013. In addition, Clean Energy may receive an additional $9.1 million in cash and 600,000 shares of common stock in April 2017 as long as Clean Energy meets certain sales targets as well as continued employment of certain key employees acquired in the transaction. *See* Sunrun Form 424B4 filed with the SEC on August 5, 2015 (*available at*

https://www.sec.gov/Archives/edgar/data/1469367/000119312515278786/d880891d424b4.htm (last visited Nov. 20, 2015).

23.     This acquisition has enabled Sunrun to generate leads in-house, to exercise direct control over its solar telemarketing campaigns, and to monetize the solar energy leads by either converting them into purchasing solar energy customers or selling the leads to its partners or other providers in the solar industry. *See* Sunrun Form 424B4 filed with the SEC on August 5, 2015 (*available at* https://www.sec.gov/Archives/edgar/data/1469367/000119312515278786/d880891d424b4.htm (last visited Nov. 20, 2015).

24.     Defendants systemically employ an invasive method of telemarketing solicitation known as "robocalling" to generate and deliver leads in real time. Defendants use an auto-dialer to place uninvited telemarketing calls to prospective clients in a given geographic area.  When the prospective client (such as a homeowner) answers the phone, Defendants promote the cost savings of converting to solar energy and offer to provide the homeowner with quotes from local installers, dealers or contractors. Defendants essentially "prime[] the sales process for a [solar] company to convert these leads into closed sales deals."  See https://www.cleanenergyexperts.com/solar-energy-and-home-improvements-leads/qualified-sales-prospects-residential-and-commercial (last visited Nov. 18, 2015).

25.     Defendants then deliver these leads to solar companies within 30 to 60 seconds:

> **Real-time Delivery**. Lead quality degrades over time. We utilize our technology platform to deliver leads to you in real-time with no delay. What does this mean?  Once a lead is qualified by our proprietary process it is delivered to you within 30 seconds to 1 minute by email and/or sent directly into your CRM (Customer Relationship Management) system. We can easily integrate with any CRM system such as SalesForce, NetSuite, Microsoft Dynamics or your own custom CRM.  We believe time is of the essence to have your sales teams act on the leads and achieve superior success rates!

*See* https://www.cleanenergyexperts.com/solar-energy-and-home-improvements-leads/live-real-time-delivery (last visited Nov. 18, 2015) (emphasis in original).

26.     Over 500 solar companies receive leads from CEE. *See* https://www.cleanenergyexperts.com/solar-energy-and-home-improvements-leads/frequently-

asked-questions (last visited Nov. 29, 2015).

27.     CEE claims that "[its] best clients actually sometimes only request the contact information (because they know we are already qualifying the project information and interest level of the lead)."  This contact information includes the "name, address, city, state, zip code, phone number and email" of the prospective client. See http://www.cleanenergyexperts.com/solar-energy-and-home-improvements-leads/qualified-sales-prospects-residential-and-commercial (lasted visited Nov. 29, 2015).

28.     Solar companies, including Sunrun, then convert leads into sales by immediately contacting the prospective client and doing so repeatedly over the course of the next few days.

29.     Defendants make the above described lead generation calls, including the calls made to Plaintiff and Class Members, en masse using a "predictive" dialer, which automatically places calls without human intervention until the called party answers the call, at which time the automatic dialer attempts to connect the called party with a human representative or an automated prompt.

30.     Defendants did not obtain prior express consent from Plaintiffs' and Class members.

**Plaintiff's Individual Allegations**

31.     Beginning in or about September and through November 2015, Plaintiff received multiple telephone calls to her cell phone from Defendants. Often, these calls originated from different numbers, including local Maryland numbers.[1]

32.     On some of the occasions when Plaintiff answered her cell phone, she heard several digital "clicks," a pause, and then a voice on the phone.  At times, Plaintiff was unable to determine if the voice was artificial or live.  On other occasions, the calls were disconnected after the pause. One of these calls resulted in a voicemail consisting of unintelligible machine sounds.

---

[1]     Telemarketers cause a local number to appear on the recipients' caller ID in order to increase the likelihood that the recipient will pick up the call.  For example, Velocify, which partners with Clean Energy, offers automated outbound dialer software that gives users the ability to "[o]perate like a local business and boost contact rates by calling prospects from their own area code." *See* http://pages.velocify.com/rs/522-DJL-243/images/velocify-pulse-communication.pdf (*last visited* Nov. 29, 2015).

33.     On still other occasions, the caller identified herself as calling from Solar America and then, in a generic or scripted fashion, proceeded to promote solar energy products and services as a way to save money. The caller attempted to make an appointment for a solar company to provide Plaintiff with a quote.

34.     During these calls, Plaintiff instructed Defendants to stop calling, asked to be placed on an internal "Do Not Call List" and further advised Defendants that her cellular telephone number was on the "national Do-Not-Call registry."

35.     On or about January 17, 2007, Plaintiff placed her number on the "national Do-Not-Call registry."

36.     Despite Plaintiff's efforts to cease Defendants' calls, Plaintiff continued to receive unsolicited phone calls from Defendants.

37.     Prior to the calls, Plaintiff had no contact with Defendants and did not consent to receive these telephone calls.

38.     Plaintiff was damaged by Defendants' calls. She found these repeated unsolicited calls to be intrusive and harassing, as they diverted attention away from her work and other daily activities. Plaintiff put herself on the national Do-Not-Call registry specifically to avoid telemarketing calls. Plaintiff's privacy was invaded when she received repeated calls from Solar America from different numbers, including local ones.

39.     Defendants made, and continue to make, these telemarketing calls to individuals nationwide without their prior written express consent to do so.

40.     During all of these calls, there was a significant pause before Defendants' representative started speaking, which is a telltale sign that Defendants used a predictive dialer to make the call:

> Predictive dialers initiate phone calls while telemarketers are talking to other consumers . . . In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of*

---

First Amended Class Action Complaint          8

*1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 146, 18 FCC Rcd. 14014,

14101, 2003 WL 21517853, *51 (July 3, 2003), *available at*

http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and*

*Order*").

41.     Defendants placed each and every call alleged in this complaint with one or more

predictive dialers. Predictive dialers constitute an automatic telephone dialing system; they are

capable of storing, producing, and dialing any telephone number, and are capable of storing,

producing, and dialing telephone numbers using a random or sequential number generator.

Further, no human manually entered Plaintiff and Class members' cellular telephone number

when Defendants made the calls alleged below. Rather, the predictive dialer(s) electronically

dialed Plaintiff and Class members' cellular telephones in an automated fashion. The predictive

dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47

U.S.C. § 227(a)(1).

42.     None of the telephone calls alleged in this complaint constituted calls for

emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

### Class Certification Allegations

43.     Class Definition: Plaintiff seeks to certify a class and brings this Complaint

against the Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and

the following Classes:

> **Robocall Class:**
> All persons in the United States who received any unsolicited
> telephone calls from Defendants or their agents on their cellular
> phone service through the use of any automatic telephone dialing
> system or artificial or pre-recorded voice system, which telephone
> calls by Defendants or their agents were not made for emergency
> purposes or with the recipients' prior express consent, within four
> years prior to the filing of this Complaint.
>
> **Do Not Call Class ("DNC Class")**:
> All persons in the United States (1) who had his or her telephone
> number(s) registered with the national Do-Not-Call registry for at
> least thirty days; (2) who received more than one telephone call
> made by or on behalf of Defendants that promoted solar energy
> products or services products or services; (3) within a 12-month
> period; and (4) for whom Defendants had no current record of
> consent to place such calls to him or her.

44.     Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees.  Also excluded from the Classes are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise the Class definitions based on facts learned during discovery. Plaintiff is a member of each Class.

45.     Class Numerosity: The exact number of members of each Class is unknown and is not available to Plaintiff at this time, but such information is readily ascertainable by Defendants and their agents. The Classes are so numerous that joinder of all members is impractical. Plaintiff alleges that there are more than 40 members of each Class.

46.     Class Commonality: Common questions of fact and law exist as to all members of the Classes and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the Class member. The predominant common questions include:

    a.     Whether Defendants used an "automatic telephone dialing system" or "artificial or prerecorded voice" calls as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

    b.     Whether Defendants had written prior express consent to call Class members;

    c.     Whether Defendants systematically made telephone calls to members of the DNC Class whose telephone numbers were registered with the national Do-Not-Call registry;

    d.     Whether Defendants systematically made telephone calls to members of the DNC Class where Defendants did not have a current record of consent to make such telephone calls;

    e.     Whether Plaintiff and Class Members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiff and Class Members are entitled to treble damages; and

    f.     Whether Plaintiff and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

47.     Typicality: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is not different in any relevant way from any other member of the Classes, and

the relief she seeks is common to each Class.

48.     Adequate Representation: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes: her interests do not conflict with their interests. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the Telephone Consumer Protection Act, and they intend to prosecute this action vigorously.

49.     Predominance and Superiority: The Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

50.     Generally Applicable Policies: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class a whole. The policies of the Defendants challenged herein apply and affect members of each Class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

51.     Injunctive Relief is Appropriate: Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and Class

1  members for which they have no adequate remedy at law.

2  **FIRST CAUSE OF ACTION:**
   **Violation of the TCPA Against All Defendants**
3  **by Plaintiff Individually and on Behalf of the Robocall Class**

4      52.     Plaintiff hereby incorporates by reference the allegations contained in all

5  preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of herself and the

6  members of the Robocall Class.

7      53.     The TCPA prohibits certain uses of telecommunication equipment that would

8  interfere with telephone service subscribers' privacy and/or property rights with respect to their

9  telephone. In particular, the TCPA provides that:

10         It shall be unlawful for any person within the United States, or any person
           outside the United States if the recipient is within the United States to
11         make any call (other than a call made for emergency purposes or made
           with the prior express consent of the called party) using any automatic
12         telephone dialing system or an artificial or prerecorded voice to any
           telephone number assigned to a . . . cellular telephone service . . .
13
    47 U.S.C. § 27(b)(1)(A).
14

15      54.     The TCPA provides telephone service subscribers a private right of action for

16  injunctive relief and statutory damages for violations:

17         A person or entity may . . . bring . . . an action based on a violation of [47
           U.S.C. § 227(b)] to enjoin such a violation, an action to recovery for
18         actual monetary loss from such a violation, or to receive $500 in damages
           for each such violation, whichever is greater, or both . . . If the court finds
19         that the defendant willfully or knowingly violated [47 U.S.C. § 227(b),]
           the court may, in its discretion, increase the amount of the award to an
20         amount equal to not more than 3 times the [statutory damages available
           above].
21
    47 U.S.C. § 227(b)(3).
22
        55.     Defendants make outgoing calls to consumers and others in the regular course of
23
    their business. Defendants called Plaintiff and Class members' cellular telephone numbers.
24
        56.     Defendants placed calls to Plaintiff and Class members using predictive dialers.
25
    The predictive dialers are an automatic telephone dialing system; no human manually entered the
26
    cellular telephone numbers which Defendants called at the time the call was made. Rather, the
27
    predictive dialers electronically dialed the Class members' cellular telephones in an automated
28

---

fashion. The predictive dialers are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

57.     Defendants also utilized artificial and/or prerecorded voice calls to call the cellular telephones of Plaintiff and Class Members.

58.     Defendants do not and did not obtain legally effective prior express consent to call the Class members' cellular telephone numbers.

59.     Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by placing telephone calls to Plaintiff and the other members of the Class that were automatically dialed by Defendants' telephone system and/or used an artificial or prerecorded voice; made to a cellular telephone number; and not as the result of the Class member's transaction with Defendants or its agents.

60.     Defendants' violations are willful because Defendants knew that Plaintiff and members of the Class had not given prior express consent to receive calls made using an automatic telephone dialing system, artificial, and/or prerecorded voice and that Defendants used these methods to call the cell phones of Plaintiff and Class members.

61.     Plaintiff, on her own behalf, and on behalf of the other members of the Robocall Class, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3), against Defendants.

62.     Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff is therefore entitled to an award of attorneys' fees under California Code of Civil Procedure section 1021.5 for bringing this action.

**SECOND CAUSE OF ACTION:**
**Violations of the TCPA Against All Defendants**
**by Plaintiff Individually and on Behalf of the DNC Class**

63.     Plaintiff hereby incorporates by reference the allegations contained in all

1    preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of herself and

2    members of the Do Not Call Registry Class.

3          64.    47 U.S.C. §227(c) provides that any "person who has received more than one

4    telephone call within any 12-month period by or on behalf of the same entity in violation of the

5    regulations prescribed under this subsection may" bring a private action based on a violation of

6    said regulations, which were promulgated to protect telephone subscribers' privacy rights to

7    avoid receiving telephone solicitations to which they object.

8          65.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o

9    person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber

10   who has registered his or her telephone number on the national do-not-call registry of persons

11   who do not wish to receive telephone solicitations that is maintained by the federal government."

12         66.    47 C.F.R. § 64.1200 (e), provides that § 64.1200 (c) and (d) "are applicable to any

13   person or entity making telephone solicitations or telemarketing calls to wireless telephone

14   numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278,

15   FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of

16   1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone
> solicitations to residential telephone subscribers must comply with time of
> day restrictions and must institute procedures for maintaining do-not-call
> lists. For the reasons described above, we conclude that these rules apply
> to calls made to wireless telephone numbers. We believe that wireless
> subscribers should be afforded the same protections as wireline
> subscribers.

21   Report and Order at ¶ 167.

22         67.    Defendants violated 47 C.F.R. § 64.1200 (c) by initiating telephone solicitations

23   to wireless and residential telephone subscribers such as Plaintiff and the Class members who

24   registered their respective telephone numbers on the national Do-Not-Call registry, a listing of

25   persons who do not wish to receive telephone solicitations that is maintained by the federal

26   government.

27         68.    These individuals requested not to receive calls from Defendants, as set forth in

28   47 C.F.R. § 64.1200 (d)(3).

---

69.     Defendants and/or their agents made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendants and/or Defendants do not have a current record of consent to place telemarketing calls to them.

70.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call within a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $500 in damages for such violations of § 64.1200.

71.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

72.     Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff is therefore entitled to an award of attorneys' fees under California Code of Civil Procedure section 1021.5 for bringing this action.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in her favor and against Sunrun, Clean Energy, and Does 1 to 5 as follows:

a.      An order certifying the classes, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the classes;

b.      Judgment against Defendants, and in favor of Plaintiff and the other class members in the amount of $1,500 per violation of the TCPA as proven at trial;

c.      Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA;

d.      An order granting costs and attorneys' fees; and

e.      Such other and further relief as this Court may deem appropriate.

Dated: December 2, 2015                                    By:  /s/David C. Parisi

David C. Parisi
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
Santa Monica, CA   90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (917) 657-6857
Facsimile:   (877) 501-3346

*Attorneys for Plaintiff Lynn Slovin, on
her own behalf, and on behalf of all others
similarly situated*

First Amended Class Action Complaint                    16

1

### JURY TRIAL DEMAND

2

Plaintiff hereby demands a trial by jury of all issues so triable.

3

4 | Dated: December 2, 2015

By:   /s/David C. Parisi
David C. Parisi
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
Santa Monica, CA   90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

5

6

7

8

9

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (917) 657-6857
Facsimile:   (877) 501-3346

10

11

12

13

*Attorneys for Plaintiff Lynn Slovin, on her own behalf, and behalf of all others similarly situated*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jury Demand