KELLEY DRYE & WARREN LLP
  Lauri A. Mazzuchetti (*pro hac vice*)
  Edward J. Mullins III (*pro hac vice*)
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile:  (973) 503-5950
lmazzuchetti@kelleydrye.com
emullins@kelleydrye.com

KELLEY DRYE & WARREN LLP
  Lee S. Brenner (State Bar No. 180235)
  Catherine D. Lee (State Bar No. 258550)
10100 Santa Monica Boulevard, 23rd Floor
Los Angeles, CA 90067-4008
Telephone: (310) 712-6100
Facsimile:  (310) 712-6199
lbrenner@kelleydrye.com
clee@kelleydrye.com

Attorneys for Defendants Sunrun Inc. and Clean Energy
Experts, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN SLOVIN, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNRUN, INC., a California corporation, CLEAN ENERGY EXPERTS, LLC, a California limited liability company doing business as SOLAR AMERICA, and DOES 1 through 5, inclusive,<br><br>Defendants. | Case No. 4:15-cv-05340-YGR<br><br>(Hon. Yvonne Gonzalez Rogers)<br><br>**DEFENDANTS SUNRUN INC. AND CLEAN ENERGY EXPERTS, LLC'S NOTICE OF MOTION AND MOTION TO STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Mazzuchetti Decl., Long Decl., Peelle Decl., and [Proposed] Order filed concurrently herewith*]<br><br>Date:          October 11, 2016<br>Time:         2:00 p.m.<br>Place:         Courtroom 1<br><br>TAC Filed:   July 12, 2016<br>Trial Date:   None Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 11, 2016 at 2:00 p.m., or as soon thereafter as possible, in the courtroom of the Honorable Yvonne Gonzalez Rogers located at Oakland Courthouse, Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, California 94612, defendants Sunrun Inc. and Clean Energy Experts, LLC (collectively, "Defendants") will and hereby move for an order striking the class allegations of Plaintiffs Lynn Slovin, Samuel Katz Jeffrey Price, and Justin Birkhofer's (collectively, "Plaintiffs") Third Amended Complaint ("TAC") pursuant to Rules 12(f) and 23 of the Federal Rules of Civil Procedure.

Defendants move to strike Plaintiffs' class allegations.  TAC ¶¶ 130-38.  Plaintiffs' proposed classes contain unnamed class members that lack standing and are unascertainable. Moreover, on the face of their pleading, Plaintiffs cannot meet the commonality, predominance or typicality requirements of Rule 23.  Plaintiffs also cannot show that a class action is the superior method of adjudicating the issues in this case.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, Declarations of Lauri Mazzuchetti, Sara Long, and Dr. Beau Peelle, all pleadings and papers on file in this action, and any oral argument or documentary matters as may be presented to the Court at or before the hearing on this Motion.


DATED:  August 19, 2016

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti
Lee S. Brenner
Edward J. Mullins III
Catherine D. Lee

By:  /s/ Lauri A. Mazzuchetti
        Lauri A. Mazzuchetti
Attorneys for Defendants Sunrun Inc. and
Clean Energy Experts, LLC

1

## TABLE OF CONTENTS

2
**Page**

3    I.    INTRODUCTION ..................................................................................................1

4    II.   BACKGROUND ...................................................................................................2

5          A.    Procedural Background ..............................................................................2

6          B.    Plaintiffs' TAC and Discovery Responses ...............................................3

7                1.    Plaintiffs' Discovery Has Not Yielded Any Evidence That The Vast
                       Majority Of Calls Were Made By Or On Behalf Of Defendants ..............3

8
9                2.    Plaintiffs' "Factual" Allegations ..............................................................4

10               3.    Plaintiffs' TCPA and CLRA Claims ........................................................6

     III.  THE STANDARD ON A MOTION TO STRIKE ...............................................8
11
     IV.   THE CLASS ALLEGATIONS SHOULD BE STRICKEN .................................9
12
13         A.    The Class Allegations Should Be Stricken Because The Classes Contain
                 Members Lacking Article III Standing And The Classes Are Not
                 Ascertainable ............................................................................................9
14
15         B.    Individualized Issues Preclude The Finding Of Predominance ..........12

16               1.    The Issues Of Agency Create Individualized Issues That
                       Predominate Over Common Issues .........................................................13

17               2.    The Issues Of Consent Create Individualized Issues That
                       Predominate Over Common Issues .........................................................14
18
19               3.    Additional Individualized Issues Will Also Predominate Over
                       Common Issues ........................................................................................16

20         C.    The Lack Of Typicality Supports The Striking Of The Class Allegations ..........19

21         D.    A Class Action Is Not The Superior Method Of Adjudicating The Issues In
                 This Case ..................................................................................................20
22
     V.    CONCLUSION ..................................................................................................21
23
24

25

26

27

28

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bank v. Indep. Eng. Grp. LLC*,
    No. 12-CV-1369 (JG)(VMS), 2015 WL 4488070 (E.D.N.Y. July 23, 2015)...........................17

5

*Barret v. ADT Corp.*,
    No. 2:15-cv-1348, 2016 WL 865672 (S.D. Oh. Mar. 7, 2016) ..................................................20

6

*Blades v. Monsanto*,
    400 F.3d 562 (8th Cir. 2005)....................................................................................................13

7

8

*Blair v. CBE Grp., Inc.*,
    309 F.R.D. 621 (S.D. Cal. 2015)..............................................................................................15

9

*Bowoto v. Chevron Texaco Corp.*,
    312 F. Supp. 2d 1229 (N.D. Cal. 2004) ...................................................................................14

10

11

*Bridgeview Health Care Ctr., Ltd. v. Clark*,
    816 F.3d 935 (7th Cir. Mar. 21, 2016) ..............................................................................13, 14

12

*Cellco P'ship v. Dealers Warranty, LLC*,
    No. 09-1814, 2010 WL 3946713 (D.N.J. Oct. 5, 2010)...........................................................17

13

14

*Connelly v. Hilton Grand Vacations Co., LLC*,
    294 F.R.D. 574 (S.D. Cal. 2013)........................................................................................12, 15

15

*Dietz v. Comcast Corp.*,
    No. C 06-06352, 2007 WL 2015440 (N.D. Cal. July 11, 2007) .................................................9

16

17

*Dixon v. Monterey Fin. Servs., Inc.*,
    No. 15-cv-03298-MMC, 2016 WL 3456680 (N.D. Cal. June 24, 2016) ...................................12

18

*Donaca v. Dish Network, LLC*,
    303 F.R.D. 390 (D. Colo. 2016)...............................................................................................20

19

20

*Doninger v. Pac. Nw. Bell, Inc.*,
    564 F.2d 1304 (9th Cir. 1977)....................................................................................................8

21

*Gannon v. Network Tel. Servs., Inc.*,
    No. CV 12-9777-RGK, 2013 WL 2450199 (C.D. Cal. June 5, 2013) ......................................12

22

23

*Hancock v. Urban Outfitters, Inc.*,
    --- F.3d ----, 2016 WL 3996710 (D.C. Cir. July 26, 2016) ......................................................9

24

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)..............................................................................................19, 20

25

26

*Hartman v. United Bank Card Inc.*,
    No. C11-1753, 2012 WL 4792926 (W.D. Wash. Oct. 9, 2012)................................................19

27

28

ii

*Horowitz v. GC Servs. Ltd. P'ship*,
  No. 14cv2512–MMA (RBB), 2015 WL 1959377 (S.D. Cal. Apr. 28, 2015)...............16, 17, 18

*Hovsepian v. Apple, Inc.*,
  No. 08-5788, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ...................................................8

*ING Bank, FSB v. Chang Seob Ahn*,
  758 F. Supp. 2d 936 (N.D. Cal. 2010) ...................................................................................13

*Jamison v. First Credit Servs., Inc.*,
  290 F.R.D. 92 (N.D. Ill. 2013) ...................................................................................6, 11, 16

*Johnson v. JP Morgan Chase Bank*,
  No. CV-F-008-0081 LJO SMS, 2008 WL 5100177 (E.D. Cal. Dec. 1, 2008) .........................13

*In the Matter of the Joint Petition*
  *filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 2013 WL 1934349 (F.C.C.
  May 9, 2013) ..........................................................................................................................13

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001)................................................................................................12

*Makaron v. GE Sec. Mfg., Inc.*,
  No. CV-14-1274-GW, 2015 WL 3526253 (C.D. Cal. May 18, 2015) .....................................13

*Mantolete v. Bolger*,
  767 F.2d 1416 (9th Cir. 1985)..................................................................................................8

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012)....................................................................................................9

*Nelson v. King County*,
  895 F.2d 1248 (9th Cir. 1990)..................................................................................................8

*Rodriguez v. Gates*,
  No. CV99-13190, 2002 WL 1162675 (C.D. Cal. May 30, 2002)..............................................8

*In the Matter of Rules & Reg's Implementing the TCPA of 1991*,
  19 FCC Rcd. 19215, 2004 WL 2104233 (F.C.C. Sept. 21, 2004) ...........................................16

*Rules and Reg's Implementing the TCPA of 1991*,
  20 FCC Rcd. 3788, 2005 WL 418189 (F.C.C. Feb. 18, 2005) .................................................17

*Rules and Reg's Implementing the TCPA of 1991*,
  23 FCC Rcd. 9779, 2008 WL 2437522 (F.C.C. June 17, 2008) ..............................................17

*In re Rules and Reg's Implementing the TCPA of 1991*,
  30 FCC Rcd 7961, 2015 WL 4387780 (F.C.C. July 10, 2015)................................................16

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ......................................................................................9

*Sandoval v. Ali*,
  34 F. Supp. 3d 1031, 1043-44 (N.D. Cal. 2014) .....................................................................11

DEFENDANTS' MOTION TO STRIKE

*Simon v. Healthways, Inc.*,
  No. CV 14-08022-BRO, 2015 WL 10015953 (C.D. Cal. Dec. 17, 2015) ...............................15

*Southwell v. Mortg. Investors Corp. of Ohio*,
  No. C13-1289 MJP, 2014 WL 3956699 (W.D. Wash. Aug. 12, 2014) ............................11, 15

*Spokeo, Inc. v. Robins*,
  136 S.Ct. 1540 (2016) ......................................................................................................9, 10

*Stearns v. Select Comfort Retail Corp.*,
  No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ................................................20

*Stoops v. Wells Fargo Bank, N.A.*,
  --- F. Supp. 3d ---, 2016 WL 3566266 (W.D. Pa. June 24, 2016).........................................9, 10

*Thomas v. Taco Bell Corp.*,
  582 Fed. Appx. 678 (9th Cir. 2014) .....................................................................................13

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009)..................................................................................................8

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010)..................................................................................................8

*Zinser v. Accufvc Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001)...............................................................................................20

**Statutes**

47 U.S.C. § 227(b) ..........................................................................................................................6

47 U.S.C. § 227(b)(1)(A) ...............................................................................................................16

47 U.S.C. § 227(b)(1)(B) ............................................................................................................6, 17

47 U.S.C. §§ 227(b)(1), (c)(5) .......................................................................................................18

47 U.S.C. § 227(c) ...........................................................................................................................6

47 U.S.C. § 227(c)(5) .....................................................................................................................18

47 U.S.C. § 277(b)(1)(A) ...............................................................................................................16

Cal. Civ. Code § 1770(a)(22) .........................................................................................................18

47 C.F.R. §§ 64.1200(a)(v), (d), (f)................................................................................................18

47 C.F.R. §§ 64.1200(c)(2), (e) ........................................................................................................6

47 C.F.R. § 64.1200(c), (d), (f) ......................................................................................................18

47 C.F.R. § 64.1200(d)(3) ................................................................................................................7

47 C.F.R. § 64.1200(f) ..............................................................................................................16, 17

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Sunrun Inc. ("Sunrun") and Clean Energy Experts LLC ("CEE") (collectively, "Defendants") submit this Memorandum of Points and Authorities in support of their Motion to Strike the Class Allegations in Plaintiffs Lynn Slovin, Samuel Katz, Jeffrey Price, and newly named Justin Birkhofer's (collectively, "Plaintiffs") Third Amended Complaint ("TAC").

### I.

### INTRODUCTION

There can be no doubt that Plaintiffs' attempt to litigate this case as a class action is untenable.  Given the numerous third parties that Plaintiffs believe are in play, and the individualized consent and agency analysis required for each third party and every call with respect to at least 200 class members, litigating this case as a class action would result in discovery-related chaos.  Plaintiffs have already undertaken exhaustive discovery – including issuing over 25 third party subpoenas – and yet *still* cannot link the vast majority of the calls at issue to Defendants.  To wit, out of the 20 calls about which that Plaintiffs complain about, they only identified two that were transferred to Defendants.  If the Court does not strike the class allegations here, the protracted discovery that has revealed no link between the callers and Defendants will inevitably have to be duplicated with *each* of the 200 putative class members, which would likely mean *years* of discovery and *thousands* of subpoenas.

Moreover, to address the merits of each putative class members' alleged claim, this Court would have to make thousands of individualized inquires – many that start with the fundamental questions of: (1) who placed the call; (2) whether the third party caller acted as Defendants' "agents;" (3) whether each alleged agent acted within the scope of their agency (which they could not have, because the vendor contracts required submission of leads compliant with the Telephone Consumer Protection Act ("TCPA")); and (4) whether each class member gave prior express consent to be called (i.e., analyze each vendor's website wherein a class member opted in to receive solar-related information, and determine whether each class member's call requesting solar-related information provided a sufficient level of consent).

Plaintiffs' TAC simply asserts wildly varied "factual" scenarios and describe calls they

merely "believe" are linked to Defendants. The Court should no longer tolerate Plaintiffs' misguided attempts to conjure a class – as one does not exist – and should again strike the class allegations contained in the TAC, as the Court did with respect to Plaintiffs' Second Amended Complaint.

**II.**

**BACKGROUND**

A.   **Procedural Background**

Plaintiff Lynn Slovin filed a class action complaint against Defendants on November 20, 2015 and a First Amended Complaint ("FAC") on December 2, 2015. ECF Nos. 1, 7. Defendants did not call Slovin and therefore have no records pertaining to calls to her. On December 21, 2015, Plaintiff's and Defendants' counsel discussed Plaintiff serving subpoenas on telecommunications companies to investigate who called Slovin. Declaration of Lauri A. Mazzuchetti ("Mazzuchetti Decl.") ¶ 2. The parties agreed that it was important to identify who placed the alleged calls, due to the concern that the calls at issue in this lawsuit had no tie to Defendants. *Id.* ¶ 3.

In turn, Plaintiff's counsel served subpoenas on certain telecommunications companies. Mazzuchetti Decl. ¶ 4. On February 17, 2016, Plaintiff's counsel stated in his declaration in support of a joint stipulation, "I have caused the service of subpoenas on third party telecommunications companies to … investigate the representation of Defendants' counsel [that neither Defendants nor their agents called Plaintiff]. I have not yet received … the information sought and I expect that additional subpoenas may need to be served based upon the responses to the outstanding subpoenas." ECF No. 22, ¶ 4. Plaintiff made the same representation on March 21, 2016. ECF No. 33-1, ¶ 3.

On March 25, 2016, Slovin, along with two other named plaintiffs (Katz and Price), filed the SAC. ECF No. 35. On March 31, 2016, Plaintiffs' counsel informed Defendants' counsel that Plaintiffs planned on serving additional subpoenas to telecommunications carriers for calls to Slovin, Katz, and Price in an attempt to identify who placed the calls. Mazzuchetti Decl. ¶ 5. Plaintiffs have served over 25 subpoenas in their attempt to figure out whether any of the calls

1    could be attributed to Defendants.  *Id*. ¶ 6.

2         The Court granted Defendants' Motion to Strike Class Allegations on April 25, 2016,

3    ordering that Plaintiffs "file their Third Amended Complaint specifying the third party agents they

4    contend made calls on behalf of Defendants …."  ECF No. 40.  Slovin, Katz, Price, and Birkhofer

5    filed their TAC on July 12, 2016.  ECF No. 46.

6    **B.    Plaintiffs' TAC[1] and Discovery Responses**

7         **1.    Plaintiffs' Discovery Has Not Yielded Any Evidence That The Vast Majority
          Of Calls Were Made By Or On Behalf Of Defendants**

8         Despite the Court's order requiring Plaintiffs to "specify[] the third party agents they

9    contend made calls on behalf of Defendants," Plaintiffs have failed to reasonably do so.  After

10   months of discovery and serving over 25 subpoenas, Plaintiffs failed to adduce a single piece of

11   evidence that links the vast majority of calls to Defendants.  Indeed, of the twenty (20) calls at

12   issue for the four named plaintiffs, Plaintiffs have only been able to identify two (2) calls – one

13   with Birkhofer and one with Price – that were transferred to Defendants by third party vendors.[2]

14   TAC ¶¶ 106, 123.  As to the Birkhofer, Defendants have produced a document indicating that the

15   April 26, 2016 call to Birkhofer was made after the vendor received express prior written consent

16   to call Birkhofer's number.  *See* Mazzuchetti Decl. ¶ 8.  As to Price, Defendants are still

17   investigating whether Price consented to receive the call, but it is important to note that the third

18   party believed to have called Price, Epath Media, refuses to provide information regarding that

19   call.  Declaration of Dr. Beau Peelle ("Peelle Decl.") ¶ 2.

20        Notably, in Plaintiffs' July 26, 2016 response to interrogatories seeking the complete

21   factual basis for their allegation that the calls were made by Defendants or persons allegedly

22   "acting at [their] direction," Plaintiffs asserted blanket objections and claimed that they had not

23   "had a reasonable opportunity to complete discovery."  Mazzuchetti Decl. ¶ 9, Ex. A.  In other

24

---

[1] Defendants assume the truth of the allegations asserted in the TAC for purposes of this Motion only.

[2] While Plaintiffs allege that the August 18, 2015 call to Katz involved a vendor that mentioned "Sunrun" on the call, even Plaintiffs do *not* allege that call was transferred to Sunrun.  *See* TAC ¶¶ 93-94.  In any event, Defendants have produced documents regarding Katz expressly opting in to receive the call.  Mazzuchetti Dec. ¶ 7.

1  words, nine (9) months after filing the initial complaint and serving dozens of subpoenas,

2  Plaintiffs still cannot identify any evidence that the majority of calls were made by or on behalf of

3  Defendants.

4      Moreover, Plaintiffs' discovery responses confirm that they are accusing Defendants of

5  calls from companies with which Defendants have no relationship.  For instance, when identifying

6  all persons who may have knowledge of the facts underlying Plaintiffs' claims, Plaintiffs name a

7  third-party, Sure Touch Leads / Leads Row, which has no relationship to Defendants.  Declaration

8  of Sara Long ("Long Decl") ¶ 2; Peelle Decl. ¶ 3.  Similarly, Plaintiffs assert that on November 2,

9  2015, someone called Slovin from "U.S. Solar." Mazzuchetti Decl. ¶¶ 8-9, Ex. A.  That is **not** a

10  name used by Defendants and Defendants are not aware of any third party vendors using that

11  name.  Long Decl. ¶ 3; Peelle Decl. ¶ 4.

12      **2.**      **Plaintiffs' "Factual" Allegations**

13      In the TAC, four different plaintiffs assert entirely different "factual" scenarios describing

14  calls they "believe" were linked to Defendants.  In many instances, that purported "belief" exists

15  only because solar products were mentioned, even where the callers identified themselves as

16  different business entities.  *See, e.g.*, TAC ¶¶ 78, 108.  Even when Plaintiffs allege that the caller

17  identified themselves as calling from "Solar America," they do *not* (nor can they) contend that

18  Defendants gave these entities the authority to use the "Solar America" name.[3]  *See generally*

19  TAC.

20      The TAC also alleges that from September to November 2015, Plaintiff Slovin received

21  calls to her cell number, which allegedly was registered on the National Do Not Call Registry

22  ("NDNCR"), from local Maryland numbers from entities "that she **believes** were from

23  Defendants."  TAC ¶¶ 77-79 (emphasis added).  She alleges that *some* callers identified

24  themselves as from "Solar America;" some calls involved clicks, a pause and then a voice; others

25  involved disconnected calls after the pause; and others involved voicemails with unintelligible

26  

27  [3] The inability of Plaintiffs to identify the callers is not surprising, as even Defendants have had to
28  investigate third parties using the "Solar America" name without authorization.  ECF No. 38,
    Declaration of Reginald Norris ¶¶ 2-3.

machine sounds.  *Id.* ¶¶ 81-82.  She claims that "[d]iscovery and investigation, to date, ***indicates*** that Defendants' Agent, Lead Genesis Partners, LLC placed these calls," without alleging the facts underlying the suggestion.  *Id.* ¶ 80 (emphasis added).  Plaintiffs then fail to allege any facts supporting how Lead Genesis Partners, LLC was acting "on behalf of" Defendants or acting within the scope of the alleged agency when allegedly calling Slovin.  *See id.* ¶¶ 77-90.

Plaintiff Katz's allegations differ from Slovin's in nearly every detail.  He alleges that he received calls on his cell number (which was allegedly registered on the NDNCR) on July 27, August 4, August 18, October 28-29, and November 2, 2015.  TAC ¶¶ 92-93, 96.  Katz claims that the August 18, 2015 call was from "Mediamix365," with the caller allegedly saying she worked for "Solar Nation but was calling on behalf of Sunrun." *Id.* ¶ 94.  Mr. Katz does not claim the call was ever transferred to Sunrun.[4]  *Id.* ¶¶ 93-94.  He also alleges that the October 28-29, and November 2, 2015 calls were from Defendants' Agent, Solar Media Team, using the name "Solar America."  *Id.* ¶ 96.  Plaintiffs fail, however, to allege any other facts supporting how Solar Media Team was acting "on behalf of" Defendants or acted within the scope of any alleged agency when calling Katz.  *See id.* ¶ 96.

Plaintiff Price alleges still different facts.  He claims that on March 28, 2014, he received a call from a California number at his residential landline, which he says was registered on the NDNCR.  TAC ¶¶ 102, 104.  There was a long pause and electronic sounds or clicks before the caller, which he identifies as "Clean Energy Foundation," solicited Price to have "Solar America" come to his home.  *Id.* ¶ 105.  Price received a call on April 2, 2014 and was live-transferred to a CEE representative.[5]  *Id.* ¶ 106.  Price then claims that he received a call on August 18, 2014 from a California number where there was a long pause or electronic sounds or clicks before someone from "Clean Energy Initiative" stated that Price qualified for a solar rebate.  *Id.* ¶ 108.  Next, on September 2, 2014, Price received a call from a California number from a caller ID,

---

[4] Defendants have produced documents regarding Katz expressly opting in to receive the call. Mazzuchetti Decl. ¶ 7.

[5] The third party vendor refuses to provide any information concerning whether or not Price consented to receive the April 2, 2014 call.  Peelle Decl. ¶ 2.

1   "UTILITIES," and after a long pause and no voice, the call automatically disconnected.  *Id*. ¶ 109.

2   Price claims that he received a similar call on September 3, 2014, except that there was a

3   prerecorded message from "Energy Release Program" and then a live caller from "Green Energy

4   Association" asked him to waive his TCPA rights for subsequent calls from Solar America.  *Id*. ¶

5   110.  As for a call on February 27, 2016, he contends that after a long pause, the caller from

6   "Clean Energy Advocates" spoke about government solar rebates.  *Id*. ¶ 114.  Price alleges that he

7   received more calls from "Clean Energy Advocates" on March 2 and March 15, 2016.  *Id*. ¶ 116.

8   He claims that these calls were from "Epath Media," but fails to allege any facts in support of how

9   Epath Media was acting "on behalf of" Defendants or acting within the scope of the alleged

10  agency when calling Price.  *See id.* ¶¶ 103, 105-116.

11         Plaintiff Birkhofer's claims also differ from those of the other three plaintiffs.  He claims

12  that in February 2016 he received an unspecified number of calls on his cell phone for months,

13  despite being registered to the NDNCR.  TAC ¶¶ 121-22.  As to only one of those calls, on April

14  26, 2016, he says the caller transferred the call to Defendants' representative, who subsequently

15  called him back.[6]  *Id.* ¶¶ 123-24.

16         **3.     Plaintiffs' TCPA and CLRA Claims**

17         Plaintiffs assert five causes of action, alleging that Defendants are liable for violations of

18  the TCPA and the Consumer Legal Remedies Act ("CLRA").

19         First, under 47 U.S.C. § 227(b), Slovin, Katz, and Birkhofer allege that Defendants are

20  liable for alleged calls placed to cell phones using any "automatic telephone dialing system"

21  ("ATDS") or by prerecorded message, without the requisite level of consent.

22         Second, Price only alleges that Defendants are liable under 47 U.S.C. § 227(b)(1)(B) for

23  alleged calls made to residential landlines using a prerecorded voice without prior express consent.

24         Third, all Plaintiffs allege that Defendants are liable under 47 U.S.C. § 227(c) for making

25  more than one telephone solicitation call within a twelve-month period to a residential subscriber

26

27  _____

28  [6] As previously noted, Defendants have produced evidence that the April 26, 2016 call to
    Birkhofer was made after the third party vendor received prior express written consent to contact
    Birkhofer's number.

1   who has registered their number on the NDNCR.  *See also* 47 C.F.R. §§ 64.1200(c)(2), (e).

2         <u>Fourth</u>, Plaintiffs claim a violation TCPA's implementing regulation, 47 C.F.R. §

3   64.1200(d)(3), for calls to a residential consumer who requested that their number be placed on an

4   internal do-not-call list.[7]

5         <u>Fifth</u>, Price only claims that Defendants are liable under the CLRA for a prerecorded

6   message call placed to residential number.

7         Slovin, Katz, Price, and/or Birkhofer seek to represent five different putative classes of

8   persons who allegedly received calls from November 20, 2011 to the present:

9   **Robocall Cellular Class:**  All persons in the U.S. who received a call from or on
10  behalf of Defendants to their cell phones through an ATDS and/or artificial / pre-
    recorded voice.

11  **Robocall Landline Class:**  All persons in the U.S. who received a call from or on
12  behalf of Defendants to their residential phone line using an artificial or
    prerecorded voice to deliver a message.

13  **National Do Not Call Class ("NDNCR Class"):**  All persons in the U.S. whose
14  number was registered with the national Do-Not-Call registry for at least thirty
    days, who received more than one telephone call from or on behalf of Defendants
15  that promoted solar energy products or services within any 12-month period.

16  **Company Do Not Call Class ("Company DNC Class"):** All persons in the U.S.
17  who requested that their telephone numbers be placed on Defendants' do not call
    list who received a call to their telephone by or on behalf of Defendants.

18  **California Class:** All persons in California who received a call from or on behalf
19  of Defendants who played a prerecorded message without a natural voice
    informing the person of the name and organization of the caller and the address or
20  telephone number of the caller.

21  TAC ¶ 130.  Plaintiffs allege that there are over 200 class members.  *Id*. ¶ 132.  Particularly

22  pertinent here, Plaintiffs seek to include in their class definitions recipients of calls who allegedly

23  received calls from third parties that were acting "on behalf of" Defendants.  *Id.*

24        Plaintiffs seek as much as $1,500 for every call that allegedly violated the TCPA and also

25  attorneys' fees.  TAC at 34:28-35:3.

26

27  _____

28  [7] Defendants dispute whether this implementing regulation, which creates a "safe harbor" defense
    under the NDNCR provision of the TCPA, creates an independent private right of action.

**III.**

**THE STANDARD ON A MOTION TO STRIKE**

A court may strike from a pleading "an insufficient defense" or "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Where the allegations in a complaint demonstrate that the action is not suitable for class treatment, it is appropriate to strike the class allegations to prevent unnecessary and wasteful class discovery.  *See Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010).  "Under Rule 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations *prior to discovery* if the complaint demonstrates that a class action cannot be maintained."  *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009) (emphasis added).

Courts have recognized that pre-discovery class certification determinations are proper where, as here, discovery would simply expend resources without altering the result because that expense and delay is unwarranted.  *See Doninger v. Pac. Nw. Bell, Inc*., 564 F.2d 1304, 1313 (9th Cir. 1977) (affirming denial of class certification without allowing discovery and noting that "where the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites ... the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations").  The "plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations" and "[a]bsent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion."  *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *see Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935, 944 (9th Cir. 2009) ("a party seeking class certification is not always entitled to discovery on the class certification issue").

A plaintiff seeking to pursue a class action must allege two threshold matters: (1) that he has standing to pursue the claims he is asserting and (2) that the population of the proposed class be "presently ascertainable" by reference to objective criteria.  *See Nelson v. King County*, 895 F.2d 1248, 1249-50 (9th Cir. 1990) (holding that if litigant fails to establish standing, he may not seek relief on behalf of himself or other class member); *Rodriguez v. Gates*, No. CV99-13190, 2002 WL

1  1162675, at *8 (C.D. Cal. May 30, 2002).

2    Only if the plaintiff's claims satisfy those two threshold elements does the Court move on to

3  consider the four factors under Rule 23(a) – numerosity, commonality, typicality, and adequacy of

4  representation – and then the requirements of Rule 23(b)(3), pursuant to which questions of law or

5  fact common to class members must predominate over any questions affecting only individual

6  members, and that a class action is superior to other available methods for fairly and efficiently

7  adjudicating the controversy.  Class certification should be denied whenever ascertaining the class

8  membership requires unwieldy individualized inquiries.  *See Dietz v. Comcast Corp.*, No. C 06-

9  06352, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007).

10  **IV.**

11  **THE CLASS ALLEGATIONS SHOULD BE STRICKEN**

12  **A.** **The Class Allegations Should Be Stricken Because The Classes Contain Members Lacking Article III Standing And The Classes Are Not Ascertainable**

13

14    Plaintiffs' class claims fail at every level of the inquiry, starting with the question of

15  standing.  "[N]o class may be certified that contains members lacking Article III standing."  *Mazza*

16  *v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) (class must be defined as to

17  include only members who were injured).  As to Article III standing, the Supreme Court recently

18  held that a consumer cannot satisfy the injury-in-fact demands of Article III by alleging a bare

19  procedural violation of a federal statute.  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1550 (2016).  If a

20  plaintiff invites the very calls that they complain of having received, that plaintiff has suffered no

21  injury-in-fact.  *Stoops v. Wells Fargo Bank, N.A.*, --- F. Supp. 3d ---, 2016 WL 3566266, at *11-12

22  (W.D. Pa. June 24, 2016).  Where the class includes individuals that lack standing, courts strike

23  class allegations prior to discovery.  *See, e.g., Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989-90

24  (N.D. Cal. 2009).

25    *Spokeo* makes clear that courts must now engage in a case-specific analysis to determine

26  whether the plaintiff has sustained a concrete injury as a result of the alleged violation.  "[A]n

27  asserted injury to even a statutorily conferred right 'must actually exist,' and must have 'affect[ed]

28  the plaintiff in a personal and individual way.'"  *Hancock v. Urban Outfitters, Inc.*, --- F.3d ----,

9

1  2016 WL 3996710, at *3 (D.C. Cir. July 26, 2016) (quoting *Spokeo*, 136 S. Ct. at 1543, 1548).

2  Here, even assuming that a technical violation of the TCPA occurred (which is disputed), it is

3  unknowable whether each absent class members suffered any injury without conducting an

4  individualized inquiry.  The putative classes are certainly not defined in such a way that anyone

5  within them would have standing.  A substantial number of the members of those classes are

6  unlikely to have suffered any concrete injury and thus would lack standing.

7       It is also questionable here whether the named plaintiffs can each satisfy Article III

8  standing.  For example, there is evidence that Plaintiff Birkhofer expressly requested to receive

9  information about solar products on-line, thus, inviting the calls about which he now complains.

10  His claim bears resemblance to the plaintiff's claim in *Stoops*, in which the court held that, under

11  *Spokeo*, the plaintiff could not assert a concrete injury based on receiving telemarketing calls.

12  *Stoops v. Wells Fargo Bank, N.A.*, No. 3:15-83, 2016 WL 3566266, at *8 (W.D. Pa. June 24,

13  2016).  The plaintiff in *Stoops* purchased a number of prepaid cell phones and cell phone numbers,

14  activated and charged the phones, and then "waited for them to ring." *Id.* at *1.  She would

15  "sometimes answer[] the calls to identify the caller," and would "track[] the incoming calls … on

16  a call log sheet." *Id.*  Although she "occasionally informed the caller to stop calling, she intended

17  for the calls to continue" so that she could pursue statutory damages under the TCPA. *Id.*  After

18  receiving phone calls from Wells Fargo on two of these prepaid phones, the plaintiff sued Wells

19  Fargo under the TCPA. *Id.*  The *Stoops* court held that the plaintiff lacked standing, explaining

20  that her "privacy interests were not violated when she received [the] calls" at issue. *Id.* at *11.

21  The court noted that the plaintiff, far from considering the phone calls an unwanted inconvenience,

22  sought to be called so that she could bring TCPA lawsuits, and had purchased multiple phones

23  precisely to increase the number of TCPA lawsuits that she could bring. *Id.*  Thus, the court in

24  Stoops concluded, "the calls did not constitute 'the nuisance, invasion of privacy, cost, and

25  inconvenience' from which Congress intended to protect consumers." *Id.*  Like *Stoops*, Plaintiff

26  Birkhofer, and any putative class members who requested or desired to receive calls, cannot

27  satisfy the requirements of Article III standing.

28  / / /

1      Similarly, Plaintiffs' classes should be stricken because they would necessarily include

2  persons who have no TCPA claim because they provided the requisite level of consent under the

3  TCPA.  Because consent is both a complete defense to Plaintiffs' claims and an inherently

4  individual issue, Plaintiffs attempt to duck that bar to certification by deleting from the TAC a

5  sentence that appeared in their earlier complaints:  "Excluded from the Classes [are] any persons

6  who consented to be called by Defendants …."  *Compare* SAC ¶ 79 to TAC ¶ 131.[8]  Plaintiffs are

7  attempting to represent persons who specifically consented to be called or requested to be called,

8  but such persons have suffered no injury and have no standing.  TAC ¶¶ 130-31.  For example,

9  Plaintiffs' proposed classes would encompass even the April 26, 2016 call to Birkhofer, even

10 though he explicitly "opted-in" to receive that call.  *See* Mazzuchetti Decl. ¶ 7.  The classes

11 include people who have no standing under the TCPA because there can be no injury from having

12 received the very call they requested.  This is precisely the type of case where the class allegations

13 should be stricken.

14     Similarly, a class that includes those who have not been harmed is both imprecise and

15 overbroad.  *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1043-44 (N.D. Cal. 2014) (striking class

16 allegations at pleading stage because proposed class included uninjured individuals and was

17 overbroad).  In TCPA cases, courts have held that class definitions that could potentially include

18 thousands who consented to receive a call that could not violate the TCPA render a class

19 overbroad and not sufficiently definite to establish ascertainability.  *See, e.g., Jamison v. First*

20 *Credit Servs., Inc*., 290 F.R.D. 92, 108 (N.D. Ill. 2013) (holding that proposed class was

21 unascertainable and overbroad where "class could include thousands of individuals who consented

22 to receiving calls on their cellphones and thus have no grievance under the TCPA").

23     In light of the foregoing authorities, anyone who received calls from Defendants or third

24 parties – even those who specifically consented to be called or requested to be called – are

25 members of the classes.  TAC ¶¶ 130-31.  As such, the classes include large numbers of people

26

27 [8] Consent is a defense to the TCPA, even for those who previously requested to be on a company
DNC list.  *Southwell v. Mortg. Investors Corp. of Ohio*, No. C13-1289 MJP, 2014 WL 3956699, at
28 *6 (W.D. Wash. Aug. 12, 2014) (holding consent issue precluded class certification of internal
DNC class).

1   who have no conceivable claim under the TCPA, rendering the classes fatally overbroad.

2       Had Plaintiffs not deleted the sentence on excluding those persons who consented to

3   receive the call, the class would still fail for lack of ascertainability.  Where the determination of

4   class membership would require the court to "delve into the issues of liability" –here, the question

5   of consent – the class is not ascertainable and class certification is improper.  *Gannon v. Network*

6   *Tel. Servs., Inc.*, No. CV 12-9777-RGK (PJWx), 2013 WL 2450199, *2-3 (C.D. Cal. June 5, 2013)

7   (holding Plaintiffs' proposed class was unascertainable because it would require individual

8   inquiries regarding whether potential class members consented to receiving text messages); *Dixon*

9   *v. Monterey Fin. Servs., Inc.*, No. 15-cv-03298-MMC, 2016 WL 3456680, at *5 (N.D. Cal. June

10   24, 2016) (striking class allegations because putative TCPA class was fail-safe and comprised of

11   those who received calls without recipient's "prior express consent").  The problem cannot be

12   solved, which is why numerous courts have stricken class allegations in cases, like this one, where

13   individual consent is at issue.

14       Because Plaintiffs' classes improperly include persons who lack standing and are not

15   ascertainable, Plaintiffs' class allegations should be stricken.

16   **B.   Individualized Issues Preclude The Finding Of Predominance**

17       The allegations and class definitions in the TAC also demonstrate that Plaintiffs cannot

18   establish that "questions of law or fact common to class members predominate over any questions

19   affecting only individual members," as required by Rule 23(b).  *Local Joint Exec. Bd. of*

20   *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

21   Rule 23(b) requires that questions of law or fact common to the members of the class predominate

22   over any questions affecting only individual members.  *Id*.  Plaintiffs must show that common

23   factual issues "present a significant aspect of the case and they can be resolved for all members of

24   the class in a single adjudication."  *Id*.  "In TCPA actions, the predominance inquiry is satisfied

25   only when Plaintiffs 'advance a viable theory of generalized proof to establish liability with

26   respect to the class involved.'"  *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574,

27   577 (S.D. Cal. 2013).  Particularly pertinent here, common factual issues will not predominate

28   "[i]f, to make a prima facie showing on a given question, the members of a proposed class will

1   need to present evidence that varies from member to member." *Blades v. Monsanto*, 400 F.3d

2   562, 566 (8th Cir. 2005).

     **1.**     **The Issues Of Agency Create Individualized Issues That Predominate Over Common Issues**

     It is well-settled that agency rules are applied under the TCPA to determine whether the

5   action of a third-party is done "on behalf" of a defendant.  *See In the Matter of the Joint Petition

6   filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 2013 WL 1934349, ¶ 1 (F.C.C. May 9, 2013)

7   (noting that a company may be held vicariously liable under "federal common law principles of

8   agency" for TCPA violations committed by third-party telemarketers); *Thomas v. Taco Bell Corp*.,

9   582 Fed. Appx. 678, 679 (9th Cir. 2014) (affirming dismissal of TCPA claim, where trial court

10  concluded vendor that sent text message were not "agents" of Taco Bell).  The burden of making a

11  showing of agency is on the proponent of the agency.  *ING Bank, FSB v. Chang Seob Ahn*, 758 F.

12  Supp. 2d 936, 941 (N.D. Cal. 2010).

     An agent acts with actual authority when, at the time of taking action that has legal

14  consequences for the principal, the agent reasonably believes, in accordance with the principal's

15  manifestations to the agent, that the principal wishes the agent so to act.  *Makaron v. GE Sec.*

16  *Mfg., Inc*., No. CV-14-1274-GW (AGRx), 2015 WL 3526253, at *6 (C.D. Cal. May 18, 2015)

17  (citing RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006)).  To establish vicarious liability

18  under the TCPA, a plaintiff must show that the actual caller acted as an agent of the defendant and

19  that the defendant controlled him and the manner of the campaign.  *Id*.; *Taco Bell*, 582 Fed. Appx.

20  at 679 (citing *Thomas v. Taco Bell*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012)).

     Even if an agency relationship were to exist between a third party caller and a defendant, a

22  plaintiff must present specific evidence that the third party was making calls within the scope of

23  the agency relationship.  *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938-39

24  (7th Cir. Mar. 21, 2016) (no third party TCPA liability under agency theory for faxes sent outside

25  20-mile radius, where defendant had instructed third party to only send faxes within 20-mile

26  radius).  A principal is only liable for actions of the agent committed within the scope of the

27  authority, and not for actions outside of the scope of the agent's authority.  *Id*.; *Johnson v. JP*

28

DEFENDANTS' MOTION TO STRIKE

*Morgan Chase Bank*, No. CV-F-008-0081 LJO SMS, 2008 WL 5100177, at *5 (E.D. Cal. Dec. 1, 2008).  There can be no finding of actual authority if the actions of the alleged agent expressly contradicted the alleged principal's actual instructions.  *Bridgeview*, 816 F.3d at 938-39.

Here, Plaintiffs crafted class definitions that would require a liability determination of agency to simply determine class membership of those receiving calls "on behalf of Defendants." TAC ¶ 130 (emphasis added).  Plaintiffs cannot state with any reasonable basis that the callers were acting as an agent of Defendants.[9]  This is particularly the case because third party vendors typically make calls and provide leads to companies other than Defendants.[10]

Even if Plaintiffs could show that the third party vendors acted as Defendants' "agents," Plaintiffs would still be faced with the insurmountable burden of proving that the "agents" acted within the scope of the agency.  Indeed, Plaintiffs have no hope of meeting this burden because the vendor contracts confirm that the vendors are authorized to submit only leads that were compliant with the TCPA (i.e., leads that had provided the requisite level of consent under the TCPA).[11]

Therefore, even if the identities of the callers who placed the calls could be learned through discovery, the Court would be required to determine whether each caller was an agent of Defendants, and whether each call was within the scope of the agency relationship, which are necessarily fact-intensive inquiries.  *See Bowoto v. Chevron Texaco Corp*., 312 F. Supp. 2d 1229, 1243 (N.D. Cal. 2004) (agency is a "fact-intensive" inquiry).

### 2.    The Issues Of Consent Create Individualized Issues That Predominate Over Common Issues

Plaintiffs have already conceded that they and the absent class members have no claim if

---

[9] Indeed, CEE's contract Epath Media explicitly states, "The relationship between CEE and Publisher [Epath Media] established by this Agreement is that of independent contractor, and no other relationship is intended, including a … agency …."  Peelle Decl. ¶ 5, Ex. A, § 11.a.

[10] Sunrun's contract with Mediamix365 states, "The services provided by MEDIA MIX 365 are non-exclusive and MEDIA MIX 365 may provide the same or similar services to others …." Long Decl. ¶ 4, Ex. A, § 1.0.

[11] For example, the CEE's contract with Epath Media stated that CEE requires that "all consumers that become Contract Leads … "opt-in" via a process, that are … compliant with applicable federal, state and local laws …."  Peelle Decl. ¶ 5, Ex. A, § 5.d.  Another example is found in Sunrun's contract with Mediamix365, which states, "Meda Mix shall perform its duties and obligations under this agreement in compliance with … the Telephone Consumer Protection Act." Long Decl. ¶ 4, Ex. A, § 2.2.

1    they consented to receive the calls.  Numerous courts have refused to certify classes in TCPA

2    actions because the issue of consent precludes a finding of predominance.  *See, e.g., Blair v. CBE*

3    *Grp., Inc.,* 309 F.R.D. 621, 631 (S.D. Cal. 2015) (finding no predominance where "extensive

4    individual factual inquiries required to determine whether a particular class member provided

5    express consent"); *Southwell v. Mortg. Investors Corp. of Ohio, Inc.,* No. C13-1289 MJP, 2014

6    WL 3956699, at *5 (W.D. Wash. Aug. 12, 2014) ("the individualized consent will … reduce the

7    trial … [to] individualized inquires required to establish whether class members … provided

8    consent to be called").

9          Because there are a "variety" of ways to provide consent, courts have found that there can

10   be no predominance of common issues.  *See Connelly*, 294 F.R.D. at 577-78 ("the differing

11   circumstances under which putative class members provided their cell phone numbers to Hilton …

12   [was] sufficiently varied to provide dissimilar opportunities for the expression of consent" where

13   cell numbers were obtained "over the phone, online, or by filling out a paper application …

14   through third parties, or … travel agencies"); *Simon v. Healthways, Inc.,* No. CV 14-08022-BRO

15   (JCx), 2015 WL 10015953, at *5-8 (C.D. Cal. Dec. 17, 2015) (the court "cannot and will not

16   engage in hundreds of mini-trials to determine whether a putative class member provided

17   Defendants his or her or its prior express permission" where consent was obtained in a "variety" of

18   ways, including verbally or registering online).

19         In light of the above cases, this Court would have to look at how each of the four vendors,

20   along with other unidentified third parties for the purported 200 unnamed class members, captured

21   consent.  For example, the Court would have to determine if class members requested to receive

22   information regarding solar products online, and if so, whether the requisite level of consent was

23   captured.  If the class member called in to receive solar-related information, the Court would have

24   to analyze those conversations to determine whether there was a sufficient level of consent for a

25   return call.  Due to the many ways in which consent may be provided, the Court would be have to

26   conduct individualized inquiries for each call recipient to sort out which calls were made with

27   consent and/or whether consent was revoked or withdrawn and re-granted during the course of a

28   company's business relationship with the callers.  Consent, the requisite level thereof, and the

1    revocation of consent are highly individualized and fact-intensive inquires that cannot be resolved

2    in one strike and are not amenable to class resolution.  The fact that a third party vendor received

3    prior express written consent to call Birkhofer's number demonstrates that these issues are not

4    simply hypothetical, and the Court will be confronted with the issue of consent with respect to

5    hundreds of putative class members.

6          **3.**       **Additional Individualized Issues Will Also Predominate Over Common Issues**

7          In addition to agency and the lack of consent, Plaintiffs and absent class members would

8    be required to prove a number of other elements in order to prevail on their five causes of action.

9          <u>First</u>, the "Robocall Cellular Class" would have to show that for every call received:

10   (1) each class member was a subscriber or regular user of the phone number at the time the call

11   was received, and that the phone number was assigned to cellular service (outside of the ported

12   number grace period); (2) that an ATDS (or prerecorded voice) was used to place the calls; and (3)

13   that the calls were telephone solicitations for Defendants' goods or services.  47 U.S.C. §

14   227(b)(1)(A); 47 C.F.R. § 64.1200(f); *In the Matter of Rules & Reg's Implementing the TCPA of*

15   *1991*, 19 FCC Rcd. 19215, 2004 WL 2104233, ¶ 1 (F.C.C. Sept. 21, 2004) ("2004 FCC Order");

16   *Horowitz v. GC Servs. Ltd. P'ship*, No. 14cv2512–MMA (RBB), 2015 WL 1959377, at *10 (S.D.

17   Cal. Apr. 28, 2015) (subscriber or regular user has standing to sue for TCPA violation).  This class

18   includes only persons who received calls made through the use of an alleged "ATDS" or an

19   artificial or prerecorded voice.  *See* 47 U.S.C. § 277(b)(1)(A).  The FCC ruled that the

20   determination of whether a calling technology constitutes an ATDS is an individualized fact-

21   specific inquiry that should be addressed on a "case-by-case" basis.  *In re Rules and Reg's*

22   *Implementing the TCPA of 1991*, 30 FCC Rcd 7961, 2015 WL 4387780, ¶ 17 (F.C.C. July 10,

23   2015).  A merits-based determination would be required to determine whether even Slovin, Katz,

24   and Birkhofer (who seek to represent the Robocall Cellular Class) are members of that class.

25   Specifically, this Court would have to determine whether they received calls made with equipment

26   that satisfies the definition of an ATDS, based on the equipment used by each caller (if one can

27   even be identified).  This same exercise would be required for each purported class member.

28         <u>Second</u>, the "Robocall Landline Class" would have to show, among other things, that

for every call received:  (1) Plaintiffs and each class member were subscribers or regular users of the phone number at the time the call was received; (2) the calls were made to a residential phone line (meaning, a phone line used primarily for residential purposes); (3) a prerecorded message communicating a telemarketing message was played when each class member answered the phone; and (4) the calls were telephone solicitations for Defendants' goods or services.  47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(f); *Horowitz*, 2015 WL 1959377, at *10.  This class, and the "NDNCR Class," are meant to include only include persons who received calls on "residential telephone lines," because the applicable TCPA provisions do not apply for calls made by businesses to businesses.  *See Rules and Reg's Implementing the TCPA of 1991*, 23 FCC Rcd. 9779, 2008 WL 2437522, ¶ 14 (F.C.C. June 17, 2008) ("the National Do-Not-Call Registry applies to 'residential subscribers' and does not preclude calls to businesses."); *Cellco P'ship v. Dealers Warranty*, *LLC,* No. 09-1814, 2010 WL 3946713, at *11 (D.N.J. Oct. 5, 2010) (recognizing that the FCC declined to adopt additional prohibitions on prerecorded or artificial voice calls to businesses under the TCPA).  Given the prevalence of home-based businesses, the FCC stated that the determination of whether a call is made to a residential number versus a business number should be made on a case-by-case basis.  *See Rules and Reg's Implementing the TCPA of 1991*, 20 FCC Rcd. 3788, 2005 WL 418189, ¶ 14 (F.C.C. Feb. 18, 2005); *see, e.g., Bank v. Indep. Eng. Grp. LLC*, No. 12-CV-1369 (JG)(VMS), 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015) (finding telephone was a "business line" only after defendant demonstrated that plaintiff provides number on his business card and on his professional letterhead and provides his number to prospective clients).  Further, class membership for the Robocall Landline Class depends on whether the call recipient heard the recorded message.  Thus, the Court would be required to conduct numerous multifaceted individualized inquiries to determine class membership.

       Third, the "NDNCR Class" would have to show, among other things, that for every call received: (1) each class member was a subscriber or regular user of the phone number at the time the call was received; (2) the calls were made to a residential phone line (meaning, a phone line used primarily for residential purposes); (3) that each prospective class member

1   received at least two such calls in any 12-month period; (4) the calls were telephone

2   solicitations for Defendants' goods or services; (5) the calls were received after that Plaintiff or

3   class member registered his or her number on the NDNCR (after the expiration of the grace

4   period following registration), and before that number was taken off the NDNCR; and (6) that

5   Plaintiff and the class members did not have an existing business relationship with the caller or

6   Defendants.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c), (d), (f); *Horowitz*, 2015 WL

7   1959377, at *10.

8       Fourth, the "Company DNC Class" would have to show that for every call received: (1)

9   Plaintiffs and each class member was subscriber or regular user of the phone number at the

10   time the call was received; (2) the calls were made to a residential phone line (meaning, a

11   phone line used primarily for residential purposes); (3) that each prospective class member

12   received at least two such calls in any 12-month period; (4) the calls were telephone

13   solicitations for Defendants' goods or services; (5) by the time the calls were made, each class

14   member had made "a request . . . not to receive calls from that person or entity;" (6) that each

15   such call was not received within 30 days of that request or more than five years after that

16   request; and (7) that Plaintiff and the class members did not make a subsequent inquiry

17   (following a company specific "do not call" request).  47 U.S.C. §§ 227(b)(1), (c)(5); 47

18   C.F.R. §§ 64.1200(a)(v), (d), (f); *Horowitz*, 2015 WL 1959377, at *10.

19       Fifth, the "California Class" would have to show that for every call received: (1) the call

20   was unsolicited, (2) the call was a prerecorded message, (3) the call did not have a natural voice

21   first informing the person answering the name of the caller, the organization being representation,

22   and either the address or telephone of the caller, and (4) the call recipient was not a business

23   associate or business of Defendants and did not have an established relationship with Defendants.

24   Cal. Civ. Code § 1770(a)(22).  This class, moreover, is defined, in part, as "all natural persons in

25   California who received a call …."  TAC ¶ 130.  It is unclear whether Plaintiffs mean California

26   residents or individuals who were in California when they "received" a call and thus, this proposed

27   definition is too amorphous to adequately identify the class members.  To the extent Plaintiffs

28   attempt to rely upon area codes as a proxy for the location of where a call was received, courts

have refused to certify classes where plaintiffs have relied on area codes in this manner. *See Hartman v. United Bank Card Inc.*, No. C11-1753, 2012 WL 4792926, at *2 (W.D. Wash. Oct. 9, 2012) ("Just because a mobile telephone number was called does not mean that it was located within Washington at the time it was called. That is the point of the court's order [denying certification]: we simply cannot tell where a mobile number was located at the time of the call in question without an evidentiary hearing"), *subsequent proceeding* at 291 F.R.D. 591, 598 (W.D. Wash. 2013) (rejecting proposed revised class definition because "irrespective of whether the number dialed had a Washington State area code, the evidence in the record indicates that Defendants did not know where the person receiving the call was located …. Thus, the new class definition would not eliminate the need for individualized hearings with respect to fact issues"). Like the unascertainable Robocall Landline Class, the California Class also would require that the person answering the call only have heard a voice recording, rather than a live voice, when answering the call. For all these reasons, determining class membership would require numerous individualized inquiries.

To address the merits of each putative class members' alleged claim, this Court would have to make numerous individualized inquires – many that start with the fundamental questions of: (1) who placed the call, (2) whether that third party was an "agent" of Defendants, and whether that third party acted within the scope of the agency relationship when calling the class, and (3) whether the class member gave prior express consent to receive the call. The fact that Plaintiffs' counsel has served over 25 subpoenas in their attempt to identify the callers with respect to only the four named plaintiffs underscores how cumbersome it would be to identify the callers with respect to over 200 putative class members. This case is simply not amenable to class adjudication. Accordingly, the Court should strike the class allegations from the TAC.

## C.  <u>The Lack Of Typicality Supports The Striking Of The Class Allegations</u>

Plaintiffs' claims also fail for a lack of typicality under Rule 23(a). The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The test of typicality is whether other members have the same or similar injury, whether the action is based

1   on conduct that is not unique to the named plaintiffs, and whether other class members have been

2   injured by the same course of conduct.  *Id.*  Courts routinely strike class allegations when a

3   plaintiff's claim is not typical of the class.  *See, e.g., Stearns v. Select Comfort Retail Corp.*, No.

4   08-2746 JF, 2009 WL 1635931, at *18-19 (N.D. Cal. June 5, 2009) (granting motion to strike

5   where named plaintiffs may not have cognizable claim and may not be part of class); *Donaca v.*

6   *Dish Network, LLC*, 303 F.R.D. 390, 398-99 (D. Colo. 2016) (finding no typicality where named

7   plaintiff had not demonstrated that he received call from any of the four third parties from whom

8   plaintiff obtained call records, as plaintiff was not member of the classes he sought to represent).

9        As in these other cases, Slovin's, Katz's, and Birkhofer's claims are not typical of the

10  putative classes because they cannot show that they received calls from Defendants' third party

11  vendors, without prior express consent.  Indeed, they are not even members of their proposed

12  classes.

13  **D.**      **A Class Action Is Not The Superior Method Of Adjudicating The Issues In This Case**

14       Rule 23's "superiority" requirement mandates that a class be superior to the other methods

15  for the fair and efficient adjudication of the controversy.  *Zinser v. Accufvc Research Inst., Inc.*,

16  253 F.3d 1180, 1189 (9th Cir. 2001).  "If each class member has to litigate numerous and

17  substantial separate issues to establish his or her right to recover individually, a class action is not

18  'superior.'"  *Id.* at 1192.  Because of the mini-trials that are inherent in individualized questions

19  concerning consent, courts have routinely find that class treatment is not a superior method of

20  adjudicating TCPA cases.  *See, e.g., Barret v. ADT Corp.*, No. 2:15-cv-1348, 2016 WL 865672, at

21  *9 (S.D. Oh. Mar. 7, 2016).

22       Similar to the above cases, Plaintiffs here cannot demonstrate that a class action is a

23  superior mechanism through which to litigate their claims.  Determining the multiple issues

24  described above for 200 class members would be unwieldy and present insurmountable case

25  management problems.  The issues are not amenable to classwide resolution, as there are

26  formidable complexities here inherent in trying claims of consent, scope of agency, and other core

27  issues.  The 25 plus subpoenas that Plaintiffs had to serve in their failed attempt at determining the

28  identities of all of the entities that called the four named plaintiffs underscore the difficulties of

litigating this case on a class basis.  Because Plaintiffs cannot demonstrate superiority, this Court should strike Plaintiffs' class allegations on this independent basis.

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Strike.

DATED:  August 19, 2016

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti
Lee S. Brenner
Edward J. Mullins III
Catherine D. Lee

By: /s/ Lauri A. Mazzuchetti
      Lauri A. Mazzuchetti
Attorneys for Defendants Sunrun Inc. and
Clean Energy Experts, LLC