**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LYNN SLOVIN, SAMUEL KATZ AND JEFFERY PRICE,** individually and on behalf of all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**SUNRUN, INC., CLEAN ENERGY EXPERTS, LLC, DBA SOLAR AMERICA, AND DOES 1 THROUGH 5,**<br><br>**Defendants.** | **Case No.: 15-CV-5340 YGR**<br><br>**ORDER GRANTING MOTION TO DECLARE INEFFECTIVE DEFENDANTS' OFFER OF JUDGMENT**<br><br>**DKT. NO. 89** |

Plaintiffs Lynn Slovin, Samuel Katz, Jeffery Price, and Justin Birkhofer bring this putative class action alleging willful violations of the Telephone Consumer Protection Act, 47 U.S.C. 227 (the "TCPA"). (Dkt. No. 46.) Plaintiffs seek to represent a putative class of individuals who received unwanted calls from defendants SunRun, Inc. and Clean Energy Experts, LLC, dba Solar America, allegedly in violation of the TCPA.

Currently before the Court is plaintiffs' motion to declare ineffective defendants' offer for judgment. (Dkt. No. 89.)[1] Having carefully considered the pleadings and the papers submitted on this motion, and for the reasons set forth below, plaintiffs' motion is **GRANTED**.

## I. RELEVANT FACTUAL BACKGROUND

On March 21, 2017, defendants made an offer of judgment pursuant to Federal Rule of Civil Procedure 68 to each individual plaintiff for $100,000 apiece, "costs and prejudgment interest now accrued," and "an injunction . . . prohibiting Defendants and their officers and employees from calling Plaintiffs without their prior express consent . . . ." (the "Offer"). (Dkt. No. 89-2.) The Offer was contingent on acceptance by all four individual plaintiffs. (*Id.*) Plaintiffs did not accept the

---

[1] Defendants filed their opposition brief on April 25, 2017. (Dkt. No. 90, Opposition.) Plaintiffs filed their reply brief on May 2, 2017. (Dkt. No. 92.)

Offer and "allowed the time to accept [the Offer to] expire." (Opposition at 5.)

**II.      LEGAL FRAMEWORK**

   **A.      Federal Rule of Civil Procedure 68**

Under Federal Rule of Civil Procedure 68(a), a defendant may "serve on an opposing party an offer to allow judgment on specific terms, with the costs than accrued." If the offer is not accepted within 14 days the "unaccepted offer is considered withdrawn, but it does not preclude a later offer." Fed. R. Civ. P. 68(b). If the ultimate judgment that the "offeree finally obtains is not more favorable than the unaccepted offer, the offered must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

The "plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1 (1985) (citing Rules of Civil Procedure, Report of Proposed Amendments, 5 F.R.D. 433, 483 n. 1 (1946)); *see also* 12 Charles Allan Wright, Arthur R. Miller, *et al.* § 3001 *Fed. Prac. & Proc. Civ.* § 3001 (2d ed. 2017) (explaining that "Rule 68 was intended to encourage settlements and avoid protracted litigation" and "the general principle [behind Rule 68 is] that even a prevailing party could be denied costs for persisting vexatiously after refusing an offer of settlement . . . ."). The Supreme Court has explained that Rule 68 seeks to achieve this purpose by "prompt[ing] both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." *Id.*; *See also Mavris v. RSI Enterprises Inc.*, 303 F.R.D. 561, 562-63 (D. Ariz. 2014) (noting that Rule 68 seeks to encourage "plaintiffs to accept reasonable settlement offers rather than forcing defendants through the expensive process of going to trial"). Federal courts apply Rule 68(d)'s cost-shifting provisions so long as the offer is made in "good faith." *See Gay v. Waiters' and Dairy Lunchmen's Union Local No. 30,* 86 F.R.D. 500, 502 (N.D. Cal. 1980); *Scheriff v. Beck*, 452 F.Supp. 1254 (D. Colo. 1978); *Dual v. Cleland*, 79 F.R.D. 696 (D.D.C. 1978); *Mr. Hanger, Inc. v. Cut Rate Plastic Hangers, Inc.*, 63 F.R.D. 607 (E.D.N.Y. 1974). "Some courts therefore have suggested that offers that in form satisfied the rule might nevertheless be denied the Rule 68 cost-shifting consequences because they were sham or were made in bad faith." 12 Charles Allan Wright, Arthur R. Miller, *et al.*, *Fed. Prac. & Proc. Civ.* § 3002.1 (2d ed. 2017) (citing *Gay,* 86 F.R.D. at 502).

**B. Federal Rule of Civil Procedure 23**

Pursuant to Federal Rule of Civil Procedure 23(a) ". . .[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members . . . ." The class action mechanism serves two primarily purposes. First, class actions "promote 'efficiency and economy of litigation.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (quoting *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 553 (1974)). Second, class actions "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

Before a class action may proceed the putative class must be certified by a federal judge. *See* Fed. R. Civ. P. 23(a), (c)(1). The certification process first requires an individual class representative to file a complaint that raises claims on behalf of a group of similarly situated persons. Fed R. Civ. P. 23(c)(1)(A). Thereafter the class representatives may seek certification of the class under the provisions of Rule 23. *Id*. The named plaintiffs bear the responsibility to "represent the collective interests of the putative class." *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 331 (1980). Class representatives owe a duty to the putative class to "prosecute the action vigorously on behalf of the class." *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003). As a "result of the special obligations inherent in the role of class representative, the plaintiff forgoes some ability to dispose of his individual claim that an ordinary litigant enjoys." *Johnson v. U.S. Bank Nat'l Ass'n*, 276 F.R.D. 330, 336 (D. Minn. 2011).

**III. DISCUSSION**

Plaintiffs argue that the Offer should be declared ineffective because applying the Rule 68(d) cost-shifting mechanism to this case would be contrary the purposes of Rules 23 and Rule 68.[2] Defendants counter that (1) the Supreme Court's recent holding in *Campbell-Ewald Co. v.*

---

[2] Plaintiffs argue broadly that Rule 23(e) and Rule 68 cannot operate in harmony in the class action context. Specifically, plaintiffs contend that Rule 68(a)'s requirement that courts "must [] enter judgment" of an accepted settlement offer conflicts with Rule 23(e), which requires court approval of settlements following notice to all class members, a fairness hearing, and a period for

3

*Gomez*, 136 S. Ct. 663, 670 (2016), eliminates any potential conflict between the two rules, (2) no authority exists for the relief plaintiffs seek and, in any event, (3) plaintiffs' motion is premature because defendants have not filed a Rule 68(d) motion for costs.

**A. Compliance with Goals of Rule 68**

As discussed above, Rule 68 seeks to spur settlement and avoid litigation by "prompt[ing] both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." *Marek,* 473 U.S. at 1. To ensure that the goals of Rule 68 are being effectuated the Court evaluates whether the Offer appears to be made in good faith.

Here, the Offer does not focus on merits of the TCPA claims. As defendants admit in their Opposition, the Offer was made for an amount that individual plaintiffs could never realistically hope to obtain, much less exceed, at trial. (*See* Opposition at 1 (admitting that any judgment in favor of individual plaintiffs "could not possibly exceed the amount of Defendant's Rule 68 Offer . . .") This suggests that the Offer was not made in "good faith" but rather was an attempt either to shift post-offer costs onto the individual plaintiffs or to persuade individual plaintiffs to abandon the putative class. *See Gay,* 86 F.R.D. at 502. Individual plaintiffs here are not "persisting vexatiously after refusing an offer of settlement," but faithfully representing the interests of the putative class. *See* 12 Charles Allan Wright, Arthur R. Miller, *et al.*, *Fed. Prac. & Proc. Civ.* § 3001, (2d ed.).

Accordingly, the Court finds the Offer runs contrary to the purpose of Rule 68 because there is an indication that the offer was not made in good faith.[3]

//

---

lodging objections. Here, no class has been certified. The Court declines to endorse such a broad proposition but rather will attempt to harmonize the rules based upon an individualized evaluation.

[3] Further, this is not a situation where plaintiffs have forced "defendants through the expensive process of going to trial" by unreasonably rejecting a settlement offer. *See Mavris*, 303 F.R.D. at 562-63. No evidence exists that the individual plaintiffs rejected the Offer here because they were being unreasonable. Rather, they argue they have a "responsibility . . . to protect the collective interests of the putative class . . . ." *Deposit Guar. Nat. Bank,* 445 U.S. 326 at 331. The Court thus finds that subjecting these plaintiffs to the cost-shifting provisions of Rule 68(d) would not be just.

4

### B. Conflict with Rule 23

Applying the Rule 68(d) cost-shifting mechanism to the Offer may also undermine the purposes of Rule 23. Courts have found at least two means by which federal defendants attempt to chill Rule 23 class actions through Rule 68 offers. First, defendants attempt to moot a plaintiff's claims based on an unaccepted Rule 68 offer for full recovery. *Campbell-Ewald*, 135 S. Ct. at 669. The Supreme Court recently precluded defendants from using this tactic in *Campbell-Ewald,* reasoning that an "unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect."[4] *Id.* at 670.

Second, defendants use the mechanism to create a conflict between punitive class representatives and unnamed class members through Rule 68(d)'s cost-shifting provision (the "cost-shifting tactic"). Using this strategy, a defendant tenders a Rule 68 offer with the goal of compelling the individual plaintiff to "weigh [her] own interest in avoiding personal liability for costs under Rule 68 against the potential recovery of the class." *Mavris,* 303 F.R.D. at 564 (citing *Zeigenfuse v. Apex Asset Mgmt., L.L.C.*, 239 F.R.D. 400, 402 (E.D. Pa. 2006)). The cost-shifting tactic thus forces individual plaintiffs to choose between upholding their duty to the putative class, especially where small amounts are at stake, and accepting a large payout and potentially avoiding personal liability for defendants' costs.[5] *See Zeigenfuse*, 239 F.R.D. at 402.

---

[4] Defendants argue that plaintiff's reliance on cases decided before *Campbell-Ewald* is misplaced because *Campbell-Ewald* precludes defendants from using Rule 68 offers to moot class actions. Defendants raise a valid point with regard to some authority which plaintiffs cite, particularly *Nash v. CVS Caremark*, 683 F. Supp. 2d 195 (D. R.I. 20110), where the court struck a Rule 68 offer to avoid having to moot the class. However, defendants overreach in arguing that all pre-*Campbell-Ewald* case invaliding Rule 68 offers are irrelevant. Several cases which plaintiffs cite and are discussed below, including *Boles*, *Johnson*, *Lamberson*, and *Marvris,* address the cost-shifting provision of Rule 68(d), which was not part of the *Campbell-Ewald* Court's holding.

[5] Individual plaintiffs' duty to the putative class may preclude class representatives from accepting "a favorable settlement of his individual claim." *Johnson*, 276 F.R.D. at 336. Federal courts have stricken Rule 68 offers on the grounds that plaintiff was "not at liberty to accept the offer when it was made because she was then lead plaintiff in a putative class action." *Janikowski v. Lynch Ford, Inc.*, 1999 WL 608714, at \*2 (N.D. Ill. 1999), *aff'd*, 210 F.3d 765 (7th Cir. 2000).

At least one district court has found this tactic "troubling" in the pre-certification context because it "prevent[s] plaintiffs from reducing their costs of litigation . . . by allocating such costs among all members of the class who benefit from the recovery." *Mavris* 303 F.R.D. at 563-4. Unless and until a class is certified, individual plaintiffs are potentially liable for defendants' costs under Rule 68(d). This disincentivizes individuals from serving as class representatives and vigorously pursuing claims on behalf of the putative class, thus chilling Rule 23's goal of "pool[ing] claims which would be uneconomical to litigate individually." *Id*.

The Offer is an example of the cost-shifting tactic. As defendants admit, any future recovery by individual plaintiffs "could not possibly exceed" the Offer. (Opposition at 1.) Further, non-acceptance by just one of the four individual plaintiffs could trigger Rule 68(d) cost-shifting because the offer was made contingent on acceptance by all four individual plaintiffs. Even assuming that individual plaintiffs ultimately recover treble damages, plus modest compensation for time spent working as class representatives, this recovery could not exceed defendants' $100,000 per plaintiff offer. Thus, defendants attempt to shift onto individual plaintiffs the "costs incurred after the offer was made" by extending an offer which individual plaintiffs could not accept without breaching their duty to the putative class and could not reasonably expect to surpass at trial. *See* Fed. R. Civ. P. 68(d). Defendants have created for themselves a win-win scenario: if the individual plaintiffs accept the Offer, the putative class is without a representative and cannot proceed, but if individual plaintiffs reject the Offer, they most likely face personal liability for defendants' post-offer costs. By contrast, for individual plaintiffs the lose-lose scenario predominates: accept the Offer and potentially breach their duty to the putative class or reject the Offer and potentially face personal liability for defendants' post-offer costs.

The Court finds that the individual plaintiffs could not accept the Offer without jeopardizing their duty to the putative class. In not accepting the $100,000 per plaintiff offer, the individual plaintiffs placed the interests of the putative class ahead of their personal interests, just as Rule 23 envisions. Individual plaintiffs simply complied with their duty under Rule 23(a)(4) by "fairly and adequately protect[ing] the interests of the class." To subject such plaintiffs to personal liability for

defendants' post-offer costs would be unjust, especially given the restrictions on a class representative's freedom to accept "a favorable settlement of his individual claim." *Johnson*, 276 F.R.D. at 336. Perhaps more importantly, it would also run contrary to Rule 23's policy of encouraging class representatives to protect putative class interests.[6] Therefore, the Court finds that the Offer here runs contrary to the purpose of Rule 23 and is ineffective for the purposes of Rule 68(d) cost-shifting.

### C. Jurisdiction to Declare the Offer Ineffective

Defendants challenge the Court's jurisdiction to declare the Offer ineffective on the ground that Rule 68 does not prohibit or restrict any offer of judgment to putative class representatives. Defendants rely on *Jacobson* in arguing that the Advisory Committee on Rules rejected proposed revisions to Rule 68 to preclude offers of judgment in class or derivative actions explicitly. *See Jacobson*, 2014 U.S. Dist. LEXIS 115601 *13.

Defendants do not persuade. Rule 68 may not *categorically* bar Rule 68 offers of judgment in class actions, but this does not support defendant's position this Court cannot declare a Rule 68 offer ineffective when the offer runs contrary to the purposes of Rule 23 and Rule 68.

The Court's jurisdiction to address the motion arises from Federal Rule of Civil Procedure 23(d) itself, which authorizes federal courts to "issue orders" that "impose conditions on the representative parties" and "deal with similar procedural matters." Federal courts have found that invalidating a Rule 68 offer is consistent with the court's "duty to protect the putative class members" and "manage the class action in a manner consistent with the purposes of Rule 23." *Boles*, 2011 WL 4345289, at *4; *see also Johnson*, 276 F.R.D. at 336 (holding that invalidating a Rule 68 offer is an appropriate exercise of its "authority and responsibility . . . to manage the class action in a manner consistent with the purposes of Rule 23").

---

[6] Defendants also argue that "because no class has been certified . . . Plaintiffs owe no fiduciary obligation to anyone . . . ." (Opposition at 3.) Defendants overreach. The Supreme Court has recognized the "responsibility of named plaintiffs to represent the collective interests of the putative class." *Deposit Guar. Nat. Bank,* 445 U.S. 326 at 331. Further, at least one district court has noted in dicta that "[e]ven in a putative class action, a representative plaintiff maintains a fiduciary duty to the unnamed class members." *Jacobson v. Persolve, LLC d/b/a Account Resolution Assoc.,* 2014 WL 4090809 (N.D. Cal. 2014).

7

### D. Ripeness

Defendants further argue that plaintiffs' motion is premature because defendants have not brought a motion for costs under Rule 68(d). The Court disagrees. As discussed above, a pre-certification offer can have an "immediate adverse impact" on individual plaintiffs. *See Johnson* 276 F.R.D. at 335 (D. Minn. 2011). For example, each time plaintiffs move "the litigation forward on behalf of the class, the cost-shifting risk to Plaintiff individually ratchets up, thus disincentivizing Plaintiff from acting in the best interest of the class." *Id*. Federal courts have found this issue ripe for adjudication even where defendants have not brought a Rule 68(d) motion because the existence of the offer creates a "current and meaningful legal dispute arising from the conflict of interests caused by the Rule 68 offer." *Id.*; *See also Lamberson v. Financial Crimes Services*, 2011 WL 1990450 at *5 (finding that "a precertification offer of judgment has significant ramifications in a putative class action, long before a defendant seeks costs under Rule 68(d)"); *Mavris,* 303 F.R.D. at 566. This Court concurs and finds the matter ripe for adjudication.

### IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion is **GRANTED** and defendants' current Offer of judgment is declared **INEFFECTIVE** for the purposes of Rule 68(d).

This Order terminates Dkt. No. 89.

**IT IS SO ORDERED**.

Date: July 7, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**