David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

*Attorneys for Plaintiffs Lynn Slovin, Samuel Katz,*
*Jeffery Price, and Justin Birkhofer, on their own*
*behalf, and on behalf of all others similarly situated*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN SLOVIN, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNRUN, INC., a California corporation, CLEAN ENERGY EXPERTS, LLC, a California limited liability company doing business as SOLAR AMERICA, and DOES 1-5, inclusive,<br><br>Defendants. | No. 4:15-cv-05340-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Date:       November 27, 2018<br>Time:       2:00 p.m.<br>Location:   Courtroom 1<br>                Ronald V. Dellums Federal Bldg.<br>                1301 Clay Street<br>                Oakland, California 94612 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND AND PROCEDURAL HISTORY .........................................2

       A.     The Parties Conducted Extensive Litigation..............................2

       B.     The Settlement Negotiations Were Non-Collusive.....................4

III.   TERMS OF THE SETTLEMENT AGREEMENT ..........................................4

       A.     The Settlement Class Definition ...............................................4

       B.     Monetary Benefits to Settlement Class.....................................5

       C.     Robust Injunctive Relief ..........................................................5

       D.     Scope of the Release ................................................................6

       E.     The Right to Opt-Out or Object ................................................6

       F.     Payment of Attorneys' Fees and Costs ......................................7

       G.     Payment of Service Awards for Representative Plaintiffs............7

       H.     *Cy Pres* Award ........................................................................9

       I.     CAFA Notice ...........................................................................9

       J.     Payment of Notice and Settlement Administrative Costs...........9

IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL......................10

       A.     The Agreement Warrants a Presumption of Fairness as it Followed Extensive Discovery, and is the Result of Serious, Informed, Non-Collusive Negotiations ........................................................11

       B.     The Agreement is Free of Obvious Deficiencies and Does Not Grant Preferential Treatment to Class Representatives or Segments of the Settlement Class ......................................................................12

       C.     The Agreement Falls Within the Range of Possible Approval ............13

       D.     The Settlement is Fair, Adequate, and Reasonable..................14

              1.     Strength of Plaintiffs' Case........................................ 14

              2.     Continued Litigation Poses Significant Risks.............. 15

              3.     Risk of Maintaining Class Action Status .................... 16

        4.      The Stage of the Proceedings and the Amount of Discovery Supports Preliminary Approval ........................................ 16

        5.      Experience and Views of Counsel ........................................... 17

V.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ...........................................................................................17

    A.     The Settlement Class Meets the Requirements of Rule 23(a) .............................17

    B.     The Class Meets the Requirements of Rule 23(b)(3)..............................20

VI.   THE PROPOSED FORM AND METHOD OF NOTICE ARE ADEQUATE AND SATISFY THE REQUIREMENTS OF RULE 23 ....................................22

    A.     The Proposed Method of Notice ..........................................................22

    B.     Content of the Notice ...........................................................................23

    C.     The Settlement's Distribution of the Settlement Fund is Fair ..............24

    D.     The Court Should Appoint Kurtzman Carson Consultants, LLC As The Settlement Administrator .....................................................................25

VII.  CONCLUSION ...............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ...........................................................................10

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008) ...........................................................................10

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997) ...........................................................................................17, 21

*Armstrong v. Board of School Directors of City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ..................................................................................10

*Arthur v. Sallie Mae, Inc.*,
   No. 2:10-cv-00198, Dkt. 266 (W.D. Wash. Sept. 17, 2012)...................................13

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015).........................................................................8, 12

*Biben v. Card*,
   789 F. Supp. 1001 (W.D. Mo. 1992) ......................................................................24

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ..................................................................................19

*Californians for Disability Rights, Inc. v. California Dep't. of Transp.*,
   249 F.R.D. 334 (N.D. Cal. 2008)............................................................................19

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) ...............................................................13

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................14, 24

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008).........................................................16

*Durham v. Continental Central Credit, Inc.*,
   No. 07-1763, 2011 WL 90253 (S.D. Cal. Jan. 10, 2011) .......................................19

*Eisen v. Carlisle & Jacqueline*,
   417 U.S. 156 (1974)................................................................................................22

*Fairway Med. Ctr. LLC v. McGowan Enterprises, Inc.*,
  No. CV 16-3782 (E.D. La. March 27, 2018) .......................................................... 8

*G. F. v. Contra Costa Cty.*,
  No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ................................ 12

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. 08-1365, 2010 WL 1687832 (N.D. Cal., Apr. 22, 2010) ................................ 11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................ *passim*

*Hashw v. Dept. Stores Nat'l Bank*,
  182 F. Supp. 3d 935, 947 (D. Minn. 2016) .......................................................... 13

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
  No. 3:11-md-02261, ECF No. 97 (S.D. Cal. Feb. 20, 2013) ................................ 13

*Johnson v. Kakvand*,
  192 F.3d 656 (7th Cir. 1999) ................................................................ 7

*Jones v. Royal Admin. Servs., Inc.*,
  866 F.3d 1100 (9th Cir. 2017) ............................................................ 15

*Kazemi v. Payless Shoesource, Inc.*,
  No. 3:09-cv-05142, ECF. No. 94 (N.D. Cal. Apr. 2, 2012) ................................ 13

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) .......................................................... 13

*Krakauer v. Dish Network, LLC*,
  No. 14-333, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) ................................ 23

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ........................................................ 20, 21

*Marlo v. United Parcel Serv. Inc.*,
  251 F.R.D. 476 (C.D. Cal. 2008) .......................................................... 17

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................ 16

*Mendoza v. Tucson Sch. Dist. No. 1*,
  623 F.2d 1338 (9th Cir. 1980) ............................................................ 24

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2009) .............................................................. 7

*Meyer v. Bebe Stores, Inc.*,
    No. 14-cv-00267-YGR, 2017 WL 558017 (N.D. Cal. Feb. 2, 2017) ....................................21

*In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation*,
    No. 1:13-md-02493-JPB-JES (N.D.W.V. June 12, 2018) ........................................................8

*In re National Western Life Ins. Deferred Annuities Litig.*,
    268 F.R.D. 652 (S.D. Cal. 2010) ..........................................................................................18

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)........................................................................16

*Norris-Wilson v. Delta-T Group, Inc.*,
    270 F.R.D. 596 (S.D. Cal. 2010) ..........................................................................................17

*O'Shea v. Am. Solar Sol., Inc.*,
    318 F.R.D. 633 (S.D. Cal. 2017) ..........................................................................................21

*Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..........................................................................................11, 14

*In re Omnivision Techns., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................................17

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ..................................................................................................8

*Patel v. Trans Union, LLC*,
    308 F.R.D. 292 (N.D. Cal. 2015) ..........................................................................................19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...............................................................................................................22

*Reppert v. Marvin Lumber 7 Cedar Co.*,
    359 F.3d 53 (1st Cir. 2004)....................................................................................................23

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...........................................................................8, 11, 14, 16

*Rose v. Bank of Am. Corp.*,
    No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ............................13

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) .................................................................................................22

*Slovin v. CallFire, Inc.*,
    No. 17-mc-00091 (C.D. Cal.), ECF No. 14 ............................................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Smith v. Univ. of Wa. Law Sch.*,
   2 F. Supp. 2d 1324 (W.D. Wash. 1998)......................................................19

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...........................................................14, 17

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011).................................................................25

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................................10

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ...............................................................21

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ...............................................................21

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   895 F.3d 597 (9th Cir. July 9, 2018) ..................................................12, 14

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).......................................................................18

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................7

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   571 F.3d 953 (9th Cir. 2009) ...............................................................20

*Wolin v. Jaguar Land Rover N. Am.*,
   LLC, 617 F.3d 1168 (9th Cir. 2010)....................................................18, 19

*Xiufang Situ v. Leavitt*,
   240 F.R.D. 551 (N.D. Cal. 2007) ......................................................18, 19

**Federal Statutes**

CAFA ..........................................................................................9

TCPA ................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ...................................................................17, 19, 22

Fed. R. Civ. P. 23(a) ....................................................................17, 20

Fed. R. Civ. P. 23(a)(1) .................................................................................................17

Fed. R. Civ. P. 23(a)(2) .................................................................................................18

Fed. R. Civ. P. 23(a)(3) .................................................................................................18

Fed. R. Civ. P. 23(a)(4) .................................................................................................19

Fed. R. Civ. P. 23(b)(3) ...........................................................................................20, 21

Fed. R. Civ. P. 23(c) .....................................................................................................17

Fed. R. Civ. P. 23(c)(1)(C) ...........................................................................................16

Fed. R. Civ. P. 23(c)(2) .................................................................................................23

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................22, 24

Fed. R. Civ. P. 23(c)(3) .................................................................................................23

Fed. R. Civ. P. 23(e) .....................................................................................................10

Fed. R. Civ. P. 23(e)(1) ...........................................................................................22, 24

Fed. R. Civ. P. 23(e)(2) .................................................................................................14

Fed. R. Civ. P. 23(g) ...............................................................................................19, 20

Fed. R. Civ. P. 23(g)(1)(A) ...........................................................................................19

Fed. R. Civ. P. 68 ..................................................................................................3, 8, 19

Fed. R. Civ. P. 68(d) .......................................................................................................3

Fed. R. Evid. 702 ..........................................................................................................23

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:53 (4th ed. 2002) ...............24

## I.      INTRODUCTION

The proposed Settlement is an excellent result.  To resolve claims that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* through telephone calls promoting residential solar to consumers across the nation, the Settlement provides a $5.5 million non-reversionary common fund to be distributed to the settlement class ("Settlement Class" or "Class") and robust injunctive relief.  The Settlement compares favorably to other TCPA settlements.  Declaration of David C. Parisi ("Parisi Decl.), ¶¶12-13.  Moreover, the injunctive relief is crafted to prevent future TCPA violations and to improve the accountability and the transparency of Defendants and their vendors' telemarketing practices and consumer complaint investigation processes.  Parisi Decl., Exh. 1, Settlement Agreement ("Agreement"), §§12.1-12.11.

The Settlement is a product of vigorous litigation.  Reaching the Settlement was no easy task and was reached only after two unsuccessful mediations with well-respected JAMS mediators and a third session with Hon. Magistrate Judge Corley.  Magistrate Judge Corley, who had heard a series of discovery disputes between the Parties, presided over the final settlement conference in an attempt to bridge a very wide gap between the Parties' respective positions.  After a day-long, in-person settlement conference and several months of continued negotiations, the Parties agreed to accept Magistrate Judge Corley's mediators' proposal.

Given the benefits of the settlement and the risks of continued litigation, the proposed settlement is fair, reasonable, and adequate.  Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily certifying the proposed Settlement Class; (2) naming Plaintiffs as Class Representatives; (3) appointing Parisi Havens LLP and Parasmo Lieberman Law as Class Counsel; (4) granting preliminary approval of the Settlement; (5) appointing Kurtzman Carson Consultants as the Settlement Administrator, (6) approving the proposed Notice Plan; and (7) approving deadlines for objections, exclusions, and claims, and setting briefing deadlines and a hearing for final approval.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    The Parties Conducted Extensive Litigation

On November 20, 2015, Plaintiff Lynn Slovin filed a class action complaint against Defendants.  ECF No. 1.  Ms. Slovin alleged Defendants violated the TCPA by placing unsolicited solar telemarketing calls to her and members of the putative classes on telephone numbers assigned to wireless subscribers using an automatic telephone dialing system ("ATDS") or prerecorded voice messages.  *Id.*  On December 2, 2015, Ms. Slovin filed her First Amended Complaint to add claims for Defendants' alleged "Do Not Call" violations.  ECF No. 7.  Through public record requests for robocall and do not call complaints to the FTC and FCC, Ms. Slovin discovered that thousands of other similarly affected consumers claimed that they were affected by the telemarketing practices of Defendants and their vendors.  Parisi Decl., ¶3.  On March 25, 2016, she filed a Second Amended Complaint adding Jeffery Price and Samuel Katz as named plaintiffs.  ECF No. 35.

From the outset, Plaintiffs were challenged with the task of discovering the telemarketing vendors that made calls that Plaintiffs believed to be "on behalf of" Defendants.  Parisi Decl., ¶4. On April 15, 2016, Defendants filed a motion to strike the class allegations, and argued that the third parties that made the alleged calls to Plaintiffs were imposters who had no relation to Defendants.  ECF No. 36 at 3.  On April 28, 2016, the Court granted the motion and ordered Plaintiffs to file a Third Amended Complaint ("TAC") that identifies the telemarketing vendors that Plaintiffs believed made calls to Plaintiffs on behalf of Defendants.  ECF No. 40.  Plaintiffs spent the next several months propounding discovery requests on Defendants, serving 25 third-party subpoenas on telecommunications entities, and conducting an independent investigation to comply with the Court's order.  Parisi Decl., ¶4.  Based largely their independent investigation, on July 12, 2016, Plaintiffs filed their TAC, which identified telemarketing vendors, alleged that Defendants participated on calls initiated by the telemarketing vendors and live transferred to the Defendants, and alleged that Defendants appeared to control the manner and method by which the vendors conducted the solar telemarketing campaigns.  ECF No. 46.  Plaintiffs named Justin

Birkhofer as an additional plaintiff who alleged that he was live transferred to Sunrun and received a direct call from Sunrun. ECF No. 46.  On August 19, 2016, Defendants filed a second motion to strike the class allegations.  ECF No. 51. Defendants, throughout the litigation, disputed all of Plaintiffs' claims, and disputed that the claims were appropriate for class treatment.  Parisi Decl., ¶4.

While the Parties were in the midst of discovery, on March 7, 2017, they participated in a mediation with former Chief Magistrate Judge Edward A. Infante.  *Id.* at ¶5.  The case did not resolve.  *Id.*  Shortly thereafter, Defendants made a Rule 68 offer of judgment of $100,000 to each of the four named Plaintiffs.  *Id.*  Plaintiffs risked personal liability for Defendants' costs by rejecting the offer. See ECF No. 89 and Fed. R. Civ. P. 68(d).  Plaintiffs filed a motion to declare the offer ineffective, which was granted by the Court.  ECF No. 89.

Plaintiffs deposed each of Defendants' five 30(b)(6) witnesses on a total of 18 topics related to class certification and merits, including but not limited to the topics related to Defendants' telephone dialing systems, lead databases, relationships with telemarketing vendors, policies for TCPA compliance, and evidence of prior express consent.  Parisi Decl., ¶6. Plaintiffs served 154 requests for production of documents and 54 requests for admission on each defendant, and a total of 31 interrogatories on Defendants collectively.  *Id.*

Plaintiffs also responded to a tremendous amount of discovery propounded by Defendants.  Plaintiffs collectively responded to hundreds of document requests and 81 interrogatories.  *Id.* at ¶7.  Additionally, all four named Plaintiffs sat for their depositions.  *Id.*

The Parties litigated over several, hard-fought discovery disputes, and appeared before Magistrate Corley on several occasions to resolve those disputes.  *Id.* at ¶8.  In addition, Plaintiffs sought court intervention to enforce a third-party subpoena.  Order re Plaintiffs' Motion to Compel Production, *Slovin v. CallFire, Inc.*, No. 17-mc-00091 (C.D. Cal.), ECF No. 14.  In response, CallFire produced still more call records.  Parisi Decl., ¶8.

On October 3, 2017 Plaintiffs' experts Randall Snyder and Anya Verkovskaya produced reports establishing the ascertainability of class members.  Parisi Decl., ¶9.  Defendants produced two responding expert reports, and all expert depositions were completed.  *Id.* On December 8, 2018, Plaintiffs filed a motion for class certification.  ECF No. 159.  The motion was stayed during the subsequent mediation and settlement conferences and ultimately taken off calendar when a settlement in principle was reached.  Parisi Decl., ¶9.

### B.    The Settlement Negotiations Were Non-Collusive

On March 7, 2017, the Parties participated in a mediation with former Chief Magistrate Judge Edward A. Infante (Ret.).  *Id.*, at ¶10.  The day-long mediation facilitated good-faith, arm's-length negotiations, however, the case did not resolve and the Parties continued to vigorously litigate the case after the mediation.  *Id.*  On January 9, 2018, the Parties participated in another private mediation – this time with Bruce Friedman, a JAMS mediator with extensive TCPA mediation experience.  *Id.*  Again, the mediation was not successful.  On January 31, 2018, the Parties participated in a settlement conference with Magistrate Judge Corley, which culminated in Judge Corley making a mediator's recommendation.  *Id.*  The Parties then participated in a telephonic conference with Magistrate Judge Corley on April 5, 2018, during which the parties accepted the mediator's proposal and an agreement was reached on the scope of the settlement.  *Id.*  The Parties have spent the subsequent months carefully negotiating the fine details of the Settlement and analyzing data to define the contours of the class and develop a notice and claims procedure.

## III.    TERMS OF THE SETTLEMENT AGREEMENT

The key terms of the Agreement are briefly summarized below.

### A.    The Settlement Class Definition

Plaintiffs move the Court to certify the proposed Settlement Class:

[A]ll persons in the United States, from November 20, 2011 to August 31, 2018, who received from or on behalf of Sunrun and/or CEE, or from a third party generating leads for Sunrun and/or CEE: (1) one or more calls on their cellphones, or (2) at least two telemarketing calls during any 12-month period where their phone numbers appeared on a National or State Do Not Call Registry or Sunrun's and/or CEE's Internal Do Not Call List more than 30 days before the calls.

Agreement, §2.1.47.

Based on discovery obtained during the litigation, Plaintiffs' independent investigation, the collaborative work of the Parties, and analysis of the call data, the Parties have identified approximately 350,000 members.  Parisi Decl., ¶19. The Settlement Class is coextensive with and subsumes the proposed classes in the operative complaint. *Id.*

### B.    Monetary Benefits to Settlement Class

The Parties have agreed to a non-reversionary $5.5 million Settlement Fund.  Agreement, §4.1.  Each Settlement Class member who submits a valid claim form will be entitled to receive, on a pro rata and equal basis, an amount of the portion of the Settlement Fund that remains after payment of all Settlement Administration Costs, any service awards to the Representative Plaintiffs, and any award of Attorneys' Fees and Costs.  Agreement, §4.2.1.  The Settlement treats each Settlement Class member fairly and equally with no member receiving a larger share for each phone number than another.

### C.    Robust Injunctive Relief

The proposed Settlement also secures robust injunctive relief that is specifically designed to prevent future TCPA violations.  *See* Agreement, §12, *et. seq*.  Many of these requirements go far beyond what the TCPA and the implementing regulations require.  For example, Plaintiffs allege that Defendants and their telemarking vendors falsely represented that they were working with various governmental agencies during their calls to consumers and/or used fictitious business names during the calls that were not readily traceable to a particular company.  ECF No. 46, 10:27-28.  Under the terms of the Settlement, Defendants have agreed that any new contracts with Telemarketing Vendors (as defined in the Agreement) will require the vendors identify themselves by name on telemarketing calls with consumers; (b) agree that they will not attempt to mislead consumers as to their identities, including by claiming that they are calling from a fictious business entity; and (c) comply with requirements governing the registration of fictitious names.  Agreement, §12.9.  Plaintiffs also believed that some of the Telemarketing Vendors were offshore and nearly impossible to serve process upon, leaving consumers without an avenue of

1   recourse.  Under the Settlement, Defendants have agreed not to contract with Telemarketing

2   Vendors who do not accept service of process in the United States.  Agreement, §12.4.

3   Importantly, the injunctive relief also requires Defendants to impose certain, stringent

4   contractual requirements upon Telemarketing Vendors with whom Defendants work.

5   Agreement, §§12.5, 12.6 and 12.8.

6          The injunctive relief provisions of the Settlement also extend to Defendants' own internal

7   operations.  Sunrun has agreed to "oversee all CEE telemarketing activities to ensure compliance

8   with the TCPA", Agreement, §12.1; to "maintain and merge their Internal Do Not Call Lists", *Id*.

9   at §2.2; and to "implement and maintain procedures that prevent their respective dialing

10  equipment from making unsolicited telemarketing calls to consumers whose telephone numbers

11  appear on their Internal Do Not Call Lists".  *Id.* at §12.3.

12         **D.      Scope of the Release**

13         In exchange for the relief described above, Defendants along with other "Released

14  Parties" will be released from the TCPA claims against them.  Agreement, §§2.1.41; 2.1.42; and

15  8.1.  The release does not sweep any more broadly than is necessary to afford finality and peace

16  to Defendants as to the litigated subject matter and is limited to those claims related to unlawful

17  calls "that were brought in the [l]itigation or could have been brought in the [l]itigation".  *Id.* at

18  §2.1.41.  Indeed, there are no significant differences between the claims being released and the

19  claims set out in the operative complaint.  Parisi Decl., ¶19.

20         **E.      The Right to Opt-Out or Object**

21         In exchange for the relief described above, Defendants along with other "Released

22  Settlement Class members will have an opportunity to exclude themselves from the settlement or

23  object to its approval. Agreement §§9.3 and 9.4.  The procedures and deadlines for filing opt-out

24  requests and objections will be conspicuously stated in the notices and on the settlement website.

25  See Exhibits B and D to Agreement.  With regard to objections, the proposed notices inform

26  Settlement Class members that they will have an opportunity to appear and have their objections

27  heard by this Court at a final approval hearing.  The notices also inform Settlement Class

28

members that they will be bound by the release contained in the Settlement Agreement unless they timely exercise their opt-out rights.

### F.    Payment of Attorneys' Fees and Costs

Plaintiffs' counsel will file a Fee and Cost Application with the Court for an award of attorneys' fees and costs to be paid from the Settlement Fund.  Agreement, §5.1.  The Parties have not reached any agreements concerning such an award and the resolution of the case was not made dependent upon any specific fee award.  *Id.*; Parisi Decl., ¶20.  Plaintiffs will file a motion for fees and costs no later than 14 calendar days prior to the deadline for the Settlement Class to object so that may have sufficient time to review the motion.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2009).

The Agreement provides for a common fund settlement.  In a common fund settlement structure, "how the fund is divided between members of the class and class counsel is of no concern whatsoever to the defendants who contributed to the fund."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1301 (9th Cir. 1994).  Plaintiffs' counsel expects to seek up to 35 percent of the common fund, plus reimbursement for costs expended, which represents a negative multiplier on their lodestar.

Plaintiffs' counsel will fully brief their fee request for Final Approval.  Nonetheless, a quick glance at the docket with its extensive discovery disputes and motion practice confirms that Plaintiffs' efforts in this case support a fee award that is moderately higher than the 25 percent benchmark used in this Circuit.  *See Johnson v. Kakvand*, 192 F.3d 656, 661-62 (7th Cir. 1999) ("it is a known fact that a party's uncooperativeness with pretrial proceedings will increase the amount of time that the opposing attorney must devote to the case").  Here, Plaintiffs were embroiled in protracted discovery disputes in and outside this District to obtain data necessary to identify the Settlement Class.  Parisi Decl., ¶8.  As a result, Plaintiffs' counsel have in excess of $2 million in lodestar in the case, and expended more than $450,000 in costs.  Parisi Decl., ¶20.

### G.    Payment of Service Awards for Representative Plaintiffs

The Parties also have not reached any agreements concerning the amount of the Service

Awards to be sought here. *Id.* at ¶21. Representative Plaintiffs intend to ask the Court to award them each a Service Award of up to $40,000.00 for the time and effort that they have invested in the Action, and to recognize the personal sacrifices made in rejecting the Rule 68 Offer. Parisi Decl., ¶21. This request, with the attorneys' fees and costs, will be fully briefed at Final Approval.

"Incentive awards are . . . intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (cited, followed by *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)).

All of these typical factors are found here. Each Plaintiff brought their claims to Plaintiffs' Counsel, assisted counsel in identifying the claims and responding to voluminous discovery requests, traveled to and sat for a lengthy deposition, devoted many hours to conferring with counsel on strategic decisions, reviewing pleadings and other documents, and keeping informed of developments in the litigation. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) ("amount of time and effort spent by the class representative" factor in determining incentive fee). Further, Plaintiffs should be compensated for their remarkable commitment and service to the Class above their own self-interests– rejecting Defendants' Rule 68 offer to settle their claims individually for $100,000.00 each and risking personal liability for Defendants' substantial costs.[1]  *See* ECF No. 108.

---

[1]     In finding service awards to be reasonable and fair in TCPA class action settlements, courts have recently considered the "substantial offers of judgment" which plaintiffs "received and rejected." *In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation*, No. 1:13-md-02493-JPB-JES (ECF No. 1214) (Final Approval Order and Judgment) (N.D.W.V. June 12, 2018); *see id.*, Order re: Motion for Approval of Attorneys' Fees and Expenses and For Service Award) (ECF No. 1214) (at ¶21) (awarding incentive awards ranging from $3,500 to $35,000 for five plaintiffs); *see also, Fairway Med. Ctr. LLC v. McGowan Enterprises, Inc.,* No. CV 16-3782, (E.D. La. March 27, 2018) (Dkt. 61 at 6) ("Most importantly, defendant offered Fairway $75,000.00 to settle this case at the outset of this matter. Fairway, however, declined this amount so that it could proceed with the class action and benefit the class. As such, Fairway played a significant role in achieving a substantial settlement that benefited a large class of people and entities. The Court finds that the requested service award of $75,000.00 is reasonable and thus approves it.").

### H.   *Cy Pres* **Award**

The Settlement has no reversionary provision. The Settlement provides that the Settlement Fund is distributed to Settlement Class Members who submit approved claims after deductions for payment of Settlement Administration Costs, any incentive awards to the Class Representatives, and any awards Attorneys' Fees and Costs.  Agreement, §4.2.1.  If there are unclaimed funds because of unnegotiated checks, such unclaimed monies shall be distributed: (a) to the Settlement Class Members who cashed their initial Benefit Checks, to the extent such a distribution is administratively and economically feasible, and if not so feasible; (b) to a *cy pres* designated recipient as approved by the Court.  *Id.* at ¶4.2.6.  The Parties propose Electronic Frontier Foundation ("EFF") as the *cy pres* recipient.  EFF has received *cy pres* funds in privacy related litigation in the past, including from TCPA class action settlements.  Parisi Decl., ¶22.  Plaintiffs will submit a declaration from the foundation at final approval which will document more fully EFF's qualifications.

### I.   **CAFA Notice**

The Agreement provides that the Settlement Administrator will serve notice of the settlement that meets the requirements of CAFA, 28 U.S.C. § 1715, on the appropriate federal and state officials no later than 10 days after the filing of the Agreement with the Court.  Agreement, §6.4.1.

### J.   **Payment of Notice and Settlement Administrative Costs**

The Notice and Settlement Administrative Costs will be paid out of the Settlement Fund.  *Id.* at §§4.1.1 and 4.1.2.  The Parties have selected professional administrator Kurtzman Carson Consultants (KCC), a highly experienced administrator which has administrated over 6,000 settlements, as the Settlement Administrator in this case.  Agreement, §2.1.46; Declaration of Carla Peak, ("Peak Decl.").  KCC anticipates that the total administration costs for notice and distribution of payments to the class will range between $390,000.00 and $485,000.00 dependent upon the claims rate.  Peak Decl., ¶20.

## IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

A class action may not be dismissed, compromised, or settled without approval of the Court. Fed. R. Civ. P. 23 (e). Rule 23(e) provides for the appropriate procedure here: 1) preliminary approval of the proposed settlement; 2) dissemination of notice to the Settlement Class; and 3) a final approval hearing at which class members may be heard and argument provided about the reasonableness of the settlement.

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed Settlement made by the court on the basis of written submissions and informal presentation from the settling parties. Manual for Complex Litigation (Fourth) § 21.632. *Cf. id.* § 40.42.

> [R]eview of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." [A preliminary approval] hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.

*Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (cited by, e.g., *Durham v. Continental Central Credit, Inc.*, No. 07-1763, 2011 WL 90253, *2 (S.D. Cal. Jan. 10, 2011); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007)). Notice of a proposed class settlement should be sent when the Court finds that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The more relaxed standard of review for preliminary approval applies because some of the factors relevant to final approval "cannot be fully assessed until the court conducts its fairness hearing, [so that] a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation, punctuation omitted).

Nonetheless, "the range of possible" settlements that could receive final approval necessarily informs the Court's decision on preliminary approval. At the final approval stage, the decision "to approve or reject a settlement is committed to the sound discretion of the trial

judge because he is exposed to the litigants, and their strategies, positions and proof." *Hanlon v.*

*Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citation, punctuation omitted).  However,

the Court's role in approving

> what is otherwise a private consensual agreement negotiated between the parties
> to a lawsuit must be limited to the extent necessary to reach a reasoned judgment
> that the agreement is not the product of fraud or overreaching by, or collusion
> between, the negotiating parties, and that the settlement, taken as a whole, is fair,
> reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice v. Civil Service Comm'n of City and*

*County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  "The proposed settlement is not to

be judged against a hypothetical or speculative measure of what might have been achieved by the

negotiators." *Officers for Justice*, 688 F.2d at 625.  "[P]arties, counsel, mediators, and district

judges naturally arrive at a reasonable range for settlement by considering the likelihood of a

plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted

to present value." *Rodriguez*, 563 F.3d at 965.  As shown below, the proposed Agreement falls

within the range of possible approval and thus satisfies the requirement for preliminary approval.

> **A.   The Agreement Warrants a Presumption of Fairness as it Followed Extensive
> Discovery, and is the Result of Serious, Informed, Non-Collusive Negotiations**

The first consideration in the preliminary approval analysis is the negotiation process that

gave rise to the Agreement.  The Ninth Circuit places "a good deal of stock in the product of an

arms-length, non-collusive, negotiated resolution." *Id.*  "Where a settlement is the product of

arms-length negotiations conducted by capable and experienced counsel, the Court begins its

analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm*

*Mut. Auto. Ins. Co.*, No. 08-1365, 2010 WL 1687832, *13 (N.D. Cal., Apr. 22, 2010).

The parties' negotiations here were at all times conducted in good faith and at arms-length.

Parisi Decl., ¶¶10-11.

The proposed Agreement is the result of a compromise reached only after extensive,

combative litigation.  Parisi Decl., ¶11.  Additionally, Plaintiffs filed a substantial motion for

class certification which included no less than four (4) expert declarations and 101 exhibits.  *See*

ECF Nos. 159, 159-1, and 161.1.

The Settlement is also a product of two mediations with well-respected JAMS mediators and two settlement conferences with Judge Corley.  Parisi Decl., ¶10.  After months of settlement negotiations, the case settled when the parties ultimately accepted the mediator's proposal by Judge Corley.  *Id.* Courts have recognized that "use of a mediator and the presence of discovery support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement." *Bellinghausen*, 303 F.R.D. at 620 (citation, punctuation omitted).  *See G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted).  The lack of collusion in the process used by the parties to negotiate the settlement is further evidenced by the fact that the Parties have made no agreement with respect to Plaintiffs' attorney's fees or costs nor any service award for Plaintiffs.  Parisi Decl., ¶20-21.

     **B.**    **The Agreement is Free of Obvious Deficiencies and Does Not Grant Preferential Treatment to Class Representatives or Segments of the Settlement Class**

The proposed Agreement is free of obvious deficiencies.  Nothing in the Agreement's terms indicate a collusive deal.  The Agreement's terms are favorable to the Settlement Class and on par with the relief Plaintiffs demanded in their complaint. Parisi Decl., ¶¶12-13.  There is no reversion clause to Defendants or to Plaintiffs' Counsel.  *C.f. In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 612 (9th Cir. July 9, 2018).  Any settlement checks that go uncashed will be distributed to EFF.  Agreement, §4.2.6.  This strongly suggests that Settlement Class benefits were not traded for individual benefits.  Further, the proposed Agreement does not grant preferential treatment to Plaintiffs or Segments of the Settlement Class. Parisi Decl., ¶18.  Aside from a potential service award, Plaintiffs will receive the same relief as all other Class Members and each Class Member will participate in the settlement on a *pro rata* basis.

### C.    The Agreement Falls Within the Range of Possible Approval

The proposed Agreement falls well within the "range of reasonableness."  Based on the information available, Plaintiffs expect (assuming the requested attorneys' fee/cost award and service fee are awarded) that each share would still yield significant payment per class member, that may be over $100, and perhaps as much as $250, depending on the claims rate.  Parisi Decl., ¶13.  This compares favorably to the benefits achieved in TCPA cases. Parisi Decl., ¶12; s*ee, e.g.*, *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (providing $34.60 to each claiming class member); *Hashw v. Dept. Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) (approving settlement providing claiming class members in TCPA case a $33.20 payment); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (providing a roughly $30 payment for each claiming class member); *Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142, ECF. No. 94 (N.D. Cal. Apr. 2, 2012) (granting approval of a settlement that provided a $25 voucher to each claiming class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261, ECF No.  97 (S.D. Cal. Feb. 20, 2013) (granting approval of a settlement that provided a $20 voucher or $15 cash to each claiming class member); *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198, Dkt. 266 (W.D. Wash. Sept. 17, 2012) (granting approval of a settlement that provided $20-40 cash payment to each claiming class member). That alone is good support for the Court to grant preliminary approval.

In addition, the Settlement includes significant injunctive relief that is exceptional in comparison to other similar TCPA actions.  *See e.g.*, *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *11 (N.D. Cal. Aug. 29, 2014) (collecting cases where injunctive relief provisions required compliance with the TCPA, such as scrubbing against cell phones numbers; do not call cell phone numbers with an ATDS; do not call consumers who revoked consent; and retain proof of prior express consent).  In contrast, the injunctive relief achieved in the Agreement obligates Defendants and the Telemarketing Vendors to go far beyond the mandate of the TCPA.  Agreement, §12; Parisi Decl., ¶18.  Thus, the relief is within the range of obtaining final approval and warrants preliminary approval.

### D.   The Settlement is Fair, Adequate, and Reasonable.

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." When making this determination, the Ninth Circuit has instructed district courts to balance several factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026; *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Ninth Circuit has recently noted that:

> The factors and warning signs identified in *Hanlon*, *Staton*, *In re Bluetooth*, and other cases are useful, but in the end are just guideposts.  The relative degree of importance to be attached to any particular factor will depend upon ... the unique facts and circumstances presented by each individual case....Deciding whether a settlement is fair is ultimately an amalgam of delicate balancing, gross approximations and rough justice...best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings—the whole gestalt of the case.

*In re Volkswagen "Clean Diesel" Mktg.,* 895 F.3d at 611 (internal quotations and citations omitted). Here, these factors, which are typically analyzed at final approval, readily establish that the proposed settlement is fair, adequate and reasonable.

### 1.   Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." (*citing Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

Here, Plaintiffs engaged in extensive negotiations with Defendants, and are thoroughly familiar with the evidence, legal theories, and defenses to this litigation.  Although Plaintiffs and their counsel believe that Plaintiffs' claims have merit, they also recognize that they will face risks at class certification, summary judgment, and trial.  Defendants would no doubt continue to

fight certification and present a vigorous defense at trial – as they have done throughout the litigation – and there is no assurance that the class would prevail.  Defendants maintain that they have strong defenses that Defendants and their vendors only called consumers who had expressed an interest in learning about solar products, that they did not use an autodialer as that term has been defined under the TCPA, did not call consumers without proper consent, did not improperly call consumers on the National Do Not Call Registry, and that they had the required procedures for maintaining internal company Do Not Call lists.  Thus, the proposed Settlement provides the Settlement Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.

### 2.      Continued Litigation Poses Significant Risks

While Plaintiffs believe they could and should prevail, they are forced to acknowledge the risks of continued litigation.  Parisi Decl., ¶13.  On balance, the proposed Settlement is a compromise which eliminates the risk, expense, delay, and uncertainty of continued litigation.  Significant risks imposed by continued litigation include failing to certify a class, having summary judgment granted against Plaintiffs and class members, and losing at trial or on appeal.  *Id.*  Defendants maintain that they have strong defenses and would vigorously assert these defenses.  Further, Defendants continue to argue that questions of individualized issues regarding agency and consent, among other issues, preclude certification of a class.  Defendants also assert that they would prevail on a summary judgment motion on vicarious liability in part because their contracts required Telemarketing Vendors to comply with the TCPA.  Defendants further contend that recent Ninth Circuit authority in *Jones v. Royal Admin. Servs., Inc*., 866 F.3d 1100, 1105 (9th Cir. 2017) supports their position that no agency relationship exists between them and the Telemarketing Vendors.  Assuming that Plaintiffs were to survive summary judgment, they would still likely face the uncertainty and risk of establishing liability at trial and a judgment that could potentially bankrupt the Defendants and leave the Class without any relief.  By settling, Plaintiffs and the Settlement Class obtain immediate and guaranteed relief and avoid these risks,

as well as the serious delays of the appellate process.  Such considerations have been found to weigh heavily in favor of settlement.[2]

### 3.      Risk of Maintaining Class Action Status

Plaintiffs would also face risks in certifying a class and maintaining that class status through trial. This agreement was reached before a ruling on certification.  Defendants still argue that no class can be certified because individualized inquiries will be required to determine agency and whether class members consented to receiving the calls, among other issues. Additionally, Plaintiffs recognize that some courts in this District have denied motions for class certification in TCPA cases. Even assuming that the Court were to grant Plaintiffs' motion for class certification, the class could still be decertified at any time.[3] Here, the Agreement provides class members with a recovery that is certain and immediate, eliminating the risk that class members would be left without any recovery at all.

### 4.      The Stage of the Proceedings and the Amount of Discovery Supports Preliminary Approval

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  As discussed above, extensive discovery and independent investigation in this case has given Plaintiffs a comprehensive understanding of Defendants' telemarketing practices and the scope of the alleged unlawful practices. The Settlement is a product of over two years of litigation, extensive motion practice, and fact and expert discovery, including multiple depositions.  Plaintiffs' counsel and their experts have received, examined, and analyzed information, documents, and materials that enabled Plaintiffs to assess the

---

[2]      *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

[3]      *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted); Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

likelihood of success on the merits.  They are thus well-informed about the strengths and

weaknesses of the case. Thus, this factor favors settlement.

### 5. Experience and Views of Counsel

"The recommendations of plaintiff's counsel should be given a presumption of

reasonableness." *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

Here, the Settlement was negotiated by counsel with extensive experience in consumer class

action litigation, including TCPA and other privacy actions.  *See* Parisi Decl., ¶¶14-15 and Exh.

2; Parasmo Decl., Exh. 1.  Based on their collective experience, Plaintiffs' Counsel concluded

that the Agreement provides exceptional results for the Settlement Class while avoiding

uncertainties of continued litigation.

## V. THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

Class certification under Rule 23(c) is a prerequisite to preliminary approval of the

Agreement. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*,

327 F.3d 938, 952 (9th Cir. 2003).

### A. The Settlement Class Meets the Requirements of Rule 23(a)

Certification of a class under Rule 23 requires numerosity, commonality, typicality, and

adequacy.  Fed. R. Civ. P. 23(a).  Plaintiffs' "burden at the class certification stage is slight[;] a

court need only be able to make a reasonable judgment that Rule 23 requirements are satisfied."

*Marlo v. United Parcel Serv. Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008) (quoted by *Norris-*

*Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010)).  Each of Rule 23(a)'s

requirements are met here.

**The Class Is Sufficiently Numerous:** Based on Plaintiffs' experts' analysis of the call

data provided by Defendants and their telemarketing vendors, the Parties have identified

hundreds of thousands of Settlement Class Members.  Parisi Decl., ¶19.  Numerosity is satisfied

where "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P.

23(a)(1).  "Courts have found joinder impracticable in cases involving as few as forty class

1   members." *In re National Western Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 660 (S.D.

2   Cal. 2010).  The number of Settlement Class Members well exceed these minimal requirements.

3        **There are Factual and Legal Issues Common to the Members of the Class:** The

4   Settlement Class meets the commonality requirement under Rule 23(a)(2).  Commonality

5   requires "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

6   Common questions of law or fact "must be of such a nature [they are] capable of classwide

7   resolution"; that is, that the answer to such common questions "will resolve an issue that is

8   central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*,

9   131 S. Ct. 2541, 2551 (2011) (citation, punctuation omitted).

10       Here, resolution of the following common questions resolve claims of the Settlement

11  Class: (1) whether Defendants and their agents utilized an ATDS to place telemarketing calls to

12  cell phone numbers; (2) whether Defendants or the agents called telephone numbers on the

13  National Do-Not-Call Registry; (3) whether Defendants maintained and enforced an adequate

14  internal DNC list and related policies; (4) whether Defendants are vicariously liable for calls

15  made by their agents and (5) whether the Settlement Class members gave their prior express

16  written consent.  Plaintiffs contend that all of these questions can be answered through common

17  proof: the call and lead records of Defendants and their vendors.  These common legal and

18  factual issues are sufficient to establish commonality.  Commonality can be "easily satisf[ied]"

19  where class members "all base their claims on the same legal theory." *Xiufang Situ v. Leavitt*,

20  240 F.R.D. 551, 560 (N.D. Cal. 2007) (citation, punctuation omitted).

21       **Plaintiffs Are Typical of the Class:** Plaintiffs' experiences are typical of Class Members

22  under Rule 23(a)(3).   To satisfy typicality, plaintiffs must establish that the "claims or defenses

23  of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P.

24  23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named

25  representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover N. Am.*, LLC,

26  617 F.3d 1168, 1175 (9th Cir. 2010) (punctuation, citation omitted). "The test of typicality is

27  whether other members have the same or similar injury, whether the action is based on conduct

28

which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*. (same).[4]  Typicality is satisfied because Plaintiffs' claims arise from the same practices and course of conduct that gives rise to the other Settlement Class members' claims (telemarketing campaigns by Defendants and their agents) and are based on the same legal theories.

**Plaintiffs Are Adequate Representatives for the Settlement Class:** Rule 23(a)(4) requires that Plaintiffs fairly and adequately protect the Class' interests.  The adequacy test poses two questions: (1) are there conflicts between Plaintiffs and their counsel and the other members of the Settlement Class, and (2) will Plaintiffs and their counsel vigorously prosecute the class action? *See Hanlon*, 150 F.3d at 1020.  No evidence of any potential conflicts exists here: Plaintiffs share the same claims as the Settlement Class, and have an acute interest in recovering from Defendants.  "[C]ourts have generally declined to consider conflicts . . . sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975).  Further demonstrating their adequacy, Plaintiffs "placed the interests of the putative class ahead of their personal interests, just as Rule 23 envisions" and "complied with their duty under Rule 23(a)(4) by fairly and adequately protect[ing] the interests of the class," and by rejecting Defendants' Rule 68 settlement offer of $400,000.00.  *See* ECF No. 108 (internal quotations omitted).

**Plaintiffs' Counsel Are Adequate Counsel for the Class:** Rule 23(g) dictates that the Court consider the adequacy of class counsel by evaluating counsel's work on the case, experience in handling complex litigation, counsel's knowledge and the resources of counsel. Fed. R. Civ. P. 23(g)(1)(A).  However, "[a]dequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. California Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) (quoted, followed by *Patel v. Trans Union, LLC*,

---

[4]     *See also Xiufang Situ*, 240 F.R.D. at 561 ("[t]ypicality requires that named plaintiffs be members of the class they represent and possess the same interest and suffer the same injury as class members," citation, punctuation omitted). *Cf. Smith v. Univ. of Wa. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) (typicality does not turn on "particularized defenses against individual class members").

308 F.R.D. 292, 306 (N.D. Cal. 2015)).  Here, Plaintiffs' counsel has diligently and skillfully

litigated this case.  Parisi Decl., ¶¶3-11.  Plaintiffs' counsel are generally well-qualified and

experienced in litigating consumer class actions, including TCPA and other privacy class actions.

*See* Parisi Decl. ¶¶14-15 and Exh. 2; Parasmo Decl., Exh. 1.  Counsel have advanced the costs of

litigation, representing the Class on a contingent fee basis, and have provided adequate

representation to the class pursuant to Rule 23(g).  *See* generally, Parisi Decl. ¶¶3-11, and 20.

     **B.**     **The Class Meets the Requirements of Rule 23(b)(3)**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

certification must also show that the action is maintainable under [Rule] 23(b)(1), (2) or (3)."

*Hanlon*, 150 F.3d at 1022. *See also* Manual for Complex Litigation (Fourth) § 21.131. The Class

can be certified under Rule 23(b)(3). Certification under Rule 23(b)(3) requires the Court find (1)

that "questions of law or fact common to class members predominate over any questions

affecting only individual members;" and (2) "that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

     **Common Facts Predominate the Class:** "The main concern in the predominance

inquiry [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg.*

*Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).  Predominance is satisfied when "[a]

common nucleus of facts and potential legal remedies dominates th[e] litigation," *Hanlon*, 150

F.3d at 1022, and "[i]ndividualized issues are few, and most of them are likely to be relatively

easy [to resolve]."  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

*Sands, Inc.*, 244 F.3d 1152, 1166 (9th Cir. 2001). The Settlement Class meets Rule 23(b)(3)'s

predominance requirement.

     Here, liability depends on whether a handful of dialers constitute an ATDS, a few

contracts establish agency liability, and whether Defendants or their agents have any evidence of

legally valid consent. These common issues simply outweigh any individualized issues that

might exist in terms of legal significance and relative burden of adjudication: "When common

questions present a significant aspect of the case and they can be resolved for all members of the

1   class in a single adjudication, there is clear justification for handling the dispute on a

2   representative rather than on an individual basis." *Las Vegas Sands*, 244 F.3d at 1162 (quoting

3   *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998) (predominance met when

4   "common nucleus of facts and potential legal remedies dominates . . . litigation")).

5          **A Class Action is the Superior Dispute Resolution Mechanism:** Predominance

6   overlaps some aspects of superiority. "Implicit in the satisfaction of the predominance test is the

7   notion that the adjudication of common issues will help achieve judicial economy." *Valentino v.*

8   *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). *See also Vinole v. Countrywide Home*

9   *Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). Assessing superiority under Rule 23(b)(3)

10  "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."

11  *Hanlon*, 150 F.3d at 1023. "A class action is the superior method for managing litigation if no

12  realistic alternative exists." *Valentino*, 97 F.3d at 1234-35. Hence, the Court must compare a

13  certified class to "individual claims for a small amount of consequential damages," rather than

14  no litigation whatsoever. *Hanlon*, 150 F.3d at 1023.

15         This Court has recognized "the statutory damages provided by the TCPA are 'not

16  sufficient to compensate the average consumer for the time and effort that would be involved in

17  bringing small claims against a national corporation.'" *Meyer v. Bebe Stores, Inc.*, No. 14-cv-

18  00267-YGR, 2017 WL 558017, *7 (N.D. Cal. Feb. 2, 2017) (internal citations omitted). Over

19  hundreds of thousands of individual TCPA cases—even assuming those cases were ever filed—

20  is not a reasonable alternative to a certified settlement class. Even if hundreds of thousands of

21  individual class members actually brought their claims, "[f]orcing class members to repeat these

22  years-long discovery efforts in individual proceedings would not be superior to class treatment."

23  *See O'Shea v. Am. Solar Sol., Inc*., 318 F.R.D. 633, 639 (S.D. Cal. 2017). Accordingly, there can

24  be no question that class treatment is superior here.[5]

25  _____

26         [5]     Because the case can be resolved through a negotiated settlement, the Court
    does not need to consider issues of manageability relating to trial. *Amchem Prods.*, 521 U.S. at
    620 ("[c]onfronted with a request for settlement-only class certification, a district court need
27  not inquire whether the case, if tried, would present intractable management problems, for the
    proposal is that there be no trial"; citation omitted).

28

## VI. THE PROPOSED FORM AND METHOD OF NOTICE ARE ADEQUATE AND SATISFY THE REQUIREMENTS OF RULE 23

### A. The Proposed Method of Notice

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173-77 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Rule 23 does not require perfect notice, but rather "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Even when absent class members do not receive actual notice, it "does not mean that the best practicable notice under the circumstances was not given to absent class members." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (affirming class settlement absent actual notice to class member). The Agreement calls for Notice in several formats and more than meets the Rule 23(e)(1) standard.

**Direct Mail Notice.** The Agreement contemplates direct mail notice, which is the "gold standard" for notice under Rule 23. Notice to the Settlement Class is to be accomplished by direct mail to as many Class Members as can be identified using the call records and lead records of Defendants and their telemarketing vendors coupled with various third-party databases. Peak Decl., ¶¶6-10. The Parties have worked collaboratively together to identify, through reasonable means, the name and contact information, including postal and email addresses, for any person they believe to be a Settlement Class Member. In addition, the Settlement Administrator will perform three rounds of historical phone searches to attempt to locate postal addresses for any remaining Settlement Class members without an address on file. Peak Decl., ¶9. To the extent mail is returned as undeliverable, the Settlement Administrator will make a good faith attempt to locate such class members and re-mail notice. Peak Decl., ¶15.

**Email Notice.** The Settlement Administrator will also (in addition to U.S. mail notice) send a Short Form Notice via email to those Settlement Class members for which the Parties

have email addresses.  Agreement, §6.5.  Email addresses exist for over thirty percent of the class members.  Peak Decl., ¶12.

Overall, the Settlement Administrator, based on its substantial experience in the field, estimates that at least seventy six percent of the Settlement Class members to whom Direct Notice will be sent, either through postal mail, email, or both, will receive that notice.  Peak Decl. ¶16; see also, *Krakauer v. Dish Network, LLC*, No. 14-333, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) (overruling objections to claims administrator declarations as to efficacy of similar reverse-lookup process to identify TCPA Class Members under Rule of Evidence 702).)

**Long Form Notice to Be Made Available on A Settlement Website.**  In addition, the Settlement Agreement requires the Settlement Administrator to create and maintain a Settlement website, to be activated within 30 days of Preliminary Approval, (the "Settlement Website").  Agreement, §6.3.1.  "The Settlement Website will contain information about the Settlement and case-related documents such as the Settlement Agreement, the Long-Form Notice, the Claim Form, and the Preliminary Approval Order."  Agreement, §6.3.1.  Settlement Class Members will have the option to file a claim electronically using the Settlement Website.  *Id.*

These extensive efforts to provide class members with direct notice either through the postal service, email, or both are more than "reasonably calculated to reach absent class members." *Reppert v. Marvin Lumber 7 Cedar Co.,* 359 F.3d 53, 56 (1st Cir. 2004).

**B.    Content of the Notice**

Notice must inform class members of "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)

The proposed forms of notice, attached as Exhibits B and D to the Agreement, satisfy all of the above criteria in an objective and neutral fashion.  Moreover, all forms of the notices are

written in plain and straightforward language and are consistent with Rules 23(c)(2)(B) and 23(e)(1).

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard,'" *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)), and is "adequate if it may be understood by the average class member." 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:53 at 167 (4th ed. 2002). Here, the proposed notice is clear enough to be understood and provides enough information about the Settlement for interested Settlement Class members to determine whether they would like to object, exclude themselves, or participate and details how to execute on their decision. As such, the proposed notice warrants approval.

## C.   The Settlement's Distribution of the Settlement Fund is Fair

The Settlement's formula for distribution of the Settlement Fund is eminently fair and is not susceptible to manipulation. The Agreement provides that Settlement Class members must timely submit, by mail or online, a valid Claim Form by the Claims Deadline. Agreement, §7.1. Again, all Settlement Class Members who submitted an Approved Claim and cash their Benefit Check will receive an equal share of the Settlement Fund (*i.e.*, they will participate on a pro rata basis). As discussed supra, it estimated that each Settlement Class Member who submits an Approved Claim will receive a significant payment. Parisi Decl., ¶13. This is meaningful enough compensation to provide Settlement Class members an incentive to participate in the Settlement and file claims—one of the most crucial factors that drive class member participation. *Biben v. Card*, 789 F. Supp. 1001, 1005 (W.D. Mo. 1992) ("settlements should provide sufficient incentive to the notice" and submit claims). The Settlement also prohibits any payments to Settlement Class members under $5.00 and it reserves those funds for the *Cy Pres* Recipient instead ensuring that the payments received are worth the effort in making a claim and efficient in terms of administrative costs.[6] Agreement, §7.4.

---

[6]     *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) ("'*de minimis*

**D.     The Court Should Appoint Kurtzman Carson Consultants, LLC As The Settlement Administrator**

As discussed previously, the Parties' proposed Settlement Administrator, Kurtzman Carson Consultants, LLC is an experienced and capable firm with extensive experience in the administration of class action settlements and notice programs.  Peak Decl., ¶3.  Given this substantial experience and KCC's track record of being approved by courts around the country, KCC should be appointed as Settlement Administrator by the Court.

## VII.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant preliminary approval of the proposed Agreement and the Plan, approve Notice, certify the Settlement Class on a preliminary basis, appoint Class Counsel and Plaintiffs as class representatives, appoint KCC as Settlement Administrator, enter the proposed Preliminary Order submitted herewith, and set the hearing for final approval.


Dated: September 27, 2018          By:     /s/David C. Parisi

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile:  (877) 501-3346

Ethan Preston

thresholds for payable claims are beneficial to the class as a whole since they save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs and courts have frequently approved such thresholds, often at $10'''; citation omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone:  (972) 564-8340
Facsimile:    (866) 509-1197
ep@eplaw.us

Alan Himmelfarb
THE LAW OFFICES OF ALAN HIMMELFARB
80 W. Sierra Madre Blvd.  # 304
Sierra Madre, California 91024
Telephone: (626) 325-3104
consumerlaw1@earthlink.net

Attorneys for Plaintiffs Lynn Slovin, Samuel Katz,
Jeffery Price, and Justin Birkhofer on their own
behalf, and on behalf of all others similarly situated