David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

*Attorneys for Plaintiffs Lynn Slovin, Samuel Katz,
Jeffery Price, and Justin Birkhofer, on their own
behalf, and on behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN SLOVIN, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNRUN, INC., a California corporation, CLEAN ENERGY EXPERTS, LLC, a California limited liability company doing business as SOLAR AMERICA, and DOES 1-5, inclusive,<br><br>Defendants. | No. 4:15-cv-05340-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**DECLARATION OF DAVID C. PARISI IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Date:       November 20, 2018<br>Time:       2:00 p.m.<br>Location:   Courtroom 1<br>               Ronald V. Dellums Federal Bldg.<br>               1301 Clay Street<br>               Oakland, California 94612 |

I, David C. Parisi, declare as follows:

1.      I am a partner in the law firm of Parisi & Havens LLP and am responsible for the handling of this litigation at my firm.  I am counsel of record for Plaintiffs Lynn Slovin, Samuel Katz, Jeffery Price and Justin Birkhofer.  I am a member of the Bar of the State of California and licensed to practice before this Court.  I make this declaration based upon my own personal knowledge.  If called to testify, I could and would testify to the facts contained herein.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Stipulation and Agreement of Settlement among the parties in this action.  Exhibit 1 includes the following Exhibits:

**A.**      Claim Form

**B.**      "Direct Mail Notice" or "Short Form Notice"

**C.**      Proposed Final Approval Order

**D.**      Long Form Notice

**E.**      Proposed Preliminary Approval Order

**BACKGROUND AND PROCEDURAL HISTORY OF THE LITIGATION**

3.      On November 20, 2015, Plaintiff Lynn Slovin filed a class action complaint against Defendants Sunrun, Inc. and Clean Energy Experts, LLC (collectively, "Defendants"). ECF No. 1. Plaintiff alleged Defendants violated the TCPA by placing unsolicited telemarketing calls to Plaintiffs and members of the putative classes on telephone numbers assigned to wireless subscribers using an automatic telephone dialing system ("ATDS") or prerecorded voice messages.  *Id.*  On December 2, 2015, Ms. Slovin filed her First Amended Complaint to add claims for Defendants' alleged "Do Not Call" violations. ECF No. 7.  Through public record requests for robocall and do not call complaints to the FTC and FCC, we discovered complaints of thousands of other consumers claiming that they were affected by the telemarketing practices of Defendants and their vendors.  On March 25, 2016, Plaintiffs filed a Second Amended Complaint, which added Jeffery Price and Samuel Katz as named plaintiffs.  ECF No. 35.

4.      From the outset, as Plaintiffs' counsel, we were challenged with the task of discovering the telemarketing vendors that made calls that we believed to be on behalf of

1 Defendants.  After Defendants filed a motion to strike the class allegations in April 2016, which

2 was granted prior to opposition briefing, we spent the next several months propounding

3 discovery requests on Defendants, serving 25 third-party subpoenas on telecommunications

4 entities, and conducting an investigation to comply with the Court's order.  Based largely on

5 investigation, on July 12, 2016, Plaintiffs filed their Third Amended Complaint, which identified

6 telemarketing vendors, alleged that Defendants participated on calls initiated by the

7 telemarketing vendors and live transferred calls to the Defendants, and alleged that Defendants

8 appeared to control the manner and method by which the vendors conducted the solar

9 telemarketing campaigns.  ECF No. 46.  We also named Justin Birkhofer as an additional

10 plaintiff who alleged that he was live transferred to Sunrun and received a direct call from

11 Sunrun. ECF No. 46.  On August 19, 2016, Defendants filed a second motion to strike the class

12 allegations.  ECF No. 51.  Defendants, throughout the litigation, disputed all of Plaintiffs' claims,

13 and disputed that the claims were appropriate for class treatment.

14        5.      While we were in the midst of discovery, on March 7, 2017, we agreed to and did

15 participate in a mediation with former Chief Magistrate Judge Edward A. Infante.  The case did

16 not resolve.  Shortly thereafter, Defendants made a Rule 68 offer of judgment of $100,000 to

17 each of the four named Plaintiffs. Plaintiffs filed a motion to declare the offer ineffective, which

18 was granted by the Court.  ECF No. 89.

19        6.      We deposed each of Defendants' five 30(b)(6) witnesses on a total of 18 topics

20 related to class certification and merits, including but not limited to the topics related to

21 Defendants' telephone dialing systems, lead databases, relationships with telemarketing vendors,

22 policies for TCPA compliance, and evidence of prior express consent.  Plaintiffs served 154

23 requests for production of documents (RPDs) and 54 requests for admission on each defendant,

24 and a total of 31 interrogatories on Defendants collectively.

25        7.      We also responded to a tremendous amount of discovery propounded by

26 Defendants.  We worked with our four named clients and responded, collectively, to a total of

27 532 document requests and 81 interrogatories.  Additionally, all four named Plaintiffs sat for their

28 depositions.

8.      We litigated over several hard-fought discovery disputes, and appeared before Magistrate Corley on several occasions to resolve those disputes.  In addition, we sought court intervention to enforce a third party subpoena.  Order re Plaintiffs' Motion to Compel Production, *Slovin v. CallFire, Inc.*, No. 17-mc-00091 (C.D. Cal.), ECF No. 14.  In response, CallFire produced still more call records, in addition to those produced by Defendants and third parties.

9.      We retained two well known TCPA related experts, Randall Snyder and Anya Verkovskaya.  On October 3, 2017, these experts produced reports establishing the ascertainability of class members.  Defendants produced two responding expert reports, and all expert depositions were completed.   On December 8, 2018, we filed a motion for class certification.  ECF No. 159. The motion was stayed during the subsequent mediation and settlement conferences and ultimately taken off calendar when a settlement in principle was reached.

**THE SETTLEMENT NEGOTIATIONS WERE NON-COLLUSIVE**

10.      The settlement negotiations were at all times conducted at arm's length and in good faith.  The first mediation session with Judge Infante in March 2017 was not successful. This day-long mediation session did, however, facilitate good-faith, discussions about the merits of the lawsuit. We continued to vigorously litigate the case after the mediation.  On January 9, 2018, we participated in another private mediation – this time with Bruce Friedman, a JAMS mediator with extensive TCPA mediation experience.  Again, the mediation was not successful. On January 31, 2018, we participated in a settlement conference with Magistrate Judge Corley that culminated in Judge Corley making a mediator's recommendation.  The Parties then participated in a telephonic conference with Magistrate Judge Corley on April 5, 2018, during which the parties accepted the mediator's proposal and an agreement was reached on the scope of the settlement.  We spent the subsequent months carefully negotiating the fine details of the Settlement and analyzing data to define the contours of the class and develop a notice and claims procedure.

11.     The proposed Agreement is the result of a compromise reached only after extensive, combative litigation.  Plaintiffs fended off multiple attempts by Defendants to dismiss the class allegations in the Complaint while simultaneously pursuing multiple discovery disputes – disputes which ultimately resulted in obtaining call records and other class discovery needed to inform the settlement negotiations.

**THE SETTLEMENT IS FAIR AND REASONABLE**

12.     The terms of the settlement comport with other TCPA class action settlements. We have reviewed over fifty class actions in federal court which alleged a violation of the TCPA and which resulted in settlements.  The benefits which the proposed class in this action are expected to receive compare favorably to other settlements.  In fact, most of the settlements we reviewed contemplated the class members would receive between about $50 and $250.  Further, like this action, the majority of the settlements we reviewed included a common fund, without a reverter, with a claims process.

13.     This settlement is an objectively good result for the class.  Based on the information available, we expect that, after payment of attorneys' fees we expect to seek, litigation costs expended, estimated settlement administrator costs, and the payment of class representative incentive awards we expect to seek, with a claims rate of between two and four percent, the average claim payment would very likely be over $100, and perhaps as much as $250.  Accordingly, the estimated average payment compares favorably to the benefits achieved in other cases and I am confident that such a settlement in the best interest of the class.

14.     In my practice, I have been appointed lead or co-lead counsel in numerous state and federal class actions.  A copy of my firm's resume is attached as **Exhibit 2**.  Over the past fifteen or more years of practice, well over ninety five percent of my firm's work has been devoted to representing consumers in class actions. Clients generally find our firm through other attorneys who know our reputation of obtaining good results for our clients in often complex consumer class actions and having a large breadth of knowledge when it comes to the procedural intricacies of class actions.  As my resume indicates, we have litigated numerous complex class actions in both trial court as well as appellate courts.

15.     In addition to the cases identified on the firm resume, my office has been involved in a significant number of actions which are based on alleged violations of the Telephone Consumer Protection Act ("TCPA").  These actions include: *Thomas v. Taco Bell Corp, et al.*, No. SACV09-1097 (C.D. Cal.); *Ellison v. Steven Madden, LTD*, No. CV11-05935 (C.D. Cal.); *Wannemacher v. Carrington Mortg. Services, LLC*, No. 8:12-cv-02016-FMO-AN (C.D. Cal.); *Snyder v. Ivisionmobile, Inc.*, No. 5:13-cv-05946-HRL (N.D. Cal.); *McKenna v. Whispertext, LLC*, No. 5:14-cv-00424-PSG (N. D. Cal.); *Brown v. Directv, LLC*, No. 2:12-cv-08382-DMG-E (C.D. Cal.); *Smith v. Microsoft Corp.*, No. 11-CV-01958 (S.D. Cal.); *Fernandez v. Curacao Ltd., et al*, No CV13-03439 (C.D. CA); *Gomez v. Campbell-Ewald Co.*, No. CV-10-02007 (C.D. Cal.), *appeal docketed* No. 13-55486 (9th Cir., Mar. 22, 2013); and *Meyer v. Portfolio Recovery Assoc.*, No. 11-CV-01008 (S.D. Cal.), *transferred to MDL*, *In re PRA*, No. 2295 (Dec. 21, 2011).

16.     As discussed above, the settlement negotiations in this matter were conducted in good faith with highly experienced mediators, Judge Infante, Mr. Bruce Friedman, and Hon. Magistrate Judge Corley.  Additionally, given the extensive discovery and investigation that we and our co-counsel conducted throughout the past years, we were fully informed when we entered into settlement negotiations with regard to the strengths and weaknesses of Plaintiffs' claims, as well as Defendants' various defenses. Thus, we were confident that we were in the best position to negotiate a favorable resolution on behalf of the class.

17.     The fact discovery, investigation, motion practice and legal research informed us, while we believed the case meritorious, it also had weaknesses which had to be carefully evaluated in determining what course (*i.e.*, whether to settle and on what terms, or to continue to litigate through class certification and a trial on the merits) was in the best interests of the class. Despite the fact that Plaintiffs' allegations and claims could be supported by legal authority, expert opinion and other evidence, the specific circumstances involved here presented many uncertainties in Plaintiffs' ability to prevail. Thus, after we carefully evaluated the merits of this case and considered the advantages and disadvantages of continued litigation, Plaintiffs and counsel came to the conclusion that the benefits of the settlement to the class overwhelmingly weigh in favor of approval.

18.     The Settlement provides class members with tangible monetary relief.  The Settlement does not grant preferential treatment to Plaintiffs or any other segment of the class.  The method for determining each class members' compensation is objective and fair, treating all class members alike.  Additionally, the Settlement provides significant injunctive relief, which we believe will have a positive impact on the solar lead generation industry, as CEE claims to be one of the largest solar lead generation companies in the nation.

19.     Based on discovery obtained during the litigation, our independent investigation, the collaborative work of the Parties, and analysis of the all of the call data, the parties have identified approximately 350,000 class members.  The Settlement Class is coextensive with and subsumes the proposed class in the operative complaint.  There are no significant differences between the claims being released and the claims set out in the operative complaint.

**THE PARTIES DID NOT REACH ANY AGREEMENT WITH RESPECT TO PAYMENT OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS**

20.     The Parties did not reach any agreement concerning the amount of attorneys' fees and costs to be awarded.  A quick glance at the docket with its extensive discovery disputes and motion practice confirms that Plaintiffs' efforts in this case support a fee award that is moderately higher than the 25 percent benchmark used in this Circuit.  Here, Plaintiffs were embroiled in protracted discovery disputes in and outside this District to obtain data necessary to identify the Settlement Class.  As a result, Plaintiffs' counsel have in excess of $2 million in lodestar in the case, and expended more than $450,000 in costs.

21.     The Parties also have not reached any agreements concerning the amount of the Service Awards to be sought here.  Each Plaintiff brought their claims to us, assisted me and my co-counsel in identifying the claims and responding to voluminous discovery requests, traveled to and sat for a lengthy deposition, devoted many hours to conferring with myself and my co-counsel on strategic decisions, reviewing pleadings and other documents, and keeping informed of developments in the litigation.  Representative Plaintiffs intend to ask the Court to award them

each a Service Award of up to $40,000.00 for the time and effort that they have invested in the Action, and to recognize the personal sacrifices made in rejecting the Rule 68 Offer.

**ELECTRONIC FRONTIER FOUNDATION SHOULD BE APPOINTED AS THE CY PRES RECIPIENT**

22.     The Parties propose Electronic Frontier Foundation ("EFF") as the cy pres recipient.  EFF has received cy pres funds in TCPA related litigation in the past. *See, e.g.*, *Gehrich v. Chase Bank, USA, NA*, Case No. 1:12-cv-05510, (N.D. Ill. 2016) dkt. No. 241, and *Mey v. Frontier Communications Corp.*, Case No. 3:13-cv-01191-MPS (D. Conn. 2017), dkt no. 164.  According to its website, EFF's mission is, in part, to protect consumers from invasions of privacy resulting from the use of new technologies. *See* https://www.eff.org/issues. This mission coincides with the purpose of the TCPA and thus overlaps with the interests that Plaintiffs seek to protect in this case. Plaintiffs will submit a declaration from the foundation at final approval which will document more fully EFF's qualifications.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on September 27, 2018, at Port Hadlock, Washington.


  /s/David C. Parisi_____
  David C. Parisi