David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

*Attorneys for Plaintiffs Lynn Slovin, Samuel Katz,*
*Jeffery Price, and Justin Birkhofer, on their own*
*behalf, and on behalf of all others similarly situated*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN SLOVIN, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNRUN, INC., a California corporation, CLEAN ENERGY EXPERTS, LLC, a California limited liability company doing business as SOLAR AMERICA, and DOES 1-5, inclusive,<br><br>Defendants. | No. 4:15-cv-05340-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        July 9, 2019<br>Time:        2:00 p.m.<br>Location:   Courtroom 1<br>               Ronald V. Dellums Federal Bldg.<br>               1301 Clay Street<br>               Oakland, California 94612 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND AND PROCEDURAL HISTORY .........................................2

     A.      The Case Was Intensively Litigated ....................................................2

     B.      The Settlement Negotiations Were Non-Collusive................................4

     C.      Preliminary Approval...........................................................................5

III.    TERMS OF THE SETTLEMENT ....................................................................5

     A.      The Settlement Class.............................................................................5

     B.      Monetary Benefits to Settlement Class.................................................5

     C.      Robust Injunctive Relief .......................................................................6

     D.      Scope of the Release .............................................................................8

     E.      Payment of Attorneys' Fees and Costs .................................................8

     F.      Execution of the Approved Notice Plan and Reaction of the Class .......9

          1.      Dissemination of the Notice.........................................................9

          2.      The Positive Reaction of the Class Indicates that Due Process has been Satisfied .........................................................................10

          3.      CAFA Notice was Provided as Required.....................................11

IV.     THE SETTLEMENT MERITS FINAL APPROVAL ......................................11

     A.      The Court Should Certify the Class for the Purpose of Entering Judgment..........11

          1.      The Settlement Class Meets the Requirements of Rule 23(a) .................11

          2.      The Class Meets the Requirements of Rule 23(b)(3)................................14

     B.      The Notice to the Settlement Class Satisfied Rule 23 .........................16

     C.      The Settlement is Fair, Reasonable, Adequate, and Deserving of Final Approval ...........16

          1.      Strength of Plaintiffs' Case........................................................17

          2.      Continued Litigation Poses Significant Risks............................18

          3.      The Risk of Maintaining Class Action Status............................19

          4.      The Amount Offered in Settlement.............................................19

5.   The Stage of the Proceedings and the Amount of Discovery
     Supports Final Approval ........................................................... 21

6.   Experience and Views of Counsel ........................................... 21

7.   The Lack of a Governmental Participant Weighs in Favor of Final
     Approval ................................................................................... 22

8.   The Positive Reaction of the Class to the Settlement Supports Final
     Approval ................................................................................... 22

V.   CONCLUSION ................................................................................ 23

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3 **Cases**

*Arthur v. Sallie Mae, Inc.*,
No. 2:10-cv-00198, Dkt. 266 (W.D. Wash. Sept. 17, 2012)....................................20

*Barani v. Wells Fargo Bank, N.A.*,
No. 12-cv-02999, Dkt. 32 (S.D. Cal. Mar. 6, 2015) ........................................22

*Bayat v. Bank of the West*,
C–13–2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)..........................22

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ................................................13

*Californians for Disability Rights, Inc. v. California Dep't. of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008)..........................................14

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) ................................20

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ...............................................17

*Couser v. Comenity Bank*,
125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015)................................22

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008)..........................19

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................... *passim*

*Harper v. Law Office of Harris and Zide*,
No. 15-cv-01114-HSG, 2017 WL 995215 (N.D. Cal. Mar. 17, 2017) ....................22

*Hashw v. Dept. Stores Nat'l Bank*,
182 F. Supp. 3d 935, 947 (D. Minn. 2016)..........................20

*In re Hyundai & Kia Fuel Econ. Litig.*,
No. 15-56014, 2019 WL 2376831 (9th Cir. June 6, 2019)..........................2, 11, 16

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
No. 3:11-md-02261, ECF No. 97 (S.D. Cal. Feb. 20, 2013)..........................20

*Jones v. Royal Admin. Servs., Inc.*,
   866 F.3d 1100 (9th Cir. 2017) ..........................................................18

*Kazemi v. Payless Shoesource, Inc.*,
   No. 3:09-cv-05142, ECF. No. 94 (N.D. Cal. Apr. 2, 2012)......................20

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015)..................................................20, 22

*Kristensen v. Credit Payment Services Inc.*,
   879 F.3d 1010 (2018)....................................................................18

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................9, 16

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015).......................................................22

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) .....................................................14, 15

*Marlo v. United Parcel Serv. Inc.*,
   251 F.R.D. 476 (C.D. Cal. 2008).......................................................11

*McDonald v. CP OpCo, LLC*,
   No. 17-CV-04915-HSG, 2019 WL 2088421 (N.D. Cal. May 13, 2019)...............23

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..........................................................21

*Meyer v. Bebe Stores, Inc.*,
   No. 14-cv-00267-YGR, 2017 WL 558017 (N.D. Cal. Feb. 2, 2017) ...................15

*In re National Western Life Ins. Deferred Annuities Litig.*,
   268 F.R.D. 652 (S.D. Cal. 2010) .......................................................12

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)........................................19

*Norris-Wilson v. Delta-T Group, Inc.*,
   270 F.R.D. 596 (S.D. Cal. 2010) .......................................................11

*O'Shea v. Am. Solar Sol., Inc.*,
   318 F.R.D. 633 (S.D. Cal. 2017) .......................................................16

*Officers for Justice v. Civil Service Comm'n of City and Co. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .....................................................17, 20

*In re Omnivision Techns., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................21

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)..........................................................................................9

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..........................................................9, 17, 19, 20

*Slovin v. CallFire, Inc.*,
   No. 17-mc-00091 (C.D. Cal.), ECF No. 14 .......................................................4

*Smith v. Univ. of Wa. Law Sch.*,
   2 F. Supp. 2d 1324 (W.D. Wash. 1998)...........................................................13

*Tadepalli v. Uber Techs., Inc.*,
   No. 15-CV-04348-MEJ, 2016 WL 1622881 (N.D. Cal. Apr. 25, 2016) ..............22

*Thomas v. Taco Bell Corp.*,
   582 F. App'x 678 (9th Cir. 2014) ....................................................................18

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ...........................................................................15

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ...........................................................................15

*In re Volkswagen "Clean Diesel" Mktg.*,
   895 F.3d at 611 ...............................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)......................................................................................12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .............................................................................8

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   571 F.3d 953 (9th Cir. 2009) ...........................................................................14

*Wilkins v. HSBC Bank Nevada, N.A.*,
   No. 14-cv-00190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)...........................22

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ..........................................................................13

*Xiufang Situ v. Leavitt*,
   240 F.R.D. 551 (N.D. Cal. 2007)..................................................................12, 13

**Statutes**

CAFA ...................................................................................................................11, 22

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq* .............................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 23..............................................................................................1, 11, 13

Fed. R. Civ. P. 23(a) .........................................................................................11, 14

Fed. R. Civ. P. 23(a)(1)...........................................................................................12

Fed. R. Civ. P. 23(a)(2)...........................................................................................12

Fed. R. Civ. P. 23(a)(3)......................................................................................12, 13

Fed. R. Civ. P. 23(a)(4)...........................................................................................13

Fed. R. Civ. P. 23(b)................................................................................................11

Fed. R. Civ. P. 23(b)(3)....................................................................................9, 14, 15

Fed. R. Civ. P. 23(c) ...............................................................................................9

Fed. R. Civ. P. 23(c)(1)(C).......................................................................................19

Fed. R. Civ. P. 23(e) ...............................................................................................9, 16

Fed. R. Civ. P. 23(e)(1)...........................................................................................9

Fed. R. Civ. P. 23(g) ................................................................................................14

Fed. R. Civ. P. 23(g)(1)(A)........................................................................................14

Fed. R. Civ. P. 68....................................................................................................3, 8, 13

Fed. R. Civ. P. 68(d)...............................................................................................3

*US Solar Sector*, FORBES (Dec. 17, 2018),
https://www.forbes.com/sites/kensilverstein/2018/12/17/questionable-tariffs-leave-
a-dark-cloud-over-the-u-s-solar-sector/#391fd10e3af3 ..........................................19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Lynn Slovin, Samuel Katz, Jeffery Price, and Justin Birkhofer ("Plaintiffs")
move this Court pursuant to Federal Rule of Civil Procedure 23 for an order confirming
certification of the Settlement Class and the appointment of Class Counsel and the Class
Representatives, and granting final approval of the Class Action Settlement Agreement.  (A
motion for approval of attorney's fees, costs, and service awards for the Class Representatives is
also pending before the Court.)

After extensive litigation, two mediations, and a settlement conference before Magistrate
Judge Jacqueline Corley Scott, the Parties reached an agreement to resolve Plaintiffs and
Settlement Class Members' claims that Defendants Sunrun, Inc. ("Sunrun") and Clean Energy
Experts, LLC ("CEE") (collectively, "Defendants")' solar telemarketing campaigns violated the
Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq* ("TCPA").  Based on the Parties'
acceptance of Judge Corley's mediator's proposal, the Settlement Agreement provides for a non-
reversionary $5.5 million common fund to be distributed, after deduction of administration costs,
attorney fees and costs, and service awards, on a proportionate basis to members of the
Settlement Class, who submitted valid claim forms.

The Settlement is an excellent result.  If the Court grants final approval to the Settlement
and awards the attorney's fees, costs, service awards and claims administration costs as
requested, each of the roughly 36,000 Settlement Class Members who submitted a valid claim
will receive approximately $68 per claim.  Havens Beckman Decl., ¶5.  In addition, the
Settlement, if finally approved and ordered by the Court, will provide consumers with robust
injunctive relief provisions that can be enforced against both a solar company (Sunrun) and a
lead generator (CEE).

On January 29, 2019, the Court granted preliminary approval of the Settlement
Agreement, with an Amendment. ECF. No. 196.  The Settlement Administrator has now
successfully provided notice to the Settlement Class and the time for filing objections or
requesting to be excluded has passed.  No one has objected to the Settlement and only three

1   individuals have opted out.  The lack of any objections is of little surprise given that the

2   Settlement represents a significant recovery for the Settlement Class and, if approved, will

3   provide Settlement Class Members who submitted valid claims with significant compensation.

4   The high claims rate of just over 10 percent also confirms that Settlement Class Members view

5   the Settlement favorably.

6   For these and the reasons below, and in light of the "strong judicial policy that favors

7   settlements, particularly where complex class action litigation is concerned" (*In re Hyundai &*

8   *Kia Fuel Econ. Litig*., No. 15-56014, 2019 WL 2376831, at *4 (9th Cir. June 6, 2019)(internal

9   quotations omitted), Plaintiffs respectfully request that this Court find the Settlement to be fair,

10   reasonable and adequate, and grant final approval.

11   **II.    BACKGROUND AND PROCEDURAL HISTORY**

12          **A.    The Case Was Intensively Litigated**

13          On November 20, 2015, Plaintiff Slovin filed a class action complaint against

14   Defendants.  ECF No. 1.  Ms. Slovin alleged Defendants violated the TCPA by placing

15   unsolicited solar telemarketing calls to her and members of the putative classes on telephone

16   numbers assigned to wireless subscribers using an automatic telephone dialing system

17   ("ATDS").  *Id.*  On December 2, 2015, Ms. Slovin filed her First Amended Complaint to add

18   claims for Defendants' alleged "Do Not Call" violations.  ECF No. 7.  Through public record

19   requests for robocall and do not call complaints to the FTC and FCC, Ms. Slovin discovered

20   thousands of other similarly affected consumers who claimed they were affected by the

21   telemarketing practices of Defendants and their vendors.  ECF No. 205-2, Declaration of David

22   C. Parisi in Support of Motion for Attorneys' Fees and Costs and Service Awards, "Parisi Decl.",

23   ¶5.  On March 25, 2016, Ms. Slovin filed a Second Amended Complaint adding Jeffery Price

24   and Samuel Katz as named plaintiffs.  ECF No. 35.

25          From the outset, Plaintiffs were challenged with the task of discovering the telemarketing

26   vendors that made calls that Plaintiffs believed to be "on behalf of" Defendants.  Parisi Decl., ¶6.

27   On April 15, 2016, Defendants filed a motion to strike the class allegations, and argued that the

28

third parties that made the alleged calls to Plaintiffs were imposters who had no relation to Defendants.  ECF No. 36 at 3.  On April 28, 2016, the Court granted the motion and ordered Plaintiffs to file a Third Amended Complaint ("TAC") that identifies the telemarketing vendors that Plaintiffs believed made calls to Plaintiffs on behalf of Defendants.  ECF No. 40.  Plaintiffs spent the next several months propounding discovery requests on Defendants, serving 25 third-party subpoenas on telecommunications entities, and conducting an independent investigation to comply with the Court's order.  Parisi Decl., ¶¶6-7.  Based largely on their independent investigation, on July 12, 2016, Plaintiffs filed their TAC, which identified telemarketing vendors, alleged that Defendants participated on calls initiated by the telemarketing vendors and then "live transferred" to the Defendants, and alleged that Defendants appeared to control the manner and method by which the vendors conducted the solar telemarketing campaigns.  ECF No. 46.  Plaintiffs named Justin Birkhofer as an additional plaintiff and alleged that he was live transferred to Sunrun and subsequently received a direct call from Sunrun. ECF No. 46.  On August 19, 2016, Defendants filed a second motion to strike the class allegations.  ECF No. 51. At the time and throughout the litigation, Defendants disputed all of Plaintiffs' claims, and disputed that the claims were appropriate for class treatment.

   While in the midst of discovery, on March 7, 2017, the Parties participated in a mediation with former Chief Magistrate Judge Edward A. Infante.  *Id.* at ¶12.  The case did not resolve.  *Id.* Shortly thereafter, Defendants made a Rule 68 offer of judgment of $100,000 to each of the four named Plaintiffs.  *Id*. at ¶14.  Plaintiffs risked personal liability for Defendants' costs by rejecting the offer.  *See* ECF No. 89 and Fed. R. Civ. P. 68(d).  On April 11, 2017, Plaintiffs filed a motion to declare the offer ineffective, which was granted by the Court.  ECF No. 89.

   Plaintiffs deposed each of Defendants' five 30(b)(6) witnesses on 18 topics related to class certification and merits, including but not limited to the topics related to Defendants' telephone dialing systems, lead databases, relationships with telemarketing vendors, policies for TCPA compliance, and evidence of prior express consent.  Parisi Decl., ¶13.  Plaintiffs served six sets of requests for production of documents for a total of 294 requests, two sets of requests

for admission for a total of 108 requests, and 31 interrogatories, on Defendants, collectively. ECF No. 205-3, ¶¶ 25, 34, 41 (Declaration of Grace Parasmo in Support of Motion for Attorneys' Fees and Costs and Named Plaintiffs' Service Awards) ("Parasmo Decl.").

Plaintiffs also responded to a tremendous amount of discovery propounded by Defendants. Plaintiffs collectively responded to hundreds of document requests and 81 interrogatories. *Id.* at ¶28, 36. Additionally, all four named Plaintiffs sat for their depositions. *Id.* at ¶38, 43.

The Parties litigated over several, hard-fought discovery disputes, and appeared before Magistrate Corley on seven occasions to resolve those disputes. Parisi Decl., ¶10. In addition, Plaintiffs sought court intervention to enforce a third-party subpoena. Order re Plaintiffs' Motion to Compel Production, *Slovin v. CallFire, Inc.*, No. 17-mc-00091 (C.D. Cal.), ECF No. 14. In response, CallFire, one of Defendants' dialers, produced voluminous call records.

In October 2017 Plaintiffs' experts Randall Snyder and Anya Verkovskaya produced reports establishing the ascertainability of class members. Defendants produced two responding expert reports, and all expert depositions were completed. Parisi Decl., ¶ 16. On December 8, 2018, Plaintiffs filed a motion for class certification. ECF No. 159. The motion was stayed during the subsequent mediation and settlement conferences and ultimately taken off calendar when a settlement in principle was reached.

**B.    The Settlement Negotiations Were Non-Collusive**

On March 7, 2017, the Parties participated in a mediation with Judge Infante (Ret.). *Id.*, at ¶12. The day-long mediation facilitated good-faith, arm's-length negotiations; however, the case did not resolve and the Parties continued to vigorously litigate the case after the mediation. *Id.* On January 9, 2018, the Parties participated in another private mediation – this time with Bruce Friedman, a JAMS mediator with extensive TCPA mediation experience. *Id.* at ¶19. Again, the mediation was not successful. On January 31, 2018, the Parties participated in a settlement conference with Magistrate Judge Corley, which culminated in Judge Corley making a mediator's recommendation. *Id.* The Parties then participated in a telephonic conference with Magistrate Judge Corley on April 5, 2018, during which the parties accepted the mediator's

proposal and an agreement was reached on the scope of the settlement.  *Id*.  The Parties spent the

subsequent months carefully negotiating the details of the Settlement and analyzing data to

define the contours of the class and develop a notice and claims procedure.  On September 28,

2018, Plaintiffs filed their Motion for Preliminary Approval of Class Settlement.  ECF No. 189.

### C.    Preliminary Approval

This Court granted preliminary approval of the Settlement on January 29, 2019, after a

hearing on the Motion for Preliminary Approval, Plaintiffs' submission of further information

requested by the Court, and revisions to the Settlement Agreement and proposed notices.  ECF

No. 196 and Exh. 2 attached thereto.  The Court preliminarily certified the Settlement Class,

directed notice to be given to the Settlement Class in conformance with the Agreement, and

appointed Plaintiffs' counsel as Class Counsel.  *See* ECF 196.  The key terms of the preliminarily

approved Settlement are briefly summarized below.

## III.    TERMS OF THE SETTLEMENT

### A.    The Settlement Class

The Preliminary Approval Order certified the below class for purposes of Settlement:

> [A]ll persons in the United States, from November 20, 2011 to August 31, 2018, who received from or on behalf of Sunrun and/or CEE, or from a third party generating leads for Sunrun and/or CEE: (1) one or more calls on their cellphones, or (2) at least two telemarketing calls during any 12-month period where their phone numbers appeared on a National or State Do Not Call Registry or Sunrun's and/or CEE's Internal Do Not Call List more than 30 days before the calls.

ECF No. 196, 3:8-11.

Based on discovery obtained during the litigation, Plaintiffs' independent investigation, collaborative work of the Parties, and analysis of the call data, the Parties identified 346,242 phone numbers for class members who were then provided notice in accordance with the Preliminary Approval Order.  Parisi Decl., ¶19; Cooper Decl., ¶14.

### B.    Monetary Benefits to Settlement Class

The Parties agreed to a non-reversionary $5.5 million Settlement Fund.  ECF No. 196, 5:23-25; Agreement, §4.1.  Each Settlement Class member who submitted a valid claim form will be entitled to receive, on a pro rata and equal basis, an amount of the portion of the

Settlement Fund that remains after payment of all Settlement Administration Costs, any service awards to the Representative Plaintiffs, and any award of Attorneys' Fees and Costs. Agreement, §4.2.1.  The Settlement treats each Settlement Class member fairly and equally with no member receiving a larger share for each phone number than another. Given the number of claims made, and the requested attorney fee, cost and class representative service awards, Class Members are likely to receive approximately $68.00 per claim.  Havens Beckman Decl., ¶5.

### C. Robust Injunctive Relief

The Settlement also secures robust injunctive relief that is specifically designed to prevent future TCPA violations.  *See* Agreement, §12, *et. seq.*  Many of these requirements go far beyond what the TCPA and the implementing regulations require and address the concerns and experiences of Plaintiffs during this litigation.  For example, Plaintiffs allege that Defendants and their telemarking vendors falsely represented that they were working with various governmental agencies during their calls to consumers and/or used fictitious business names during the calls that were not readily traceable to a particular company.  ECF No. 46, 10:27-28. Under the terms of the Settlement, Defendants have agreed that any new contracts with Telemarketing Vendors (as defined in the Agreement) will require the vendors identify themselves by name on telemarketing calls with consumers; (b) agree that they will not attempt to mislead consumers as to their identities, including by claiming that they are calling from a fictious business entity; and (c) comply with requirements governing the registration of fictitious names.  Agreement, §12.9.  Plaintiffs also believed that some of the Telemarketing Vendors were offshore and nearly impossible to serve process upon, leaving consumers without an avenue of recourse.  Under the Settlement, Defendants have agreed not to contract with Telemarketing Vendors who do not accept service of process in the United States.  Agreement, §12.4. Importantly, the injunctive relief also requires Defendants to impose certain stringent contractual requirements upon Telemarketing Vendors with whom Defendants work.  Agreement, §§12.5, 12.6 and 12.8.

The injunctive relief provisions of the Settlement also extend to Defendants' own internal operations.  Sunrun has agreed to "oversee all CEE telemarketing activities to ensure compliance

with the TCPA", Agreement, §12.1; to "maintain and merge their Internal Do Not Call Lists", *Id.* at §2.2; and to "implement and maintain procedures that prevent their respective dialing equipment from making unsolicited telemarketing calls to consumers whose telephone numbers appear on their Internal Do Not Call Lists". *Id.* at §12.3.

This not only provides prospective relief but also affords additional rights and remedies in the event consumers do receive unwanted telemarketing calls from Defendants in the future. The injunctive relief terms can be enforced through court action in the event of a breach of the Agreement. *Id.* at §12.11. Thus, if a consumer requests that their telephone number be added to Defendants' Do Not Call List but continue to receive calls from Sunrun or CEE, then Defendants would be in violation of the injunctive relief provisions which require that they prevent their dialing equipment from calling individuals on the DNC list. *See id*. at §12.3. Therefore, these provisions make it significantly easier for consumers to obtain treble damages for willful violations of the TCPA.

Furthermore, in the event consumers receive additional unwanted calls, Defendants' agreement to maintain records of all oral or written telemarketing complaints will aid consumers in the investigation and discovery of evidence supporting their TCPA claims. *Id.* at §12.7. Under the Agreement, Sunrun and CEE agree to investigate any Complaints that are received, and to take all reasonable steps to obtain, record, and retain all relevant information regarding Complaints made to them, including but not limited to: "(1) the consumer's name, address, and telephone number; (2) the substance of the Complaint, including the name of any person referenced; (3) the nature and result of any investigation conducted concerning the Complaint; (4) each response to the Complaint and the date of such response to the Complaint; (5) any final resolution of the Complaint, and the date of such resolution; (6) in the event of a denial of any resolution, the reason for the denial; (7) if applicable, the name, telephone number, and address of the Telemarketing Vendor that made the call that was the basis for the Complaint; (8) the date of the allegedly unsolicited telemarketing calls; and (9) any relevant information for determining whether a violation of the TCPA has occurred." *Id*. These record-keeping and complaint

documentation requirements will help consumers tie any third party using a false name on a telemarketing call to the appropriate company and will place Defendants on notice of potential TCPA violations.  Hence, it will be unnecessary for consumers to do much of the heavy lifting of attempting to track down the responsible parties.

> **D.      Scope of the Release**

In exchange for the relief described above, Defendants along with other "Released Parties" will be released from the TCPA claims against them.  Agreement, §§2.1.41; 2.1.42; and 8.1.  The release does not sweep any more broadly than is necessary to afford finality and peace to Defendants as to the litigated subject matter and is limited to those claims related to unlawful calls "that were brought in the [l]itigation or could have been brought in the [l]itigation".  *Id.* at §2.1.41.

> **E.      Payment of Attorneys' Fees and Costs**

On April 5, 2019, Plaintiffs' counsel filed the Motion for Attorneys' Fees and Cost and Class Representatives' Service Award.  ECF 205.  The Parties did not negotiate or reach any agreements with respect to an attorney fee and cost award nor any service awards that may be paid to class representatives.  Havens Beckman Decl., ¶3.

The Agreement provides for a common fund settlement.  In a common fund settlement structure, "how the fund is divided between members of the class and class counsel is of no concern whatsoever to the defendants who contributed to the fund."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1301 (9th Cir. 1994).  Class Counsel seek an award of $1,900,000 in attorney's fees, which represents a negative multiplier on their lodestar, as well as costs of $470,610.  ECF No. 205.  Additionally, Representative Plaintiffs each seek Service Awards of up to $40,000.00 for the time and effort that they invested in the Action, and to recognize their extraordinary personal sacrifices made in rejecting the Rule 68 Offer.  ECF 205, 27:1-29:4.

### F.        Execution of the Approved Notice Plan and Reaction of the Class

Before final approval of a class action settlement, the Court must find that class members were notified in a reasonable manner. Fed. R. Civ. P. 23(e)(1). When a settlement class is certified under Rule 23(b)(3), class members must receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(b)(3); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Settlement notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).  Ultimately, the notice plan must comport with due process requirements. *Rodriguez*, 563 F.3d at 963.

Here, the Court previously found the proposed notice plan to meet this burden.  ECF No. 196, 8:5-8 ("the form, content, and manner of notice proposed by the parties and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstance, constitute sufficient notice to all persons and entities entitled to notice, and satisfy the Constitutional requirements of notice".)  Since then, the Settlement Administrator carried out all aspects of the approved Notice Plan.  *See generally*, Declaration of Phil Cooper re Notice Procedures, "Cooper Decl.", filed herewith.  As a result of this comprehensive Notice Plan, the Settlement Class has exhibited an overwhelmingly positive reaction to the Settlement:  there was a relatively high participation rate of just over 10% and no objections have been received. Havens Beckman Decl., ¶6; Cooper Decl., ¶16.  (One class member, Mark Lessner, filed a letter with the Court as "an objector to the unauthorized telephone calls" he received from Defendants. *See* Dkt. 200.  Class Counsel spoke with and confirmed that Mr. Lessner had no objections to the settlement and they assisted him in filing a claim form to participate in the settlement. Declaration of Yitzchak Lieberman, ¶4.

#### 1.        Dissemination of the Notice

In conformance with the Preliminary Approval Order, on March 1, 2019, the Settlement Administrator sent out notice and approximately 91 percent of all individuals identified as potential class members received direct notice.  Havens Beckman Decl., ¶4.  Notice was sent to 330,291 individuals via the United States Postal Service.  Cooper Decl., ¶8.  Additionally, the

Settlement Administrator provided electronic notice to 118,092 individuals for whom the parties had valid email records. *Id.*, ¶9.  (If the Settlement Administrator had both an email and mailing address for the same person, that person received notice by each method.)  Out of those persons receiving direct mail notice, the Settlement Administrator, received 1,358 notices back with forwarding addresses from the USPS. *Id.*, ¶10.  These notices were immediately re-processed and sent back out. *Id.*  An additional 29,262 notice packets were returned as undeliverable. *Id.*, ¶11.  However, the Settlement Administrator, through the tools proscribed in the Agreement and contact information received from Settlement Class members themselves, reprocessed 2,827 of the previously undeliverable notices.  Cooper Decl., ¶11.

Also beginning March 1, 2019, the Settlement Administrator established a website [www.SRtcpasettlement.com], whose URL was indicated on the notices, dedicated to this Settlement to provide information to the Settlement Class Members and to answer frequently asked questions. *Id.*, ¶12.  Visitors to the website were able to submit an online claim and download case-related documents. *Id.*  Traffic to the site demonstrates its success.  As of June 13, 2019, the Settlement Administrator had counted 208,371 visits to the website.  Cooper Decl., ¶12.  Similarly, the Settlement Administrator established a toll-free telephone number for class members to call with questions about the settlement, and received nearly 2,000 calls to the telephone hotline. *Id.*, ¶13.

> **2.    The Positive Reaction of the Class Indicates that Due Process has been Satisfied**

The response to the Settlement from the Settlement Class has been favorable.  To date, 36,506 valid claims – a rate of just over 10% -- has been received. *See* Cooper Decl., ¶¶7&14.  Additionally, only three Settlement Class Members have exercised their right to exclude themselves from the Settlement and no individuals have objected to the Settlement. *Id.*, ¶¶15&16.  Such a response indicates that the Settlement has been a success on all fronts – both in terms of confirming the efficiency and efficacy of the notice but also in demonstrating that the relief provided to the Settlement Class is meaningful.  More than 10% of the Settlement Class exercised those options.  Indeed, the fact that three Class Members have decided to opt out,

shows that "at least some portion of the class understood the notice and chose not to participate in the settlement for whatever reason." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

### 3. CAFA Notice was Provided as Required

The Agreement provides that the Settlement Administrator will serve notice of the settlement that meets the requirements of CAFA, 28 U.S.C. § 1715, on the appropriate federal and state officials no later than 10 days after the filing of the Agreement with the Court. Agreement, §6.4.1. On October 4, 2018, such notice was given.  Cooper Decl., ¶¶2-6.

## IV. THE SETTLEMENT MERITS FINAL APPROVAL

In order to grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, (b) that reasonable notice was provided to the class, and (c) the settlement reached on behalf of the class is fair, reasonable, and adequate.  *See In re Hyundai and Kia Fuel Economy Litig.*, 2019 WL 2376831, *6 and *13 (discussing requirements for class certification in settlement context); *Hanlon*, 150 F.3d at 1026-27 (discussing requirements for fairness finding). The certification analysis and substantive review of the settlement are two separate determinations.  Both of which dictate final approval here.

### A. The Court Should Certify the Class for the Purpose of Entering Judgment

In moving for preliminary approval, Plaintiffs have already demonstrated that the Rule 23 requirements have been met.  Accordingly, on January 29, 2019, the Court preliminarily certified the Settlement Class.  That determination should be confirmed for final approval.

### 1. The Settlement Class Meets the Requirements of Rule 23(a)

Certification of a class under Rule 23 requires numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a).  Plaintiffs' "burden at the class certification stage is slight[;] a court need only be able to make a reasonable judgment that Rule 23 requirements are satisfied." *Marlo v. United Parcel Serv. Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008) (quoted by *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010)).  Each of Rule 23(a)'s requirements are met here.

**The Class Is Sufficiently Numerous:** Based on Plaintiffs' experts' analysis of the call data provided by Defendants and their telemarketing vendors, the Parties have identified hundreds of thousands of Settlement Class Members.  Parisi Decl., ¶19.  Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1).  "Courts have found joinder impracticable in cases involving as few as forty class members." *In re National Western Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 660 (S.D. Cal. 2010).  The number of Settlement Class Members well exceed these minimal requirements.

**There are Factual and Legal Issues Common to the Members of the Class:** The Settlement Class meets the commonality requirement under Rule 23(a)(2).  Commonality requires "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions of law or fact "must be of such a nature [they are] capable of classwide resolution"; that is, that the answer to such common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation, punctuation omitted).

Here, resolution of the following common questions resolve claims of the Settlement Class: (1) whether Defendants and their alleged agents utilized an ATDS to place telemarketing calls to cell phone numbers; (2) whether Defendants or the alleged agents called telephone numbers on the National Do-Not-Call Registry; (3) whether Defendants maintained and enforced an adequate internal DNC list and related policies; (4) whether Defendants are vicariously liable for calls made by their alleged agents; and (5) whether the Settlement Class members gave their prior express written consent.  Plaintiffs contend that all of these questions can be answered through common proof: the call and lead records of Defendants and their vendors.  These common legal and factual issues are sufficient to establish commonality.  Commonality can be "easily satisf[ied]" where class members "all base their claims on the same legal theory." *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007) (citation, punctuation omitted).

**Plaintiffs Are Typical of the Class:** Plaintiffs' experiences are typical of Class Members under Rule 23(a)(3).  To satisfy typicality, plaintiffs must establish that the "claims or defenses

of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P.
23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named
representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168, 1175 (9th Cir. 2010) (punctuation, citation omitted). "The test of typicality is
whether other members have the same or similar injury, whether the action is based on conduct
which is not unique to the named plaintiffs, and whether other class members have been injured
by the same course of conduct." *Id.* (same).[1]  Typicality is satisfied because Plaintiffs' claims
arise from the same practices and course of conduct that gives rise to the other Settlement Class
members' claims (telemarketing campaigns by Defendants and their alleged agents) and are
based on the same legal theories.

**Plaintiffs Are Adequate Representatives for the Settlement Class:** Rule 23(a)(4)
requires that Plaintiffs fairly and adequately protect the Class' interests.  The adequacy test poses
two questions: (1) are there conflicts between Plaintiffs and their counsel and the other members
of the Settlement Class, and (2) will Plaintiffs and their counsel vigorously prosecute the class
action?  *See Hanlon*, 150 F.3d at 1020.  No evidence of any potential conflicts exists here:
Plaintiffs share the same claims as the Settlement Class and have an acute interest in recovering
from Defendants.  "[C]ourts have generally declined to consider conflicts . . . sufficient to defeat
class action status at the outset unless the conflict is apparent, imminent, and on an issue at the
very heart of the suit." *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975).  Further
demonstrating their adequacy, Plaintiffs "placed the interests of the putative class ahead of their
personal interests, just as Rule 23 envisions" and "complied with their duty under Rule 23(a)(4)
by fairly and adequately protect[ing] the interests of the class," and by rejecting Defendants'
Rule 68 settlement offer of $100,000.00 each.  *See* ECF No. 108 (internal quotations omitted).

---

[1]     *See also Xiufang Situ*, 240 F.R.D. at 561 ("[t]ypicality requires that named
plaintiffs be members of the class they represent and possess the same interest and suffer the
same injury as class members," citation, punctuation omitted). *Cf. Smith v. Univ. of Wa. Law
Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) (typicality does not turn on "particularized
defenses against individual class members").

**Plaintiffs' Counsel Are Adequate Counsel for the Class:** Rule 23(g) dictates that the Court consider the adequacy of class counsel by evaluating counsel's work on the case, experience in handling complex litigation, counsel's knowledge and the resources of counsel. Fed. R. Civ. P. 23(g)(1)(A).  However, "[a]dequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. California Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) (quoted, followed by *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 306 (N.D. Cal. 2015)).  Here, Plaintiffs' counsel has diligently and skillfully litigated this case.  Parisi Decl., ¶¶3-11.  Plaintiffs' counsel are well-qualified and experienced in litigating consumer class actions, including TCPA and other privacy class actions.  *See* Parisi Decl. ¶¶14-15 and Exh. 2; ECF No. 205-5, ECF No. 205-3 (Parasmo Decl.), at ¶¶2-13. Counsel have advanced the costs of litigation, representing the Class on a contingent fee basis, and have provided adequate representation to the class pursuant to Rule 23(g).  *See* generally, Parisi Decl. ¶¶3-11, 20, 34-37.

### 2.       The Class Meets the Requirements of Rule 23(b)(3)

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under [Rule] 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. *See also* Manual for Complex Litigation (Fourth) § 21.131. The Class can be certified under Rule 23(b)(3). Certification under Rule 23(b)(3) requires the Court find (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

**Common Facts Predominate the Class:** "The main concern in the predominance inquiry [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).  Predominance is satisfied when "[a] common nucleus of facts and potential legal remedies dominates th[e] litigation," *Hanlon*, 150 F.3d at 1022, and "[i]ndividualized issues are few, and most of them are likely to be relatively easy [to resolve]."  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

*Sands, Inc.*, 244 F.3d 1152, 1166 (9th Cir. 2001). The Settlement Class meets Rule 23(b)(3)'s predominance requirement.

Here, liability depends on whether a handful of dialers constitute an ATDS, whether Plaintiffs can establish vicarious liability, and whether Defendants or their alleged agents have any evidence of legally valid consent. These common issues simply outweigh any individualized issues that might exist in terms of legal significance and relative burden of adjudication: "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Las Vegas Sands*, 244 F.3d at 1162 (quoting *Hanlon*, 150 F.3d at 1022 (predominance met when "common nucleus of facts and potential legal remedies dominates . . . litigation")).

**A Class Action is the Superior Dispute Resolution Mechanism:** Predominance overlaps some aspects of superiority. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). *See also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). Assessing superiority under Rule 23(b)(3) "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino*, 97 F.3d at 1234-35. Hence, the Court must compare a certified class to "individual claims for a small amount of consequential damages," rather than no litigation whatsoever. *Hanlon*, 150 F.3d at 1023.

This Court has recognized "the statutory damages provided by the TCPA are 'not sufficient to compensate the average consumer for the time and effort that would be involved in bringing small claims against a national corporation.'" *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2017 WL 558017, *7 (N.D. Cal. Feb. 2, 2017) (internal citations omitted). Over hundreds of thousands of individual TCPA cases—even assuming those cases were ever filed— is not a reasonable alternative to a certified settlement class. Even if hundreds of thousands of

individual class members actually brought their claims, "[f]orcing class members to repeat these years-long discovery efforts in individual proceedings would not be superior to class treatment." *See O'Shea v. Am. Solar Sol., Inc*., 318 F.R.D. 633, 639 (S.D. Cal. 2017). Accordingly, there can be no question that class treatment is superior here.[2]

**B.    The Notice to the Settlement Class Satisfied Rule 23**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Here, the Court has already thoroughly examined the notice given to the Settlement Class and found it to be "the best notice practicable under the circumstance, constitute sufficient notice to all persons and entities entitled to notice, and satisfy the Constitutional requirements of notice." ECF No. 196, 8:6-8. As detailed above, the Settlement Class was provided the ordered notice. The substantial claims rate of over ten percent, indicates that the notice was also successful. *See* Cooper Decl., ¶¶8-11, &14.

**C.    The Settlement is Fair, Reasonable, Adequate, and Deserving of Final Approval**

Having determined that class certification is appropriate, the Court must evaluate the substance of the class action settlement as "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). However, "a district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* When making this determination, the Ninth Circuit has instructed district courts to balance several factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the

---

[2]    Because the case was resolved through a negotiated settlement, the Court does not need to consider issues of manageability relating to trial. *See In re Hyundai & Kia Fuel Econ. Litig*., 2019 WL 2376831, at *5 ("manageability is not a concern in certifying a settlement class where, by definition, there will be no trial").

reaction of the class.  *Hanlon*, 150 F.3d at 1026; *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Ninth Circuit has recently noted that:

> The factors and warning signs identified in *Hanlon*, *Staton* [*v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)], *In re Bluetooth [Headset Products Liab. Lit.*, 654 F.3d 935 (2011)], and other cases are useful, but in the end are just guideposts.  The relative degree of importance to be attached to any particular factor will depend upon ... the unique facts and circumstances presented by each individual case....Deciding whether a settlement is fair is ultimately an amalgam of delicate balancing, gross approximations and rough justice...best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings—the whole gestalt of the case.

*In re Volkswagen "Clean Diesel" Mktg.*, 895 F.3d at 611 (internal quotations and citations omitted). These factors which were previewed in Plaintiffs' Motion for Preliminary Approval, demonstrate that that the proposed settlement is fair, adequate, and reasonable and should be granted final approval.

### 1.     Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Service Comm'n of City and Co. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotations omitted). The court may "presume that through negotiation, the parties, counsel, and mediator arrived at a reasonable range of settlement by considering plaintiff's likelihood of recovery." (*citing Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, Plaintiffs engaged in extensive negotiations with Defendants, and are thoroughly familiar with the evidence, legal theories, and defenses to this litigation.  Although Plaintiffs and their counsel believe that Plaintiffs' claims have merit, they also recognize that they will face risks at class certification, summary judgment, and trial.  Defendants would no doubt continue to fight certification and present a vigorous defense at trial – as they have done throughout the litigation – and there is no assurance that the class would prevail.  Defendants maintain that they have strong defenses that Defendants and their vendors only called consumers who had expressed an interest in learning about solar products, that they are not vicariously liable for the

calls, that they did not use an ATDS as that term has been defined under the TCPA, did not call consumers without proper consent, did not improperly call consumers on the National Do Not Call Registry, and that they had the required procedures for maintaining internal company Do Not Call lists.  Thus, the Settlement provides the Settlement Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.

### 2.   Continued Litigation Poses Significant Risks

While Plaintiffs believe they could and should prevail, they are forced to acknowledge the risks of continued litigation.  Parisi Decl., ¶13.  On balance, the Settlement is a compromise which eliminates the risk, expense, delay, and uncertainty of continued litigation.  Significant risks imposed by continued litigation include failing to certify a class, having summary judgment granted against Plaintiffs and class members, and losing at trial or on appeal. *Id.*  Defendants maintain that they have strong defenses and would vigorously assert these defenses. Defendants continue to argue that questions of individualized issues regarding agency and consent, among other issues, preclude certification of a class.  Defendants also asserted that they would prevail on a summary judgment motion on vicarious liability in part because their contracts required Telemarketing Vendors to comply with the TCPA.  Defendants further contended that Ninth Circuit authority in *Jones v. Royal Admin. Servs., Inc*., 866 F.3d 1100, 1105 (9th Cir. 2017) supports their position that no agency relationship exists between them and the Telemarketing Vendors.  Although Plaintiffs believe that strong evidence exists which would support establishing such an agency relationship, they acknowledge the risks attendant to this argument. Indeed, several courts have entered summary judgment for defendants on vicarious liability grounds.  *See Kristensen v. Credit Payment Services Inc.*, 879 F.3d 1010, 1014–15 (2018) (affirming summary judgment in favor of defendants on issues of ratification in TCPA class action); *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679–80 (9th Cir. 2014) (affirming grant of summary judgment to defendant finding no vicarious liability in TCPA class action).

Further, assuming that Plaintiffs were to survive summary judgment, they would still likely face the uncertainty and risk of establishing liability at trial and a judgment that could potentially bankrupt the Defendants and leave the Class without any relief.  The volatility of the

solar industry highlights these risks.  Experts in the solar field have estimated that tariffs imposed

on the solar industry beginning in 2017 and continuing through early 2019, have had and will

continue to have a dramatic impact on the profitability and security of the industry.  In fact, an

analysis of the effect of the tariffs through 2022 by Solar Energy Industry Association and Wood

Mackenzie Power & Renewables, estimates that 9,000 jobs in the solar industry will be lost or

forgone as a result of the tariffs.  *See* Ken Silverstein, *Questionable Tariffs Leave a Dark Cloud

Over the US Solar Sector*, FORBES, (Dec. 17, 2018),

https://www.forbes.com/sites/kensilverstein/2018/12/17/questionable-tariffs-leave-a-dark-cloud-

over-the-u-s-solar-sector/#391fd10e3af3.  By settling, Plaintiffs and the Settlement Class obtain

immediate and guaranteed relief and avoid these risks, as well as the serious delays of the

appellate process.  Such considerations have been found to weigh heavily in favor of settlement.[3]

### 3.     The Risk of Maintaining Class Action Status

Plaintiffs would also face risks in certifying a class and maintaining that class status

through trial. This agreement was reached before a ruling on certification.  Despite the

Settlement, Defendants maintain that no class can be certified because individualized inquiries

will be required to determine agency and whether class members consented to receiving the

calls, among other issues. Plaintiffs also recognize that some courts in this District have denied

motions for class certification in TCPA cases. Even assuming that the Court were to grant

Plaintiffs' motion for class certification, the class could still be decertified at any time.[4] Here, the

Agreement provides class members with a recovery that is certain and immediate, eliminating

the risk that class members would be left without any recovery at all.

### 4.     The Amount Offered in Settlement

Courts also consider the amount offered to determine the ultimate fairness of a

---

[3]     *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

[4]     *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted); Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

settlement. *Officers for Justice*, 688 F.2d at 628. In analyzing this factor, courts generally consider "the complete package" rather than the individual terms. *Id.* Nevertheless, "[t]his circuit has long deferred to the private consensual decision of the parties." *Rodriguez*, 563 F.3d at 965. "[P]arties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.*

Here, it is projected that class members will receive approximately $68.00 per claim, which is an amount that compares favorably to other TCPA settlements. Havens Beckman Decl., ¶5; *see e.g.*, *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (providing $34.60 to each claiming class member); *Hashw v. Dept. Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) (approving settlement providing claiming class members in TCPA case a $33.20 payment); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (providing a roughly $30 payment for each claiming class member); *Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142, ECF. No. 94 (N.D. Cal. Apr. 2, 2012) (granting approval of a settlement that provided a $25 voucher to each claiming class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261, ECF No. 97 (S.D. Cal. Feb. 20, 2013) (granting approval of a settlement that provided a $20 voucher or $15 cash to each claiming class member); *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198, Dkt. 266 (W.D. Wash. Sept. 17, 2012) (granting approval of a settlement that provided $20-40 cash payment to each claiming class member). This is because while the negotiated recovery represents only a partial award of the maximum permitted under the statute, even if Plaintiffs had prevailed at trial, there is no guarantee that the Class would have done any better. Indeed, if Plaintiffs had continued through trial, there is no guarantee of *any* recovery.

Finally, in considering the "complete package," the substantial injunctive relief achieved here is not to be overlooked. Robust injunctive relief was negotiated as a fundamental part of the resolution of the case. Plaintiffs hereby incorporate by reference their detailed discussion of how this relief was carefully tailored to address the concerns and experiences of Plaintiffs and the

Settlement Class and how it will provide meaningful and substantial benefits to Settlement Class members in not only stopping the alleged harassing solar telemarketing calls, but in reforming the business practices of Defendants and their Telemarketing Vendors. *See* Memorandum of Points and Authorities in Support of Motion for Attorney's Fees, ECF No. 205-1, at 16-19. Moreover, in the event of future unwanted telemarketing calls, consumers are afforded additional rights and remedies under the injunctive relief provisions of the Settlement; if finally approved, such provisions will be enforceable against Defendants. *See* Section III.C., *supra.*

Thus, given the risks inherent in trial and difficulty in achieving a comparable result in an individual action, the amount offered in Settlement is more than fair. Accordingly, this factor also weighs in favor of final approval.

### 5.     The Stage of the Proceedings and the Amount of Discovery Supports Final Approval

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). As discussed above, extensive discovery and independent investigation in this case has given Plaintiffs a comprehensive understanding of Defendants' telemarketing practices and the scope of the alleged unlawful practices. The Settlement is a product of over two years of litigation, extensive motion practice, and fact and expert discovery, including multiple depositions. Plaintiffs' counsel and their experts have received, examined, and analyzed information, documents, and materials that enabled Plaintiffs to assess the likelihood of success on the merits. They are thus well-informed about the strengths and weaknesses of the case. Thus, this factor favors settlement.

### 6.     Experience and Views of Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation, including TCPA and other privacy actions. *See* Parisi Decl., ¶¶14-15; Parasmo Decl. ¶¶2-13 (ECF No. 205-3). Based on their collective experience, Plaintiffs' Counsel

concluded that the Agreement provides exceptional results for the Settlement Class while avoiding uncertainties of continued litigation.

### 7. The Lack of a Governmental Participant Weighs in Favor of Final Approval

No governmental entity is a party to this action.  However, in compliance with CAFA, notice has been provided to over 60 governmental agencies.  Cooper Decl., ¶¶2-6.  No governmental entity has objected to the Settlement nor otherwise raised any concerns about its validity.  Cooper Decl., ¶6.

### 8. The Positive Reaction of the Class to the Settlement Supports Final Approval

The positive reaction of the Settlement Class to the Settlement supports final approval here.  "A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (citing *Hanlon*, 150 F.3d at 1027).  This is because "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, *8 (N.D. Cal. Apr. 25, 2016).  Here, not one of the over 346,000 Settlement Class members have objected to the Settlement and only 3 have opted out, "indicat[ing] overwhelming support among the class members." *Harper v. Law Office of Harris and Zide*, No. 15-cv-01114-HSG, 2017 WL 995215, at *5 (N.D. Cal. Mar. 17, 2017).  *See* Cooper Decl., ¶15.  Settlement Class Members have voiced their satisfaction by submitting a higher than average response rate. Here, the participation rate of just over ten percent is far higher than the typical TCPA class action settlement.  *See e.g.*, *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (approving TCPA settlement with "a higher than average claims rate of 7.7%."); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-cv-00190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (approving TCPA settlement with claims rate of 3.16%); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495 (N.D. Ill. 2015) (approving TCPA settlement with claims rate of 2.5%.); *Barani v. Wells Fargo Bank, N.A.*, No. 12-cv-02999, Dkt. 32 at *5–6 (S.D. Cal. Mar. 6, 2015) (1.17% claims rate); *see also Bayat v. Bank of the West*, C–

13–2376 EMC, 2015 WL 1744342, at *6 (N.D. Cal. Apr. 15, 2015) (finding class settlement in TCPA claim to be fair, adequate, and reasonable where there was only a 1.9% claim rate for damages, and 1.1% for injunctive relief).  Indeed, to date Class Counsel have been contacted by and assisted 13 members of the Settlement Class.  Havens Beckman Decl., ¶6.  Each of these individuals expressed nothing but support and gratitude for the Settlement.  *Id.*  Accordingly, this factor also weighs strongly in favor of approval.  *See McDonald v. CP OpCo, LLC*, No. 17-CV-04915-HSG, 2019 WL 2088421, at *5 (N.D. Cal. May 13, 2019) ("the nearly unanimous positive reception of the settlement by class members favors approval.")

**V.      CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court enter the proposed Final Approval Order submitted herewith and enter judgment accordingly.

Dated: June 18, 2019                          By:   /s/David C. Parisi
David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile:  (877) 501-3346

Attorneys for Plaintiffs Lynn Slovin, Samuel Katz, Jeffery Price, and Justin Birkhofer on their own behalf, and on behalf of all others similarly situated